IN RE: KEFFER DEVELOPMENT
SERVICES, LLC, DATA SECURITY
BREACH LITIGATION

Case No. 25-md-3159

HON. MARK A. GOLDSMITH

THIS DOCUMENT RELATES TO
25-cv-10806

_____/

### DEFENDANTS UNIVERSITY OF MICHIGAN, REGENTS OF THE UNIVERSITY OF MICHIGAN, DOMENICO GRASSO, SANTA J. ONO, MARK SCHLISSEL, WARDE J. MANUEL, DOUG GNODTKE, JAMES JOSEPH ("Jim") HARBAUGH, RAVI PENDSE, and SOL BERMANN'S MOTION TO DISMISS PURSUANT TO F.R.CIV.P. 12(b)(1) AND (6)

The undersigned counsel certifies that counsel communicated in writing with opposing counsel several times regarding dismissal of state law claims against the University of Michigan and the Regents based on 11th Amendment immunity, including on August 15, 2020, explaining the nature of that relief to be sought by way of this motion and seeking concurrence in that relief. On Saturday, September 6, opposing counsel stipulated to dismiss some of those state law claims, and on Monday, September 8, the remainder of the state law claims as to those parties.

The undersigned counsel certifies that on September 4, 2025, he communicated in writing with opposing counsel explaining the nature of the remainder of relief to be sought by way of this motion and seeking concurrence;

there have been several subsequent conversations with opposing counsel thereafter, and while he has not expressly denied concurrence, he has not agreed, making it necessary to bring this Motion for hearing.

Accordingly, Defendants University of Michigan, the Regents of the University of Michigan (together the "University Defendants"), individual defendants Domenico Grasso, Santa J. Ono, Mark Schlissel, Warde J. Manuel, Doug Gnodtke, James Joseph Harbaugh, Ravi Pendse, and Sol Bermann (those together the "Individual Defendants" and all collectively the "Moving Defendants"), and pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), move for dismissal based on immunity conferred by the 11th Amendment to the U.S. Constitution, immunity conferred by Michigan's Governmental Tort Liability Act, and for failure to state claims upon which relief can be granted, and in support thereof state as follows:

1)      Plaintiffs have now stipulated to dismiss all state court claims against the University Defendants, therefore none of those claims will be addressed as to the University Defendants.

2)      Count IX (violation of the Michigan Constitution), Count X (ELCRA), Count XI (violation of the Michigan Constitution), and XVIII (state law "recklessness") are state law claims that were also asserted against the Individual Defendants, as to whom plaintiffs have not agreed to dismiss.  Those claims will be addressed only as to the Individual Defendants.

3)      Plaintiffs assert claims under the federal Computer Fraud and Abuse Act ("CFAA") and the Stored Communications Act ("SCA"), Counts XVI and XVII respectively.  They have stipulated to dismiss the University Defendants from the CFAA claim but not the SCA claim.  The Individual Defendants remain named in both claims.

4)      The claims as originally asserted are identified in Table 1, *infra*, which indicates which claims remain and as to which of the Moving Defendants.

5)      The Board of Regents of the University ("BOR") is a constitutionally created body corporate, charged with general supervision of the University and the election of a President.  It is an instrumentality of the state, and therefore synonymous with the state for purposes of 11th Amendment immunity.

6)      The Board of Regents is the entity capable of suing and being sued, the University is not a legal entity separate from the Board of Regents, therefore any claim against "The University of Michigan" should be dismissed.

7)      It is well established that the 11th Amendment to the U.S. Constitution provides immunity to the state and state instrumentalities for claims, including federal law claims asserted in federal court, unless there has been an unambiguous abrogation of immunity.  There has been no such abrogation for the SCA claim, therefore, the University Defendants are immune from that claim.

8)     Plaintiffs' only two remaining state common law claims, Count III (state law privacy and appropriation); and XVIII ("recklessness") are now asserted only as to the Individual Defendants.  Michigan's Governmental Tort Liability Act, MCL 691.1407(5) ("GTLA") provides absolute immunity to the "highest appointive executive official of all levels of government" "if he or she is acting within the scope of his or her … executive authority."  That provision grants absolute immunity for those claims to Domenico Grasso, Santa J. Ono and Mark Schlissel, each of whom is named by virtue of their current or former positions as the University's President.

9)     The remaining Individual Defendants also have immunity to those claims pursuant to the GTLA, MCL 691.1407(2), because there is no allegation or facts suggesting that they did not reasonably believe they were acting in anything other than the course of their employment on behalf of the University nor did their conduct constitute gross negligence which was the proximate cause of any alleged injury or damage to plaintiffs.

10)     In addition to immunity under the GTLA, the Individual Defendants are entitled to dismissal of Count III ("privacy and appropriation") for failure to state a claim because plaintiffs do not allege that any Individual Defendant himself improperly accessed any of plaintiffs' private information, or that alleged unauthorized access by Weiss was for the benefit of any of the Individual Defendants, nor that there was any commercial purpose for the alleged access.

11) In addition to immunity under the GTLA, the Individual Defendants are entitled to dismissal of Count XVIII ("recklessness") for failure to state a claim, because while recklessness is an element of some other types of claims not asserted here, it is not an independent cause of action.

12) The Individual Defendants (the only remaining Moving Defendants) are entitled to dismissal of the Computer Fraud and Abuse Act claim for failure to state a claim because plaintiffs have not pled the only types of damages compensable under the Act.

13) All Moving Defendants are entitled to dismissal of the Stored Communications Act claim for failure to state a claim, because none are either a provider of electronic communications services nor remote computing services, nor did any "knowingly divulge" plaintiffs' protected information. Moreover, none provide the types of covered services to the public. Further, the SCA claim is barred by the applicable statute of limitations.

14) The Individual Defendants are entitled to dismissal of Counts IV–VIII, all alleging claims under 42 U.S.C. §1983 for violations of the 14th Amendment to the U.S. Constitution, because of qualified immunity in that there are insufficient facts alleged that while acting under color of state law each of them engaged in conduct that violated clearly established statutory or constitutional rights which a reasonable person in that individual's position would have known. Additionally,

there are insufficient facts that the Individual Defendants themselves engaged in unconstitutional conduct that was a cause in fact and proximate cause of the alleged violation, and those claims further fail to state claims upon which relief can be granted.

15)     The Individual Defendants are entitled to dismissal of all claims against them because they are named only in impermissible group allegations, there are no allegations separately, as required, as to each regarding the alleged improper or unconstitutional actions that each Individual Defendant took.

16)     Plaintiffs fail to state valid claims against the University for violation of Title IX (Counts I and II), because plaintiffs admit that prior to Weiss's criminal indictment in March 2025, they were not aware of the alleged sexually harassing conduct on which those claims are based, and cannot claim they were sexually harassed by conduct of which they were unaware.  Further, they do not sufficiently allege that any purportedly severe and pervasive sexually harassing conduct denied them any educational program or opportunity.  Moreover, they do not allege that an "appropriate individual," that is a University official with the authority to address and correct any harassment, had "actual knowledge" of the conduct.  And the undisputed actions taken by the University once the unauthorized access was discovered demonstrates that there was no deliberate indifference to known conduct that plaintiffs allege was sexually harassing.

17)     The Individual Defendants are entitled to dismissal of Count X (violation of the Elliott-Larsen Civil Rights Act ["ELCRA"]).  Plaintiffs admit that prior to Weiss's criminal indictment in March 2025, they were not aware of the alleged sexually harassing conduct on which those claims are based, and cannot claim they were sexually harassed by conduct of which they were unaware.  Further, they do not sufficiently allege that any purportedly severe and pervasive sexually harassing conduct denied them any educational program or opportunity, nor do they allege that any of the Individual Defendants themselves engage in any sexually harassing or other conduct prohibited by ELCRA.

18)     To the extent the Court does not dismiss any of the remaining state law claims as to the Individual Defendants, it should nonetheless decline to exercise supplemental jurisdiction over those claims.  Even when the Court has jurisdiction over a claim, the decision to exercise supplemental jurisdiction is discretionary.  But rather than retaining jurisdiction as to Individual Defendants for state law claims against them – including claims already dismissed by plaintiffs as to the University Defendants which may potentially be refiled in state court – which would create inefficient duplication and confusion as well as possibly inconsistent decisions involving issues purely of state constitutional and statutory law, all remaining state law claims against any of the Individually Defendants should be dismissed so that if those claims are pursued they can all be pursued in a state law forum.

LOCAL RULE CERTIFICATION: I, Daniel Tukel, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length, as modified by Court's 9/4/2025 Text Order granting up to 65 pages (Local Rule 7.1(d)(3)).

Wherefore, Moving Defendants request that their motion be granted, and that the CACC be dismissed in its entirety.

**BUTZEL LONG**

*s/ Daniel B. Tukel*
201 West Big Beaver Road
Suite 1200
Troy, Michigan 48084
(248) 258-1616
tukel@butzel.com
(P34978)

*s/ Sheldon Klein*
201 West Big Beaver Road
Suite 1200
Troy, Michigan 48084
(248) 258-1616
klein@butzel.com
(P41062)

DATED:      September 8, 2025

## TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ............................................................v

INDEX OF AUTHORITIES ............................................................... ix

TABLE 1 (CLAIMS AGAINST MOVING DEFENDANTS) ...........................xv

INTRODUCTION ....................................................................- 1 -

    Statement of Background Facts................................................- 1 -

    Plaintiffs .............................................................................- 3 -

    Individual Defendants.............................................................- 3 -

    Procedural Status .................................................................- 5 -

STANDARD OF REVIEW ...........................................................- 6 -

ARGUMENT ..........................................................................- 7 -

    I.    The SCA Claim Against The University Defendants Is
Barred By Eleventh Amendment Immunity And Lack
Of Capacity.........................................................................- 7 -

        A.    The University Of Michigan Is An Improper
Defendant And Entitled To Dismissal ...............................- 7 -

        B.    Eleventh Amendment Immunity For The
University Defendants .......................................................- 8 -

            1.    The 11th Amendment Also Bars The SCA
Claim...........................................................................- 9 -

    II.    The Individual Defendants Have GTLA Immunity From
Both Remaining State Common Law Claims ...........................- 10 -

        A.    The University Presidents Are Absolutely
Immune As The Highest Appointed Official Of
The University ...............................................................- 11 -

        B.    Qualified Immunity Bars The Claims Against
The Lower-Level Employees............................................- 12 -

    III.    Plaintiffs Fail To State A Title IX Claim (Counts I And
II) .....................................................................................- 13 -

        A.    Plaintiffs Have Failed To State A Title IX Claim
For Sexual Harassment And Assault ................................- 14 -

i

1.     Plaintiffs Cannot Show Severe and Pervasive Sexual Harassment Based on Alleged Conduct of Which They Admit They Were Unaware ................................... - 14 -

2.     Plaintiffs Do Not Allege That the Sexual Harassment Deprived Them of Educational Opportunities ........................................... - 15 -

3.     Plaintiffs Do Not Allege "Actual Knowledge" by an Appropriate University Official ................................................... - 16 -

4.     Plaintiffs Do Not Allege Facts Demonstrating "Deliberate Indifference" To Known Sexual Harassment ................................. - 20 -

5.     There Are Insufficient Facts To Constitute Stalking ................................................... - 23 -

B.     Count II, Unequal Treatment And Benefits ....................... - 24 -

IV.     The Individual Defendants Are Entitled To Dismissal Of All Claims Against Them Because They Are All Based On Impermissible Group Pleading .................................... - 25 -

V.     The Section 1983 Constitutional Claims Should Be Dismissed For Failure To State A Claim .................................... - 26 -

A.     Requirements Applicable To All Section 1983 Claims ................................................... - 26 -

1.     Plaintiffs Must Plausibly Allege That Each Individual Defendant Personally Caused A Violation Of Plaintiffs' Constitutional Rights And That The Violation Was Apparent Under Clearly Established Law ............... - 26 -

2.     The Alleged Constitutional Violation Must Be Clearly Established ........................................... - 28 -

B.     Each §1983 Count Fails To State A Claim ....................... - 29 -

1.     Plaintiffs Have Not Alleged A Viable Search And Seizure Claim ....................................... - 29 -

ii

2.    Deprivation of Property (Count V) ........................ - 30 -

3.    Count IV – Fourteenth Amendment
      Invasion Of Privacy Fails Because Weiss
      Did Not Disclose Plaintiffs' Private
      Information .............................................. - 32 -

4.    Plaintiffs Have Failed To State Claims
      That The Individual Defendants Violated A
      Substantive Due Process Right To Property
      (Count V) ................................................ - 33 -

5.    Count VII – Plaintiff's Federal Equal
      Protection Claims Fails Because They
      Have Not Alleged That The Individual
      Defendants Treated Plaintiffs Differently
      Than Similarly Situated Males ............................ - 34 -

6.    The Bodily Integrity Claim Fails Because
      Plaintiffs Did Not Suffer A Physical
      Intrusion To Their Body (Count VI) ...................... - 36 -

VI.   The Michigan Constitutional Claims Fail To State
      Claims Against The Individual Defendants .................... - 37 -

      A.    The State Constitutional Claims Against The
            Individual Defendants Must Be Based On Clearly
            Established Law ..................................... - 37 -

      B.    There Is Not A Private Cause Of Action For
            Violation Of The Michigan Constitution's Equal
            Protection Provision (Count XI) ..................... - 38 -

      C.    Plaintiffs Cannot Pursue A Claim Under §26 Of
            The Michigan Constitution Because The Elliott-
            Larsen Civil Rights Act Provides An Equivalent
            Remedy (Count IX) .................................. - 39 -

VII.  Moving Defendants Are Entitled To Dismissal Of The
      CFAA And SCA Claims ........................................ - 40 -

      A.    There Is No Vicarious Liability Under Either
            Claim ............................................... - 40 -

            1.    The CFAA ...................................... - 40 -

            2.    The SCA ....................................... - 40 -

B. All Moving Defendants Are Entitled To Dismissal Of Both Claims For Failure To State A Claim ................................................................ - 41 -

 1. The CFAA Claim Fails To State A Claim Because Plaintiffs Do Not Allege Damages Compensable Under The CFAA ............................ - 42 -

 2. The SCA Claim Fails to State A Claim Because The Moving Defendants Are Not Service Providers To Whom the SCA Applies ................................................................ - 44 -

 3. There Is No Claim That Any Moving Defendant Knowingly Divulged Covered Communications ...................................................... - 45 -

 4. The SCA Claim is Barred by the Statute of Limitations ............................................................. - 46 -

VIII. Plaintiffs' Common Law Claims Against The Individual Defendants Fail To State Claims .................................................. - 47 -

 A. Plaintiffs Have Failed To State A Common Law Privacy Claim ..................................................... - 47 -

  1. Intrusion ............................................................... - 48 -

  2. Public Disclosure Of Private Facts ......................... - 50 -

  3. Misappropriation ................................................. - 50 -

 B. The "Recklessness" Claim (Count XVIII ......................... - 51 -

IX. Count X, ELCRA ...................................................................... - 52 -

X. The Court Should Decline To Exercise Supplemental Jurisdiction Over Any State Law Claims That Are Not Dismissed ............................................................................... - 53 -

CONCLUSION ................................................................................. - 55 -

iv

## STATEMENT  OF ISSUES PRESENTED

I.    Is "The University of Michigan" entitled to dismissal as an improper party because it is not an independent legal entity separate from the Board of Regents and therefore not capable of suing or being sued?

      Moving Defendants Answer:     Yes

      Plaintiffs Answer:     No

II.   Are the Individual Defendants entitled to dismissal of all claims against them because all claims against them are based on impermissible group allegations, there are no facts alleged separately as to each Individual Defendant as to what allegedly wrongful actions he took or unconstitutional violations he committed.

      Moving Defendants Answer:     Yes

      Plaintiffs Answer:     No

III.  Are the University Defendants entitled to dismissal of Count XVII alleging violation of the Stored Communications Act, because as an instrumentality of the state they have immunity under the 11th Amendment to the U.S. Constitution as to that claim?

      Moving Defendants Answer:     Yes

      Plaintiffs Answer:     No

IV.   Are the Individual Defendants entitled to dismissal of the two state common law claims against them, Count III (privacy and appropriation) and Count XVIII ("recklessness") because of immunity granted to them pursuant to Michigan's Governmental Tort Liability Act ("GTLA")?

      Moving Defendants Answer:     Yes

      Plaintiffs Answer:     No

V.    In addition to GTLA immunity, are the Individual Defendants also entitled to dismissal of Count III (privacy and appropriation) for failure to state a claim because plaintiffs do not allege that any of the Individual Defendants

themselves improperly accessed any private information, or that any private information that was allegedly improperly accessed by Defendant Weiss was for their benefit or was for any commercial purpose.

Moving Defendants Answer:           Yes

Plaintiffs Answer:                  No

VI.   In addition to GTLA immunity, are the Individual Defendants also entitled to dismissal of Count XVIII ("recklessness") because that is not an independent cause of action?

Moving Defendants Answer:           Yes

Plaintiffs Answer:                  No

VII.  Are the Individual Defendants entitled to dismissal of Count XVI alleging violation of the Computer Fraud and Abuse Act, for failure to state a claim because plaintiffs have not pled they suffered the only types of damages compensable under the Act?

Moving Defendants Answer:           Yes

Plaintiffs Answer:                  No

VIII. Are all Moving Defendants entitled to dismissal of Count XVII alleging violation of the Stored Communications Act, for failure to state a claim, because none of them are either a provider of electronic communication services or remote computing services that are provided to the public, nor did any knowingly divulge plaintiffs' protected information, and because that claim is barred by the applicable statute of limitations?

Moving Defendants Answer:           Yes

Plaintiffs Answer:                  No

IX.    Are the Individual Defendants entitled to dismissal of Counts IV – VIII, alleging claims under 42 U.S.C. 1983 for violations of the 14th Amendment, because of qualified immunity in that they did not violate any clearly established rights of plaintiffs, and because there are insufficient facts as to any allegedly unconstitutional acts they themselves engaged in that was a cause in fact and proximate cause of the alleged violation?

Moving Defendants Answer:        Yes

Plaintiffs Answer:               No

X.    Is the University entitled to dismissal of Counts I and II, alleging violations of Title IX, because plaintiffs admit they were unaware of the alleged sexually harassing conduct of Defendant Weiss, and because they do not allege any severe and pervasive sexually harassing conduct that denied them any education program or opportunity, or that an appropriate individual had actual knowledge of the alleged harassment but was deliberately indifferent to it?

Moving Defendants Answer:        Yes

Plaintiffs Answer:               No

XI.    Are the Individual Defendants entitled to dismissal of Count X, alleging violation of the ELCRA, because there are no allegations that they themselves engaged in any sexually harassing conduct, because plaintiffs admit they were unaware of any alleged sexually harassing conduct by Defendant Weiss, and because they do not allege any severe and pervasive sexually harassing conduct that denied them any education program or opportunity?

Moving Defendants Answer:        Yes

Plaintiffs Answer:               No

XII.   To the extent any remaining state law claim is not dismissed as to any of the Individual Defendants, should the Court decline to exercise its discretion to retain supplemental jurisdiction in order to allow all state court claims to be pursued in state court, which will avoid duplication and waste of judicial resources by splitting claims between different courts, and avoid the possibility of inconsistent decisions on matters of purely state constitutional and statutory law?

Moving Defendants Answer:       Yes

Plaintiffs Answer:               No

## INDEX OF AUTHORITIES

**Cases**

*Abu v. Dickson*,
107 F.4th 508 (6th Cir. 2024) ........................................................ - 42 -

*Abu v. Dickson*,
2023 U.S. Dist. LEXIS 91828 (E.D. Mich. 2023) ................................. - 45 -

*Albright v. Oliver*,
510 U.S. 266 (1994) ..................................................................... - 33 -

*Am. Family Mut. Ins. Co. v. Rickman*,
554 F. Supp. 2d 766 (N.D. Ohio 2008) ............................................. - 44 -

*Anderson v. Creighton*,
483 U.S. 635 (1987) ..................................................................... - 28 -

*Armstrong v. Ypsilanti Charter Twp*,
248 Mich. App. 573 (2001) ............................................................ - 11 -

*Ashcroft v. al-Kidd*,
563 U.S. 731, 131 S. Ct. 2074 (2011) ............................................... - 27 -

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................... - 27 -

*Bauserman v. Unemployment Agency*,
509 Mich. 673 (2022) ...................................... - 37 -, - 38 -, - 39 -

*Beals v. State*,
497 Mich. 363 (2015) .................................................................... - 12 -

*Bell v. City of Southfield*,
37 F. 4th 362 (6th Cir. 2022) .................................... - 32 -, - 34 -

*Bletz v. Gribble,*
641 F.3d 743 (6th Cir. 2011) .......................................................... - 52 -

*Bloch v. Ribar*,
156 F.3d 673 (6th Cir. 1998) .......................................................... - 32 -

*Bolanos v. NE. Ill. Univ.*,
2017 U.S. Dist. LEXIS 1313 (N.D. Ill. 2017) ...................................... - 10 -

*Chambers v. City of Detroit*,
786 F. Supp. 2d 1253 (E.D. Mich. 2011) ..................... - 11 -, - 13 -

ix

*Champine v. DOT*,
  509 Mich. 447 (2022) ............................................................................ - 11 -

*Chen v Hillsdale College*,
  – F.4th – (6th Cir. 8/28/2025)(for publication)........................................ - 18 -

*Courser v. Allard*,
  969 F.3d 604 (6th Cir. 2020)................................................................... - 42 -

*Cruzan v. Dir. Mo. Dep't of Health*,
  497 U.S. 261 (1990)................................................................................ - 36 -

*Cummins v. Robinson Twp.*,
  283 Mich. App. 677 (2009) .................................................................... - 33 -

*Cunningham v. Shelby County*,
  994 F.3d 761 (6th Cir. 2021) .................................................................. - 29 -

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006)................................................................................. - 8 -

*Dalley v. Dykema Gossett*,
  *P.L.L.C.*, 287 Mich. App. 296 (2010)..................................................... - 49 -

*Davis v. Monroe County Board of Ed.*,
  526 U.S. 629 (1999)..................................................................... - 16 -, - 18 -

*District of Columbia v. Wesby*,
  583 U.S. 48 (2018)....................................................................... - 27 -, - 28 -

*Doe v. Hamilton Cnty. Bd. of Educ.*,
  329 F. Supp. 3d 543 (E.D. Tenn. 2018).................................................. - 18 -

*Doe v. Office of the Kan. Sec. Comm'r*,
  2017 U.S. Dist. LEXIS 190438 (D. Kan. 2017) ..................................... - 10 -

*Duran v. The Detroit News*,
  200 Mich App. 622 (1993) ..................................................................... - 50 -

*Estate of Ritter v. University of Michigan*,
  851 F.2d 846 (6th Cir. 1988) ................................................................... - 9 -

*Gaetano v. United States*,
  994 F.3d 501 (6th Cir. 2021) ................................................................... - 8 -

*Gebser v. Lago Vista School District*,
  524 U.S. 274 (1998)................................................................................ - 16 -

*Green* v. *Mansour*,
  474 U.S. 64 (1985)................................................................................... - 9 -

x

*Guertin v. Michigan*,
   2017 U.S. Dist. LEXIS 855441 (E.D. Mich. 2017),
   rev'd in part on other grounds,
   *Guertin v. Michigan*, 912 F.3d 907 (6th Cir. 2019)....................... - 13 -, - 36 -

*Hall v. Fla. Dep't of Corr.*,
   2018 U.S. Dist. LEXIS 103585 (N.D. Fla. 2018).................................... - 10 -

*Hamed v. Wayne Cty.*,
   490 Mich 1 (2011) ................................................................................ - 41 -

*Henderson v. Walled Lake Consol. Schools*,
   469 F.3d 479 (6th Cir. 2006) ................................................................ - 22 -

*Heyerman v. Cty. of Calhoun*,
   680 F.3d 642 (6th Cir. 2012) ................................................................ - 27 -

*Hile v. Michigan*,
   86 F.4th 269 (6th Cir. 2023) .................................................................. - 7 -

*Jaleelah Ahmed v. Sch. Dist.*,
   2024 U.S. Dist. LEXIS 169748 (E.D. Mich. 2024)................................ - 25 -

*Karasek v. Regents of the Univ. of Cal.*,
   956 F.3d 1093 (9th Cir. 2020) .............................................................. - 22 -

*Kenny v. Bartman*,
   2017 U.S. App. LEXIS 16640 (6th Cir. 2017) ....................................... - 32 -

*Kerrigan v. Visalus, Inc.*,
   112 F. Supp. 3d 580 (E.D. Mich. 2015) ................................................ - 25 -

*Kesterson v. Kent State Univ.*,
   967 F.3d 519 (6th Cir. 2020) ...................................................... - 35 -, - 36 -

*Kreipke v. Wayne State University*,
   807 F.3d 768 (6th Cir. 2015) ................................................................. - 7 -

*Lambert v. Hartman*,
   517 F.3d 433 (6th Cir. 2008) ................................................................ - 32 -

*Ledl v. Quik Pik Food Stores, Inc.*,
   133 Mich. App. 583 (1984) ................................................................... - 50 -

*Lewis v LeGrow*,
   258 Mich. App. 175 (2003) ................................................................... - 48 -

*Lipian v. Univ. of Mich.*,
   453 F. Supp. 3d 937 (E.D. Mich. 2020) ................................................ - 34 -

xi

*Malick v. Croswell-Lexington Schools*,
   – F.4th – (6th Cir. 8/25/2025) ............................................... - 20 -, - 23 -, - 39 -

*Murphy v. Spring*,
   58 F. Supp. 3d 1241 (N.D. Okla. 2014).................................................- 41 -

*NetApp, Inc. v. Nimble Storage, Inc.*,
   41 F. Supp. 3d 816 (N.D. Cal. 2014) ......................................................- 40 -

*New Jersey v TLO*,
   469 US 325 (1985)................................................................................- 30 -

*Nicklas v. Koelling*,
   2004 Mich. App. LEXIS 3321 (2004) ....................................................- 11 -

*Oden v. N. Marianas Coll.*,
   440 F.3d 1085 (9th Cir. 2006) ...............................................................- 22 -

*Odom v. Wayne Cty.*,
   482 Mich. 459 (2008) ............................................................................- 12 -

*Peatross v. City of Memphis*,
   818 F.3d 233 (6th Cir. 2016) .................................................................- 30 -

*Pineda v. Hamilton Cty.*,
   977 F.3d 483 (6th Cir. 2020) .................................................................- 27 -

*Planned Parenthood Sw. Ohio Region v. Dewine*,
   696 F.3d 490 (6th Cir. 2012) .................................................................- 36 -

*Regents of the University of California v. Doe*,
   519 U.S. 425 (1997)................................................................................- 8 -

*Rondigo, L.L.C. v. Twp. of Richmond*,
   641 F.3d 673 (6th Cir. 2011) ...................................................................- 7 -

*Seminole Tribe v. Florida*,
   517 U.S. 44 (1996)..................................................................................- 9 -

*Sewell v. Bernardin*,
   795 F.3d 337 (2d Cir. 2015) ..................................................................- 47 -

*Skinner v. Oklahoma*,
   316 U.S. 535 (1942)...............................................................................- 36 -

*Smith v. City of Troy, Ohio*,
   874 F.3d 938 (6th Cir. 2017) .................................................................- 28 -

*Snyder-Hill v. Ohio State Univ.*,
   48 F.4th 686 (6th Cir. 2022) ..................................................................- 16 -

xii

*Speerly v. GM, LLC*,
  143 F.4th 306 (6th Cir. 2025) ...................................................... - 2 -

*Stanley v. Western Michigan University*,
  105 F.4th 856 (6th Cir. 2024) ........................................ - 9 -, - 55 -

*Sullivan v. Mericle*,
  2013 U.S. Dist. LEXIS 81390 (N.D. Ohio 2013)................................... - 10 -

*Sumlin v. Mt. Morris Twp.*,
  2023 U.S. Dist. LEXIS 220219 (E.D. Mich. 2023)................................ - 30 -

*Tennessee v. Lane*,
  541 U.S. 509 (2004)............................................................. - 9 -

*Torno v. 2SI, LLC*,
  2006 U.S. Dist. LEXIS 27856 (E.D. Mich. 2006)................................ - 52 -

*U.S. v. Shahulhameed*,
  629 F. App'x 685 (6th Cir. 2015) ............................................ - 42 -

*United States v. Robinson*,
  390 F.3d 853 (6th Cir. 2004) ................................................ - 30 -

*Van Buren v. U.S.*,
  593 U.S. 374 (2021)......................................................... - 43 -

*Vance v. Spencer Public School District*,
  231 F.3d 253 (6th Cir. 2000) ................................................ - 16 -

*W. Excelsior Corp. v. Propex Operating Co.*,
  2017 U.S. Dist. LEXIS 227496 (E.D. Tenn. 2017)................................ - 43 -

*Walker v. Coffey*,
  956 F.3d 163 (3d Cir. 2020) ................................................. - 46 -

*Washington v. Harper*,
  494 U.S. 210 (1990).......................................................... - 36 -

*White v. Hlavaty*,
  2023 U.S. Dist. LEXIS 130105 (E.D. Mich. 2023)................................ - 11 -

*Will v. Michigan Department of State Police*,
  491 U.S. 58 (1989)............................................................ - 8 -

*Worix v. MedAssets, Inc.*,
  869 F. Supp. 2d 893 (N.D. Ill. 2012)......................................... - 46 -

*Yoder & Frey v. EquipmentFacts*, 7
  74 F.3d 1065 (6th Cir. 2014) ................................................ - 43 -

xiii

*Zisgo v. Hurley Med. Ctr.*,
  475 Mich. 215 (2006) ................................................................ - 41 -

**Statutes**

18 U.S.C. 2702(a)(1) ................................................................ - 46 -

18 U.S.C. 2702(a)(1)-(2) .......................................................... - 45 -

18 U.S.C. 2707(f) ...................................................................... - 46 -

MCL 37.2402 ............................................................................ - 40 -

MCL 390.3 .................................................................................. - 7 -

MCL 390.4 .................................................................................. - 7 -

MCL 691.1401 ........................................................................... - 10 -

MCL 691.1407(3) ....................................................................... - 12 -

MCL 691.1407(5) ....................................................................... - 11 -

**Rules**

Fed.R.Civ.P. 12(b)(1) ........................................................ - 7 -, - 8 -

Fed.R.Civ.P. 12(b)(6) ................................................................ - 6 -

**Other Authority**

Michigan Constitution Article §26 ............................................ - 39 -

Michigan Constitution Article 8 §4 ............................................ - 9 -

Michigan Constitution Article 8 §5 .................................... - 7 -, - 9 -

# TABLE 1

# REMAINING CLAIMS AGAINST MOVING DEFENDANTS)

| Count | Regents | U of M | Ind. Def |
|---|---|---|---|
| Count I:  Title IX, Harassment And Assault | | X | |
| Count II:  Title IX, Treatment And Benefits | | X | |
| Count III:  Privacy, Michigan Common Law | | | X |
| Count IV:  §1983 Invasion Of Privacy | | | X |
| Count V:  §1983 Deprivation Of Property | | | X |
| Count VI:  §1983 Deprivation Of Bodily Integrity | | | X |
| Count VII:  §1983 Equal Protection | | | X |
| Count VIII:  §1983 Search And Seizure | | | X |
| Count IX:  Civil Rights (Michigan Constitution) (Withdrawn as to the University Defendants) | X | X | X X |
| Count X:  ELCRA Sexual Harassment And Assault (Withdrawn as to the University Defendants) | | | X |
| Count XI:  Equal Protection (Michigan Constitution) (Withdrawn as to all Moving Defendants) | | | X |
| Count XII:  Privacy and Bodily Integrity (Michigan Constitution, withdrawn as to all Moving Defendants) | | | |
| Count XIII:  Procedural Due Process (Michigan Constitution, withdrawn as to all Moving Defendants) | | | |
| Count XIV:  Search And Seizure (Michigan Constitution, withdrawn as to all Moving Defendants) | | | |
| Count XV:  State-Created Danger (Michigan Constitution, withdrawn as to all Moving Defendants ) | | | |
| Count XVI:  Computer Fraud And Abuse Act  (Withdrawn as to the University Defendants) | | | X |
| Count XVII:  Stored Communications Act | X | X | X |
| Count XVIII:  Recklessness  (Withdrawn as to the University Defendants) | | | X |
| Count XIX:  Trespass To Chattels (Withdrawn as to all Moving Defendants ) | | X | |

| | | | |
|---|---|---|---|
| Count XX:  Common Law Conversion (Withdrawn as to all Moving Defendants) | | | |
| Count XXI:  Statutory Conversion (Withdrawn as to all Moving Defendants) | | | |
| Count XXII:  Michigan Identity Theft Protection Act (Keffer Only) | | | |
| Count XXIII:  Negligence (Keffer Only)) | | | |

**IN RE: KEFFER LOPMENT
SERVICES, LLC, DATA SECURITY
BREACH LITIGATION**

Case No. 25-md-3159

HON. MARK A. GOLDSMITH

THIS DOCUMENT RELATES TO
25-cv-10806

_____/

**BRIEF IN SUPPORT OF
DEFENDANTS UNIVERSITY OF MICHIGAN, REGENTS OF THE
UNIVERSITY OF MICHIGAN, DOMENICO GRASSO, SANTA J. ONO,
MARK SCHLISSEL, WARDE J. MANUEL, DOUG GNODTKE, JAMES
JOSEPH ("Jim") HARBAUGH, RAVI PENDSE, and SOL BERMANN'S
MOTION TO DISMISS PURSUANT TO F.R.CIV.P. 12(b)(1) AND (6)**

## INTRODUCTION

### Statement of Background Facts

Matthew Weiss, whose alleged conduct is the basis for this lawsuit, was

employed by the University for less than two years, from February 2021 through

January 2023.  (Consolidated Amended Class Action Complaint, "CACC," Dkt 74,

¶53, PageID 2279).[1]  After learning of apparently unauthorized access in its systems,

the University quickly, as of December 23, 2022, "randomized" passwords for email

---

[1] Plaintiffs have mis-sequenced the paragraph numbering of the CACC, so that there
are approximately 35 paragraph numbers used twice.  See, for example, ¶416 in
Counts III and IV.  However, PageID numbers will be to the correct page, even if
the paragraph number is repeated.

addresses that had the unauthorized access, so that no further such access could take place.  (Exhibit A to CACC PageID 2428).  It quickly referred the matter to law enforcement for investigation as to whether there had been a criminal violation.  (CACC ¶60 PageID 2279; Exhibit A to CACC PageID 2428).  Plaintiffs were notified in writing of the unauthorized access, offered identity theft protection at no cost, and provided instructions as to a number of other security measures that should be taken to protect their credit, information and data.  (CACC ¶84, PageID 2282; Exhibit A to CACC PageID 2428).[2]  They were informed of the referral to law enforcement and its ongoing criminal investigation and instructed to change any passwords for non-University applications which were linked to their University email.

Mr. Weiss was placed on leave in January 2023, and just days after he was placed on leave, the University moved forward with terminating his employment.  His employment was terminated effective January 20, 2023.  (CACC ¶¶75-76, PageID 2281).  Plaintiffs acknowledge that it was Weiss's conduct in the unauthorized access which resulted in the termination of his employment.  ("Weiss was ultimately fired for this conduct…")(CACC ¶62, PageID 2279).

---

[2]  While plaintiffs style their complaint as a class action, prior to class certification only the individual claims of the named plaintiffs are before the Court.  *Speerly v. GM, LLC*, 143 F.4th 306 (6th Cir. 2025).  Therefore, all references to "plaintiffs" are to the named plaintiffs only.

Mr. Weiss is now facing federal criminal charges, and the 24 Count federal indictment alleges that for the two-day period from December 21–December 23, 2023, he improperly accessed certain computer information on University system(s). The CACC is replete with references to the federal indictment. (*See, e.g.*, ¶¶125, 127, 148, 155). It was after the indictment was filed that plaintiffs brought their lawsuits.[3]

## **Plaintiffs**

Four of the 11 Jane Doe plaintiffs (Does 1, 2, 4, and 5) are alleged to be former University of Michigan student athletes. (CACC ¶¶1, 3, 7, 9, PageID 2270-71). Six of the remaining seven plaintiffs (Does 3, 6, 7, 8, 9, and 10) are alleged to have been student athletes at other institutions but never at the University of Michigan. (CACC ¶¶5, 11, 13, 15, 17, 19, PageID 2271-72). One plaintiff (Doe 11) was never a student athlete, but is alleged to have been a student at another university but never at the University of Michigan. (CACC ¶21, PageID 2272).

## **Individual Defendants**

With regard to the positions of the Individual Defendants, plaintiffs allege:

---

[3]  On Saturday 9/6/2025, plaintiffs refiled the identical CACC in 25-md-3159. All references in this Brief are to the paragraphs and PageID of the CACC as filed in Case No. 25-10806 (Dkt 74), but will cite only the relevant paragraph(s) and PageID from that document.

Domenico Grasso is the current Interim President of the University.  He was appointed in May of 2025.  (CACC ¶31, PageID 2274).

Santa J. Ono is a former President of the University, holding that position from October 2022 to May 2025.  (CACC ¶¶33-34, PageID 2274).

Mark Schlissel is a former President of the University, holding that position from July 2014 to January 2022.  (CACC ¶¶35-36, PageID 2274-75)

Warde J. Manuel is the Athletic Director at the University, holding that position since January 2016.  (CACC ¶¶37-38, PageID 2275).

Doug Gnodtke is the Executive Associate Athletic Director and Chief of Staff for University athletics.  No dates during which he held that position are provided.  (CACC ¶39, PageID 2275).

James Joseph ("Jim") Harbaugh was (but is no longer) the head football coach at the University.  No dates during which he held that position are provided.  (CACC ¶41, PageID 2276).

Ravi Pendse is the Vice President for Information Technology and Chief Information Officer at the University holding those positions since 2018.  (CACC ¶¶44-45, PageID 2276).

Sol Bermann is the Executive Director of Privacy & Faculty Affairs in the office of the Vice President for Information Technology and Chief Information Officer at the

University. No dates during which he held that position are provided. (CACC ¶46, PageID 2277).

## Procedural Status

The 150-plus page, 633-paragraph CACC originally alleged twenty-three counts. One or more of the Moving Defendants were named in twenty-one of the twenty-three Counts. Plaintiffs have now agreed to dismiss all state law claims as to the University Defendants. The following Counts were asserted only against the University and not the BOR or Individual Defendants, and therefore, those claims are no longer pending as to any of the Moving Defendants and will not be addressed in this Motion: Counts XII (state constitution substantive due process); Count XIII (state constitution procedural due process); Count XIV (state constitution search and seizure); Count XV (state constitution state created danger); Count XIX (common law trespass to chattels); Count XX (common law conversion); Count XXI (Michigan statutory conversion).

Plaintiffs have also stipulated to dismissal as to the University Defendants, of Count IX (state constitution civil rights); Count X (violation of ELCRA); Count XI (state constitution equal protection); Count XVI (federal Computer Fraud and Abuse Act). Since those claims were also asserted as to the Individual Defendants, they will be addressed as to those Individual Defendants.

The remaining federal statutory claims against the University Defendants are Counts I and II, alleging violation of Title IX against the University only; and Count XVII alleging violation of the Stored Communications Act ("SCA").

As to the Individual Defendants, there remain five claims for violation of 42 U.S.C. §1983 and the 14th Amendment (Counts IV–VIII), violations of the CFAA and SCA claims (Counts XVI and XVII), and four state law claims (Counts III, and IX-XI).[4] Table 1 identifies the claims as originally asserted, and which of the Moving Defendants, if any, are named in the remaining claims.

For the reasons discussed below, the Moving Defendants are entitled to dismissal of all remaining claims.

## STANDARD OF REVIEW

The applicable standard of review under Rule 12(b)(6) is familiar. Although the complaint is viewed in the light most favorable to the non-moving party:

> [A] legal conclusion couched as a factual allegation need not be accepted as true.. . . [A] formulaic recitation of the elements of a cause of action will not do. . . The complaint must state a claim that is plausible on its face, i.e., the court must be able to draw a reasonable inference that the defendant is liable for the misconduct alleged. . . . Where a complaint pleads facts that are merely

---

[4] Counts IX -XI name the "University Parties." Plaintiffs assert that includes the University, BOR and Individual Defendants. (CACC ¶59, PageID 2279). The University Defendants have been dismissed from those claims, and while plaintiffs' definition of "University Parties" is unclear, the Moving Defendants address, without admitting they are named, those counts as to the Individual Defendants.

> consistent with a defendant's liability, it stops short of the line
> between possibility and plausibility of entitlement to relief.

*Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (quotations

and citations omitted).  The same standard applies to a facial challenge under Rule

12(b)(1).  *Hile v. Michigan*, 86 F.4th 269, 273 (6th Cir. 2023)(citations omitted).

In addition to the CACC and its attachments, in considering a Rule 12 motion

this Court may also consider the criminal indictment of Defendant Weiss, as it is a

public record that is referenced in and central to the complaint.  *Kreipke, supra,* 807

F.3d at 774.

## **ARGUMENT**

### I.   **THE SCA CLAIM AGAINST THE UNIVERSITY DEFENDANTS IS BARRED BY ELEVENTH AMENDMENT IMMUNITY AND LACK OF CAPACITY**

#### A.   **The University Of Michigan Is An Improper Defendant And Entitled To Dismissal**

Plaintiffs have named both "the University of Michigan" and "the Regents of

the University of Michigan" as party defendants, but the University is an improper

party because only the Board of Regents has the capacity to sue and be sued.

Michigan Constitution Article VIII §5, MCL 390.3 and MCL 390.4.   The

"University of Michigan" is not a legal or corporate entity separate from the Board

of Regents and should be dismissed because it is not a proper party.  *Kreipke v.

Wayne State University,* 807 F.3d 768 (6th Cir. 2015) (same as to Wayne State

University). This is an independent basis to dismiss any remaining claims against the University, in addition to all other grounds discussed below.

### B. Eleventh Amendment Immunity For The University Defendants

Plaintiffs have now stipulated to dismissal of all remaining state law claims against the University Defendants, based on 11th Amendment immunity. The only remaining claims asserted against the University, as distinct from the Board of Regents, are Counts I and II (Title IX) and Count XVII (SCA). The fact that the University is not a proper party entitles it to dismissal of all three claims. Moreover, in any event 11th Amendment bars the SCA claim, and deprives the Court of jurisdiction against the University and the BOR. Rule 12(b)(1).

When, as here, there is a facial attack on jurisdiction based on immunity, "the party asserting federal jurisdiction… has the burden of establishing it." *Gaetano v. United States*, 994 F.3d 501, 505 (6th Cir. 2021), quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 fn.3 (2006). Plaintiffs do not, and cannot, meet that burden.

The Eleventh Amendment bars "any suit in law or equity, commenced or prosecuted against one of the United States." Under the Eleventh Amendment there is an "established jurisprudence" that a state cannot be sued without its consent. *Will v. Michigan Department of State Police,* 491 U.S. 58, 67 (1989). That immunity also applies to claims against instrumentalities of the state. *Regents of the University of California v. Doe,* 519 U.S. 425, 429 (1997). See also, *Tennessee v. Lane*, 541 U.S.

509, 517 (2004)("[T]he Eleventh Amendment bars suits against state entities in federal court…").

The BOR is a constitutionally created arm of the State, charged with supervision of the University and election of a President. (*See*, Michigan Constitution, Article VIII, §§4 and 5). Thus, the University Defendants are entitled to Eleventh Amendment immunity to the same extent as the State itself. *See, e.g., Stanley v. Western Michigan University*, 105 F.4th 856, 864 (6th Cir. 2024)(because the constitutionally created public university was "an arm of the State of Michigan, a suit against [that University] is a suit against Michigan." *See also*, *Estate of Ritter v. University of Michigan*, 851 F.2d 846, 850-51 (6th Cir. 1988)(Eleventh Amendment applies to the Board of Regents.)

### 1.   The 11th Amendment Also Bars The SCA Claim

Plaintiffs may not maintain a claim against the state under a federal statute unless Congress has abrogated the state's 11th Amendment immunity. Therefore, the threshold question regarding application of 11th Amendment immunity is "whether Congress has 'unequivocally expressed its intent to abrogate the immunity'[.]" *Seminole Tribe v. Florida*, 517 U.S. 44, 55 (1996), citing *Green* v. *Mansour*, 474 U.S. 64, 68 (1985). Absent such unequivocal expression of intent, 11th Amendment immunity bars a claim against the state or its instrumentalities.

- 9 -

Congress has not done so in the SCA as the courts considering this issue have held.  Dismissing SCA claims based on 11th Amendment immunity, s*ee e.g.*, *Sullivan v. Mericle*, 2013 U.S. Dist. LEXIS 81390, at *4–5 (N.D. Ohio 2013)("Plaintiff seeks monetary damages for past behavior and Congress has not abrogated the state's immunity.  The Eleventh Amendment therefore is an absolute bar for this suit for damages against the State of Ohio or its agency."); *Bolanos v. NE. Ill. Univ.*, 2017 U.S. Dist. LEXIS 1313, at *55 n.37 (N.D. Ill. 2017)("The court has found nothing to suggest the state has waived sovereign immunity for claims, or that Congress abrogated that immunity.")  To the same effect, dismissing SCA claims due to 11th Amendment immunity:  *Doe v. Office of the Kan. Sec. Comm'r*, 2017 U.S. Dist. LEXIS 190438, at *12–13 (D. Kan. 2017); *Hall v. Fla. Dep't of Corr.*, 2018 U.S. Dist. LEXIS 103585, at *6 (N.D. Fla. 2018).  This immunity, too, in addition to all other grounds discussed below, independently entitles the University Defendants to dismissal of the SCA claim.

## II.    THE INDIVIDUAL DEFENDANTS HAVE GTLA IMMUNITY FROM BOTH REMAINING STATE COMMON LAW CLAIMS

The Individual Defendants have immunity, pursuant to Michigan's Governmental Tort Liability Act MCL 691.1401, *et. seq.* ("GTLA"), to both state common law claims asserted against them; Count III ("privacy and appropriation") and Count XVIII ("recklessness." Both claims are now asserted only as to the

Individual Defendants. This GTLA immunity is an independent ground for dismissal, in addition to all other grounds discussed in this brief.

"The plaintiff must plead facts in avoidance of governmental immunity. . . . Plaintiffs can accomplish this by stating a claim that fits within a statutory exception or by pleading facts that demonstrate that the alleged tort occurred during the exercise or discharge of a non-governmental or proprietary function." *Chambers v. City of Detroit*, 786 F. Supp. 2d 1253, 1271 (E.D. Mich. 2011)(internal quotations omitted). Plaintiffs have not done so. And because GTLA immunity is a question of law, it is properly resolved on a motion to dismiss. *Champine v. DOT*, 509 Mich. 447, 452 (2022). *See also, White v. Hlavaty*, 2023 U.S. Dist. LEXIS 130105, at *20 (E.D. Mich. 2023) (dismissal granted based on GTLA immunity where plaintiff failed to plausibly plead facts in avoidance of immunity).

### A. The University Presidents Are Absolutely Immune As The Highest Appointed Official Of The University

Under MCL §691.1407(5) "the elective or highest appointive executive office of all levels of government" is absolutely immune if "acting within the scope of his or her legislative or executive authority." Immunity covers both negligent and intentional torts. *Nicklas v. Koelling*, 2004 Mich. App. LEXIS 3321, at *3 (2004), citing *Armstrong v. Ypsilanti Charter Twp*, 248 Mich. App. 573, 592-594 (2001). Each of the three named University Presidents – Schlissel, Ono and Grasso – are or

were the "highest appointed executive".  *See* Michigan Constitution, Article VIII §5 (the Board of Regents shall elect a president to be "the principal executive officer of the institution…").  The CACC alleges that each of them, at all relevant times was "an employee of the University and his conduct was under color of law."  (CACC ¶¶32, 34, PageID 2274; ¶36, PageID 2275).  In essence, plaintiffs claim that the authority they had in the scope of their employment as Presidents was exercised poorly.  But they are absolutely immune for conduct while exercising, that authority.  They are entitled to dismissal of both these claims.

### B.   Qualified Immunity Also Bars The Claims Against The Lower-Level Employees

The GTLA also provides qualified immunity to the lower-level employees for those same two claims.  The applicable GTLA standard for immunity for such claims against lower-level employees is that:

> governmental employees enjoy qualified immunity for intentional torts . . . if (1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than ministerial, in nature.

MCL §691.1407(3); *Odom v. Wayne Cty.*, 482 Mich. 459, 461 (2008).  Not only must plaintiffs plead in avoidance of immunity, but a government employee is immune unless he or she is "the ***one*** most immediate, efficient, and direct cause of that injury."  *Beals v. State*, 497 Mich. 363, 365 (2015)(quotation omitted, emphasis

added).  "It is not enough to say any defendant's actions were "among" those that caused plaintiffs' harm.  Rather, the test is whether a jury could reasonably find, if plaintiffs proved their allegations, that a defendant, individually, was the most direct cause of the harm.  *Guertin v. Michigan*, 2017 U.S. Dist. LEXIS 85544, at *80-81 (E.D. Mich. 2017), rev'd in part on other grounds, *Guertin v. Michigan*, 912 F.3d 907 (6th Cir. 2019).

Plaintiffs do not allege that any of the lower-level Individual Defendants acted in bad faith, or that any of them were the one most immediate cause of plaintiffs' alleged injuries.  And, as discussed below, the skeletal allegations as to each of the Individual Defendants are insufficient to do so.  Therefore, plaintiffs have failed to meet their burden of alleging facts in avoidance of GTLA immunity. *Chambers*, *supra* at 1271.  The two common-law tort claims against the Individual Defendants should be dismissed.

## III.    PLAINTIFFS FAIL TO STATE A TITLE IX CLAIM (COUNTS I AND II)

Plaintiffs allege that the University (not the Regents) violated Title IX.  As indicated in Section I, the University is not a proper defendant, and since those claims are asserted only against the University, it is entitled to dismissal on that basis alone.  Moreover, those claims also fail to state claims upon which relief can be granted.

- 13 -

**A.     Plaintiffs Have Failed To State A Title IX Claim For Sexual Harassment And Assault**

Count I alleges a Title IX violation of "sexual harassment and assault."  It is based on alleged sexual harassment and "assault" resulting from Weiss's unauthorized access and the claimed intentional indifference to it by the University.  Plaintiffs allege the University's inaction "created a heightened risk of sex-based discrimination, including cyber sexual harassment, sexual assault, privacy invasion and/or stalking." (CACC ¶372, PageID 2348).

> 1.  Plaintiffs Cannot Show Severe and Pervasive Sexual Harassment Based on Alleged Conduct of Which They Admit They Were Unaware

"Sexual harassment" under Title IX is "[u]nwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the recipient's education program or activity."  (CACC, ¶335, PageID 2337-38).  A fatal flaw in Count I is that plaintiffs do not claim that they had knowledge while they were at the University of what Weiss was allegedly doing or had done.

In fact, they assert just the opposite, alleging that "The 2022 breach did not come to light until March 20, 2025, when the Government charged Defendant Weiss with a 24-count indictment."  (CACC, ¶125, PageID 2292).  "Plaintiffs and class members now know some details *only* because of the March, 2025 indictment that

revealed to the victims *for the first time*, crucial but scant details of what had been done to them."  (CACC, ¶127, PageID 2292, emphasis added).  By March 2025, when plaintiffs allege they first became aware, it was more than two years after Weiss had been fired by the University.  And by that time all of the University of Michigan plaintiffs had long before left the University.  (CACC ¶¶1, 3, 7 and 9, PageID 2270-71).  But one cannot claim to have been subjected to a severe and pervasive sexually harassing educational environment based on conduct of which she says she was unaware.

> 2.  Plaintiffs Do Not Allege That the Sexual Harassment Deprived Them of Educational Opportunities

Additionally, plaintiffs fail to identify any educational program or activity of which they were deprived based on the alleged sexual harassment.  There is no claim that their participation in athletics was curtailed or ended or affected in any way, or that there was any non-athletic program or activity in which they were unable to participate or which was affected.

Nor could they make such a claim given the same admission, that they had already left the University – and therefore both their University athletic and educational careers had ended – before they had any knowledge of the alleged harassment.  A non-student has standing to bring a Title IX claim only if that individual was "subjected to discrimination while participating, or at least attempting to participate, in the funding recipient's education program or activity,"

something not alleged here.  *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 708 (6th Cir. 2022).  Just as with the harassment allegation itself, one cannot claim to have been deprived of any educational program or activity as the result of alleged sexually harassing conduct of which she was unaware.  Moreover, plaintiffs fail to include any facts identifying an educational program or activity for which they claim they were denied equal access as the result of severe and pervasive sexual harassment.

       3.    <u>Plaintiffs Do Not Allege "Actual Knowledge" By An Appropriate University Official</u>

Plaintiffs concede that for a Title IX sexual harassment claim, they must show that the University had ***actual knowledge*** of the sexual harassment, but nonetheless was deliberately indifferent to it.  (CACC, ¶335, PageID 2337).  *See also*, *Vance v. Spencer Public School District*, 231 F.3d 253, 258-59 (6th Cir. 2000).  But despite that concession, plaintiffs do not sufficiently allege such actual knowledge.

The required actual knowledge must be that of an "appropriate person," that is, an official with authority to institute corrective measures on behalf of the institution.  *Gebser v. Lago Vista School District*, 524 U.S. 274, 277 (1998).  There is neither imputed or constructive knowledge nor respondeat superior liability under Title IX.  *Lipian v. Univ. of Mich.*, 453 F. Supp. 3d 937, 957 (E.D. Mich. 2020) (citing *Davis v. Monroe County Board of Ed.,* 526 U.S. 629, 642 (1999); *Gebser,* 524 U.S. at 285.

In *Kesterson v. Kent State Univ.*, 967 F.3d 519, 526 (6th Cir. 2020), the Sixth Circuit concluded that the athletic coach to whom the university student-athlete had directly reported a sexual assault was not an "appropriate person" because it was the university's Title IX Coordinator who had the authority to take corrective actions on behalf of the University. There is no claim in this case that alleged sexual harassment was reported by any plaintiff to the University's Title IX Coordinator, to the Title IX Office, or to any official at the University.

Nor is the conclusory allegation that "between December 21 and 23, 2022, an individual staff member saw Weiss viewing plaintiffs' private information at Schembechler Hall" and that "The individual who saw Weiss reported it within the University" sufficient. (CACC ¶¶54, 57, PageID 2279). Plaintiffs do not identify "the individual staff member" or to whom "within the University" it was allegedly reported. That conclusory allegation is insufficient to show actual knowledge by a specific individual who had the authority to take action.

Neither do allegations of wholly unrelated incidents by other individuals at the University, some long ago, demonstrate the necessary "actual knowledge" by an appropriate person here. Actual notice based on alleged prior incidents, requires notice of conduct by the same alleged harasser. "The weight of the case law supports the conclusion that once on notice that *a faculty member* has sexually harassed others, the school is on notice that *he* may harass more students." *Lipian,* 453 F. Supp. 3d

- 17 -

at 959-60 (emphasis added).  *See also*, *Doe v. Hamilton Cnty. Bd. of Educ.*, 329 F. Supp. 3d 543, 567 (E.D. Tenn. 2018) ("Under *Davis [v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999)], actual knowledge can be derived from ***a harasser's*** past harassment.")(emphasis added).  There is no claim that an appropriate University official had actual notice of any alleged inappropriate conduct by Weiss prior to the December 2022 unauthorized access, or even that the December 2022 unauthorized access itself provided such actual knowledge.

Just over a week ago the Sixth Circuit issued an instructive opinion in *Chen v. Hillsdale College*, – F.4th – (6th Cir. 8/28/2025)(for publication).  While that case involved affirming summary judgment of state law claims of sexually inappropriate conduct, the Court's statements are instructive regarding plaintiffs' desire to hold the University liable for Weiss's alleged conduct:

> The key problem with their theory of liability turns on duty, more precisely the absence of a duty on Hillsdale's part to prevent these assaults by one student against another.  Michigan does not impose a "duty to protect another from the criminal acts of a third party." (cite omitted, opinion pp. 4-5, attached as exhibit A).

Plaintiffs point to allegations of past conduct by a former Provost, a former physician, and a former President – scattered over many years.  But those incidents, without defending them, have no connection to Weiss's alleged conduct.  The former Provost is alleged to have "made comments about women's bodies" and "stored explicit photos of his victims on University-owned devices."  (CACC ¶¶117-118,

PageID 2289).  But while they claim he stored (not obtained) photos on University owned devices, there is no claim that he used any University system to gain unauthorized access into students' email or Google accounts and thereby obtain explicit photos of them, the core of the claims here.

Similarly, they allege that the former physician over a period of some thirty years "sexually assaulted and raped thousands of student victims."  (CACC ¶115, PageID 2288).  And while not minimizing Weiss's alleged conduct, there is no claim here that he had *any* physical contact with any plaintiff, much less the decades long rapes attributed to the physician.  With regard to former President Schlissel, without addressing whether his conduct was appropriate given his position, there is no claim that he engaged in any relationship that was non-consensual or sexually harassing.

None of the alleged conduct of those three individuals is claimed to have involved unauthorized access into students' private emails or accounts, the central claims against Weiss.  Those incidents are entirely dissimilar to this case and are insufficient to constitute actual knowledge here by an appropriate person.  That is, nothing about those situations put an individual with the required authority on notice that in this particular situation, an assistant football coach would (or could) gain unauthorized access into female athletes' email or google accounts and then allegedly other accounts on which private videos or photos were stored.

- 19 -

4.      Plaintiffs Do Not Allege Facts Demonstrating "Deliberate
        Indifference" To Known Sexual Harassment

Nor have plaintiffs sufficiently pled that any official who had actual knowledge was deliberately indifferent to sexual harassment.  Just recently the Court of Appeals addressed the deliberate indifference element in *Malick v. Croswell-Lexington Schools*, – F.4ᵗʰ – (6th Cir. 8/25/2025)(for publication, attached as exhibit B).[5]  The Court of Appeals affirmed summary judgment of a harassment claim stating:

> Showing deliberate indifference is no easy task.  A plaintiff must establish that her school responded "to known acts of . . . harassment" in a "clearly unreasonable" manner.  Through it all, we "ask not whether the school's efforts were ineffective but whether they amounted to an official decision not to remedy" the harassment. (Opinion p. 5)

No such showing can be made.

The only claim of unauthorized access prior to the December 2022 access is the single conclusory allegation that "Weiss also accessed Plaintiffs' information prior to December 21, 2022."  (CACC ¶70, PageID 2280).  Plaintiffs provide no particular date or supporting facts.  And that conclusory allegation regards only

---

[5]  That case involved alleged racial harassment in violation of Title VI, but the court applied the same standards and analysis as applicable to a sexual harassment claim under Title IX.

Weiss's alleged actions, not that any "appropriate person" at the University had actual knowledge at an earlier date but was deliberately indifferent.

Undisputed actions taken by the University belie any claim of deliberate indifference. Plaintiffs allege that on January 10, 2023, law enforcement executed search warrants at the University football facilities and seized computer equipment used by Weiss. (CACC ¶74, PageID 2281). They concede that Weiss was placed on leave just one week later and was "fired for this conduct" just three days after that. (CACC ¶¶62, 75-76, PageID 2279, 2281).

Other undisputed steps also demonstrate there was no deliberate indifference. As of December 23, 2022, just two days after the time the indictment indicates Weiss first had unauthorized access, the University "randomized" plaintiffs' passwords so that no further unauthorized access could occur. (*See* exhibit A to CACC). And plaintiffs were notified in writing of the unauthorized access. (*See* CACC Exhibit A; CACC ¶84, PageID 2282). Plaintiffs were notified the unauthorized access was possibly criminal and that the University had already referred the matter to law enforcement and a criminal investigation was ongoing. (Exhibit A to CACC).

Plaintiffs were specifically informed that they should change passwords on any non-University accounts or services that were linked to their University email. It was recommended that they complete a Google security check and were provided instructions as to how to do so. They were told to check their umich email password

- 21 -

settings and to report any unfamiliar settings to the University police. (Exhibit A to CACC). They were also offered identity theft protection at no cost. (CACC ¶86, PageID 2286).

Whether plaintiffs took any of those recommended proactive steps, the steps taken by the University (and the notice and recommendations provided to plaintiffs) are contrary to any claim of deliberate indifference.

The total elapsed time from when the indictment alleges the unauthorized access occurred until Weiss was fired was less than one month (December 21, 2022 – January 20, 2023). *See Henderson v. Walled Lake Consol. Schools*, 469 F.3d 479, 492 (6th Cir. 2006)(no deliberate indifference in Title IX claim when "[a]ll in all, less than a month passed between Jill's [the plaintiff's] parents' complaint in early to mid-April … and Crawford's [the perpetrator's] termination in early May.")(bracketed material added). Even far longer periods between a complaint and formal action have been found insufficient to constitute deliberate indifference. *See, e.g.*, *Karasek v. Regents of the Univ. of Cal*., 956 F.3d 1093, 1106 (9th Cir. 2020)(8 ½ months between complaint and sanctions); *Oden v. N. Marianas Coll*., 440 F.3d 1085 (9th Cir. 2006)(9 months between sexual assault and formal hearing).

The University is not required to disprove deliberate indifference. The is no requirement that it prove the effectiveness of a response. But here there is no claim that the steps taken by the University were ineffective or that allegedly harassing

- 22 -

conduct continued.  There is no claim that after December 23, 2022, Weiss engaged in any further unauthorized access or inappropriate conduct.

In *Malick*, *supra*, plaintiff attempted to prove deliberate indifference at least in part by claiming, like plaintiffs here, a general atmosphere of harassment or tolerance of it.  The court rejected the argument that other unrelated conduct, or a general harassing atmosphere, could demonstrate deliberate indifference:

> Applied here, C.M. [the plaintiff] sees the school's response to her complaints as unreasonable in light of the "known circumstance" of widespread racial harassment on campus.  But tacking on this additional known circumstance does not change the fact that *the deliberate indifference inquiry must focus on the particular incidents of harassment suffered by C.M. and the school's response to those particular incidents*.  As shown above, the school's response to each incident was sufficient, even if it knew about a broader issue with racism.  (Exhibit B, p. 9, emphasis added).

So too, here, deliberate indifference is not considered based on allegations involving a former provost or physician or others.  Rather, it is considered based on the alleged harassment by Weiss as to the Jane Doe plaintiffs, and the University's response to it.  There is nothing to show that there was known harassment but the University's response "amounted to an official decision not to remedy the harassment."  *Id*.

## 5.   There Are Insufficient Facts To Constitute Stalking

Count I also alleges that Weiss engaged in "stalking" that constituted sexual assault.  "Stalking" is a course of conduct directed at a specific person that would cause a reasonable person to fear for her safety or the safety of others, or suffer

substantial emotional distress.  (CACC ¶337, PageID 2338).  Without minimizing the criminal conduct with which Weiss is charged, this allegation of Title IX violation suffers from the same defect as the sexual harassment allegation.  That is, plaintiffs admit that they were unaware of any alleged "stalking" until just a few months ago, after Weiss was indicted.  Just as one cannot be sexually harassed by conduct of which she is unaware, one cannot be in fear for her safety based on conduct of which she is unaware and which had ended by the time she says she became aware.  The University is entitled to dismissal of Count I.

### B.   Count II, Unequal Treatment And Benefits

Count II is captioned as an alleged Title IX violation based on unequal treatment and benefits between male and female athletics.  While plaintiffs make vague allegations of unequal programs between male and female athletics, they offer no facts nor do they claim that any such alleged unequal programs denied them educational or athletic opportunities.

Count II largely repeats the allegations in Count I, that Weiss's conduct constituted sexual harassment to which the University was deliberately indifferent.  (*See, e.g.*, CACC ¶¶381-83, PageID 2351).  Count II has the same deficiencies as Count I; it does not identify an individual who had actual knowledge of sexual harassment, had the authority to take action but was deliberately indifferent.  It again fails to identify how plaintiffs were denied any educational program or opportunity.

And while there is a vague claim that female athletes were denied equal access to medical and training services, which is unrelated to any allegation regarding Weiss's alleged conduct, plaintiffs admit in the very next paragraph that female athletes did receive medical and training services from the University. (CACC ¶¶392-393, PageID 2354). Plaintiffs provide no facts as to which medical or training services were allegedly unequally provided, or how they were denied equal access. Nor do they set forth any facts regarding unequal treatment they or any other female athlete received, or that there is a disparity in general as to benefits offered to male athletes but not female athletes. Count II fails to state a claim upon which relief can be granted and the University is entitled to dismissal.

## IV.    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO DISMISSAL OF ALL CLAIMS AGAINST THEM BECAUSE THEY ARE ALL BASED ON IMPERMISSIBLE GROUP PLEADING

All of plaintiffs' claims against the Individual Defendants fail because they all "lump together 'the Defendants' without specifically identifying which of the Defendants engaged in the conduct alleged." *Kerrigan v. Visalus, Inc.*, 112 F. Supp. 3d 580, 600 (E.D. Mich. 2015). *See also*, *Jaleelah Ahmed v. Sch. Dist.*, 2024 U.S. Dist. LEXIS 169748, at *8 (E.D. Mich. 2024)("[T]he Sixth Circuit [does not allow] grouping all defendants together collectively and providing no factual basis to distinguish each defendant.")

- 25 -

But that is exactly what plaintiffs have done here.  No less than 66 paragraphs are directed to the Individual Defendants collectively.  They bring 12 Counts against the Individual Defendants, and in every one of those Counts *all of them* are named. There is not a single count brought against less than all the Individual Defendants, notwithstanding that they had different roles with different responsibilities and levels of authority, and, in the case of the University Presidents, at different times.  And there is nothing in the surrounding allegations that allow any of the eight Individual Defendants to answer, for each of the claims in which they are named, the obvious question "why am *I* being sued."  This failure pervades and defeats every one of the claims asserted against the Individual Defendants.

## V.   THE SECTION 1983 CONSTITUTIONAL CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A.   Requirements Applicable To All Section 1983 Claims

1.   <u>Plaintiffs Must Plausibly Allege That Each Individual Defendant Personally Caused A Violation Of Plaintiffs' Constitutional Rights And That The Violation Was Apparent Under Clearly Established Law</u>

Plaintiffs allege five federal constitutional claims, all against the Individual Defendants only and in their individual capacities:  Counts IV (Invasion of Privacy); V (Deprivation of Property); VI (Bodily Integrity); VII (Equal Protection); and VIII (Search and Seizure).  To state a claim against any Individual Defendant, plaintiffs must plausibly allege three elements for each of the §1983 claims:  First, that a

- 26 -

plaintiff's constitutional rights were violated. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080 (2011). Second, that "a defendant was *personally* at fault and that the defendant's culpable conduct (not somebody else's) **caused** the injury." *Pineda v. Hamilton Cty.*, 977 F.3d 483, 490 (6th Cir. 2020)(emphasis in original). And third, that "the unlawfulness of their conduct [was] clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Plaintiffs must state a claim separately for each Individual Defendant.

"[A] plaintiff must plead that each…defendant, **through the official's own individual actions**, has violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)(emphasis added). *See also*, *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012)("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior."); and *Pineda, supra*.

This pleading obligation cannot be avoided by the scores of allegations including all, or substantially all of the Individual Defendants by name or by use of plaintiffs' defined term "Individual Defendants," without differentiation. *See, e.g.,* CACC ¶239, PageID 2318; ¶¶414-415, PageID 2360-61. In light of the failure to specify what each Individual Defendant is alleged to have done, plaintiffs fail to state any §1983 claim against any of the Individual Defendants. (Since these requirements apply to all of the §1983 claims, Moving Defendants will not always repeat them when addressing each of those Counts).

2. <u>The Alleged Constitutional Violation Must Be Clearly Established</u>

None of the Individual Defendants is alleged to have personally violated plaintiffs' constitutional rights, as previously explained. But even if any of them arguably might have, each is entitled to qualified immunity, and dismissal, because any purported violation was not clearly established at the time of the alleged wrongful conduct. *District of Columbia v. Wesby*, 583 U.S. 48 (2018).

To be clearly established, the violation must be "clear to a reasonable [person in that defendant's position] that his conduct was unlawful in the situation he confronted." *Id.* at 63 (quotation omitted). Only caselaw of the Supreme Court and, perhaps, controlling authority from the Sixth Circuit, is sufficient for a right to be clearly established. *City of Escondido v. Emmons*, 586 U.S. 38, 43 (2019). Further, a clearly established right must be identified in more than a generalized sense. *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987), and must "squarely govern[] the specific facts at issue." *City of Escondido*, 586 U.S. at 43. Whether a right is clearly established is a "question[] of law for the court." *Smith v. City of Troy, Ohio*, 874 F.3d 938, 944 (6th Cir. 2017).

Plaintiffs "bear the burden of showing that the right was clearly established." *Cunningham v. Shelby County*, 994 F.3d 761, 765 (6th Cir. 2021). The CACC alleges that the law was clearly established, but does so only at the highest possible level of generality. For example, plaintiffs allege that it was clearly established that

- 28 -

they had "the right not to be deprived of [their] property."  (CACC ¶438, PageID 2367).  *See also*, ¶418, PageID 2363 (privacy); ¶428, PageID 2365, (privacy); ¶461, PageID 2374 (right to bodily integrity); ¶480, PageID 4378 (equal protection); ¶492, PageID 2379; (discrimination); ¶502, PageID 2383-2384 (warrantless searches and seizures); and ¶513, PageID 2387 ("rights secured by the Fourth Amendment").

These allegations – being legal are not entitled to a presumption of truth – fall woefully short of meeting that burden.  The burden remains on plaintiffs to establish not only that each Individual Defendant violated the Constitution, but that any violations were clearly established.  The "clearly established" requirement applies to each of the five §1983 counts, and therefore will not be repeated separately for each count.

## B.    Each §1983 Count Fails To State A Claim

### 1.    Plaintiffs Have Not Alleged A Viable Search and Seizure Claim

Count VIII alleges a Fourth Amendment search and seizure violation under §1983 and the 14th Amendment against the Individual Defendants.   The only "search" alleged was by Weiss, not any of the Individual Defendants.  (CACC ¶504. Count VIII, PageID 2384).  Plaintiffs allege that the Individual Defendants' "actions or inactions" violated the Fourth Amendment. *Id*. ¶503.  Plaintiffs' claim fails for at least two independent reasons.

First, they do not allege that any of the Individual Defendants conducted or participated in a search.  Even if, *arguendo*, any of them could have taken steps that might have prevented Weiss's alleged search, that does not make them Fourth Amendment violators.  This is true even for the Individual Defendant who allegedly had supervisory responsibility over Weiss, unless "the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it..." *Sumlin v. Mt. Morris Twp.*, 2023 U.S. Dist. LEXIS 220219, at *9 (E.D. Mich. 2023), quoting *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016).  Plaintiffs have made no such allegation as to any of the Individual Defendants.

Second, the Fourth Amendment applies only to law enforcement and other government actors intending to investigate or enforce criminal laws or breaches of other statutory or regulatory standards, *New Jersey v TLO*, 469 U.S. 325, 335 (1985), or to private actors acting for the sole  purpose of assisting the government in doing so.  *United States v. Robinson*, 390 F.3d 853, 871-72 (6th Cir. 2004).  Plaintiffs do not and cannot allege that the Individual Defendants satisfy that requirement. Indeed, even Weiss does not satisfy that standard, so there is no Fourth Amendment search at all, much less one against any Individual Defendant.

## 2. Deprivation of Property (Count V)

Count V alleges a deprivation of property without due process. (CACC beginning at ¶434, PageID 2367).  The Individual Defendants are entitled to

- 30 -

dismissal for several independent reasons.  First, it is Weiss, not the Individual Defendants, who allegedly deprived plaintiffs of their property.  A plaintiff "cannot hang his hat on [defendant's] status as a state employee.  The distinction between private conduct and state action turns on substance, not labels:  Private parties can act with the authority of the State, and state officials have private lives and their own constitutional rights'." *Lindke v. Freed*, 601 U.S. 187, 197 (2024).  For conduct to be considered state action the challenged action must be meaningfully related to the official's governmental status or performance of duties. *MacKey v. Rising*, 106 F.4th 552, 559 (6th Cir. 2024)(internal citations omitted).  Here, Weiss's actions indisputably do not relate to his job duties.

Therefore, it is not necessary for purposes of this motion to determine whether Weiss's alleged conduct was unconstitutional; the §1983 claims against the Individual Defendants must be dismissed even without deciding that issue. Plaintiffs' failure to allege facts as to the Individual Defendants' direct involvement means that the §1983 claims against the Individual Defendants fail to state claims and should be dismissed.

### 3. Count IV – Fourteenth Amendment Invasion Of Privacy Fails Because Weiss Did Not Disclose Plaintiffs' Private Information

The Supreme Court has identified the freedom from disclosure of personal information as a type of protected privacy interest. *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008)(quotation marks omitted). That right "has been coined an informational right to privacy" and is the only protected privacy right arguably implicated by the CACC. *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998). Plaintiffs allege that Weiss's "exploitation of [their] private images and PII, which were obtained without consent through cyber intrusion" violated their right to privacy. (CACC ¶419, PageID 2363). But they never allege that Weiss, much less any of the Individual Defendants, ***disseminated*** their personal information. That failure is fatal to their informational right-to-privacy claim. See *id.*; see also *Kenny v. Bartman*, 2017 U.S. App. LEXIS 16640, at *17-18 (6th Cir. 2017)("Moreover, [the plaintiff] does not allege that [the defendants] disseminated any of the pictures. [The plaintiff] therefore has failed to state a constitutional claim for violation of his right to privacy."). Plaintiffs' failure to plead a crucial element of their informational right-to-privacy claim means they cannot show that Weiss – let alone the Individual Defendants – violated their clearly established right to informational privacy. *See Bell v. City of Southfield*, 37 F. 4th 362, 367 (6th Cir. 2022).

- 32 -

4.      <u>Plaintiffs Have Failed To State Claims That The Individual Defendants Violated A Substantive Due Process Right To Property (Count V)</u>

In Count V, plaintiffs allege that the Individual Defendants deprived them of their constitutional substantive due process rights to property.  Those claims are predicated on allegations of Weiss accessing and retaining their private information and data.  But such conduct classically falls under a search-and-seizure analysis, the claim plaintiffs explicitly assert in Count VIII.  Plaintiffs cannot repackage and relabel that same claim as arising and stating a claim under substantive due process. *See, e.g.*, *Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Cummins v. Robinson Twp.*, 283 Mich. App. 677 (2009).  That is what plaintiffs have done here as well.  And the claim fails for other reasons.   Even assuming it might be considered a constitutionally protected property right, a defendant is only liable for the tort of misappropriation if the defendant's use was for a "predominantly commercial purpose . . . .  The use must be mainly for purposes of trade, without a redeeming public interest, news, or historical value." *Battaglieri v. Mackinac Ctr. For Pub Policy*, 261 Mich. App. 296, 302 (2004).).  While plaintiffs allege, in a different claim, that Weiss's conduct harmed the value of their NIL, they fail to allege either there or in this Count that he – let alone any of the Individual Defendants – benefitted commercially from the same.  (CACC ¶¶365-366, PageID 2346-47).

Plaintiffs cannot establish a constitutionally protected property right for purposes of Count V.  And because there was no underlying constitutional violation, plaintiffs cannot show that the Individual Defendants violated a clearly established property right as protected by substantive due process.  See *Bell, supra,* 37 F. 4th at 367.

     5.    <u>Count VII – Plaintiff's Federal Equal Protection Claims Fails Because They Have Not Alleged That The Individual Defendants Treated Plaintiffs Differently Than Similarly Situated Males</u>

Plaintiffs allege that, through Weiss's actions, the Individual Defendants denied them equal protection because "Plaintiffs and Class Members were treated differently from similarly situated individuals who were not members of the protected class, in that Weiss primarily targeted female athletes.  Similarly situated male athletes were not subjected to the same sexual harassment, sexual assaults and/or stalking, as their female peers." (CACC ¶485, PageId 2379).

"In order to state a claim for an equal protection violation based upon gender discrimination, [a] [p]laintiff must demonstrate that [s]he was treated differently – under the same facts and circumstances – than a member of the opposite gender." *Lipian v. Univ. of Mich.*, 453 F. Supp. 3d 937, 964 (E.D. Mich. 2020)(quotation marks omitted).  But the allegations do not support a claim that the Individual Defendants treated plaintiffs differently than males in the same facts and circumstances. They do not allege that the University had different information

- 34 -

technology security policies or practices for females and males, nor that that there were different policies or practices regarding training, supervision, enforcement, or any other policy or practice, nor that the Individual Defendants made gender-based decisions.    Plaintiffs allege that Weiss "primarily targeted female athletes" conceding that Weiss also targeted male athletes. But they never allege that the Individual Defendants treated any of the male athletes differently than plaintiffs. That failure entitles the Individual Defendants to dismissal of the equal protection claim.

Moreover, plaintiffs fail to connect the alleged equal-protection violation to any action by the Individual Defendants.    Plaintiffs fail to allege that any of the Individual Defendants were actively involved in Weiss's alleged offensive conduct. As indicated previously, there can be no supervisory liability absent a showing of active involvement or encouragement in unconstitutional conduct by each Individual Defendant.    Plaintiffs make no such showing.    Consequently, they fail to sufficiently allege that the Individual Defendants themselves violated plaintiffs' constitutional right to equal protection and Count VII must be dismissed.

The Sixth Circuit has set a high bar for a clearly established equal-protection claim based on sexual misconduct at a university.    In *Kesterson v. Kent State Univ.*, 967 F.3d 519, 526 (6th Cir. 2020), the Sixth Circuit held that there was no clearly established equal-protection violation after a softball coach failed to report that her

student-son had allegedly raped a student-athlete softball player. The Individual Defendants here had far less notice – if any – of any sexual misconduct by Weiss than the actual notice of the head coach in *Kesterson*.

Finally, plaintiffs do not allege plausibly allege intentional discrimination, a necessary element of an equal protection claim. *Washington v. Davis*, 426 U.S. 229, 239-41 (1976). For all of these reasons, Count VII should be dismissed.

### 6. The Bodily Integrity Claim Fails Because Plaintiffs Did Not Suffer A Physical Intrusion To Their Body (Count VI)

The constitutional right to bodily integrity means the "right ***to be free from forcible physical intrusions*** of their bodies against their will, absent a compelling state interest." *Planned Parenthood Sw. Ohio Region v. Dewine*, 696 F.3d 490, 506 (6th Cir. 2012). Thus, courts have found that the right to bodily integrity is violated by, *e.g.*: the forcible injection of medication (*Washington v. Harper*, 494 U.S. 210, 229 (1990)), or unwanted medical treatment (*Cruzan v. Dir. Mo. Dep't of Health*, 497 U.S. 261, 278 (1990), or forced sterilization (*Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942)), or, as in the Flint Water Cases, the consumption of unsafe water (*Guertin v. Michigan*, 912 F.3d 907, 919 (6th Cir. 2019)). Plaintiffs do not allege a physical intrusion, because that is not what happened here. The claim should be dismissed.

## VI.   THE MICHIGAN CONSTITUTIONAL CLAIMS FAIL TO STATE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

Plaintiffs have now stipulated to dismiss all state constitutional claims against the University Defendants. But they continue to assert two of those claims against the Individual Defendants, Count IX (civil rights) and Count XI (equal protection). See Table 1. The state constitutional claims are largely duplicative of or mirror the federal constitutional claims in Counts IV–VIII and fail to state claims against the Individual Defendants for the same reason discussed as to the federal constitutional claim counterparts (Count VII, equal protection).

### A.   The State Constitutional Claims Against The Individual Defendants Must Be Based On Clearly Established Law

In *Bauserman v. Unemployment Agency*, 509 Mich. 673 (2022), the Supreme Court clarified some of the constitutional boundaries of liability, holding, that a court has authority to provide a remedy for a constitutional violation "unless (1) the [Michigan] Constitution has delegated to another branch of government the obligation to enforce the constitutional right at issue, or (2) another branch of government has provided a remedy that [the Michigan Supreme Court] consider[s] adequate." *Bauserman*, 509 Mich at 696 (citations omitted). "To be adequate, the legislative remedy should be at least as protective of constitutional rights as a judicially recognized remedy would be." *Id.* at 705. Michigan courts generally look to and follow the federal law analogs.

The Court should apply the "clearly established" requirement to the state constitutional claims because the policy consideration underlying that requirement is recognized in under Michigan law. *See, e.g., Proctor v. Saginaw Cty. Bd. of Comm'rs,* 340 Mich. App. 1, 12 (2022) ("Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law [under the GTLA]. *Proctor v. Saginaw Cty. Bd. of Comm'rs*, 340 Mich. App. 1, 12 (2022); *VanVorous v. Burmeister*, 262 Mich. App. 467, 475 (2004) (applying the clearly established requirement to a state law claim.)

### B.   There Is Not A Private Cause Of Action For Violation Of The Michigan Constitution's Equal Protection Provision (Count XI)

Count XI (now pending only against the Individual Defendants) asserts that plaintiffs were denied equal protection under Article I, § 2 of the Michigan Constitution.   *Bauserman*, *supra*, squarely held that there is no private equal protection claim under § 2:

> There are instances in which the Constitution specifically tasks the Legislature with implementing the rights it affords. ***An example is Const. 1963, art. 1, § 2***, which concludes by stating, "The legislature shall implement this section by appropriate legislation." Therefore, the Constitution delegates the construction of the remedy for violation of Const. 1963, art. 1, § 2 to the Legislature.

*Id.* at 871, emphasis added.   Further, even if a private action were possible, it fails for the same reasons as the federal equal protection claim in Count VII.

- 38 -

Plaintiffs also cannot show deliberate indifference, for the reasons stated regarding the Title IX claim.  And without that showing her equal protection claim also fails.  *See, Malik, supra* at p. 8: "Because no deliberate indifference occurred, [plaintiff's] Title VI claim fails.  And that means her separate claim under 42 U.S.C. ¶1983 for violation of the Equal Protection Clause also fails."  Count XI should be dismissed.

### C.   Plaintiffs Cannot Pursue A Claim Under §26 Of The Michigan Constitution Because The Elliott-Larsen Civil Rights Act Provides An Equivalent Remedy (Count IX)

As with the equal protection claim, there is no private right of action for the civil rights constitution claim.  *Bauserman,* 509 Mich at 705, held that there is not a private cause of action under the Michigan Constitution if:

> the Legislature has already provided an adequate mechanism to remedy a constitutional tort, this Court is not required to duplicate the effort. However, we emphasize that the Legislature's alternative must be at least as protective of a particular constitutional right . . . recognized remedy would be.

Mich. Const. Art. I, §26, prohibits, in relevant part, discrimination based on sex in public education. It also provides that remedies for violating §26 "shall be the same . . . as  are otherwise available for violations of Michigan anti-discrimination law."  *Id.*   Thus, plaintiffs cannot obtain a remedy under § 26 that is not already available by statute.

ELCRA's protections are indistinguishable from Article I, § 26.  ELCRA prohibits an educational institution and its agents from "discriminating against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of sex."  MCL §37.2402. (cleaned up).  ELCRA provides a full range of remedies and damages.  For this reason Count IX should be dismissed.

## VII.  MOVING DEFENDANTS ARE ENTITLED TO DISMISSAL OF THE CFAA AND SCA CLAIMS

### A.    There Is No Vicarious Liability Under Either Claim

#### 1.    The CFAA

The CFAA claim (Count XVI) has been dismissed as to the University Defendants and is now alleged only as to the Individual Defendants.  There can be no vicarious liability as to the Individual Defendants, who were not Weiss's employers. And in no event would vicarious liability attach here.  *See, e.g., NetApp, Inc. v. Nimble Storage, Inc.,* 41 F. Supp. 3d 816 (N.D. Cal. 2014)(Vicarious liability exists under the CFAA only if the principal wrongdoer was acting within the scope of employment or the employer "directs" the employee's wrongdoing).  There is no such showing.

#### 2.    The SCA

The SCA claim (Count XVII), is alleged against all Moving Defendants.  As discussed initially, *supra*, the University Defendants have 11th Amendment immunity

as to the SCA claim and are entitled to dismissal on that basis alone.  And in addition to immunity, as with the CFAA, there can only be vicarious liability under the SCA if "the employer 'affirmatively urged the employee to access the plaintiff's computer system beyond his authorization for their benefit'."  *Murphy v. Spring*, 58 F. Supp. 3d 1241, 1266 (N.D. Okla. 2014).

That is consistent with general principles of vicarious liability:

> [A]n employer is not liable for the torts committed by an employee when those torts are beyond the scope of the employer's business. This Court has defined "within the scope of employment" to mean engaged in the service of his master, or while about his master's business.  Independent action, intended solely to further the employee's individual interests, cannot be fairly characterized as falling within the scope of employment.

*Hamed v. Wayne Cty.*, 490 Mich 1, 10-11 (2011)(internal quotations omitted).  *See also, Zisgo v. Hurley Med. Ctr.*, 475 Mich. 215 (2006)("[T]he general rule is that an employer is not liable for the torts intentionally or recklessly committed by an employee when those torts are beyond the scope of the employer's business").  There are no such claims here.  There can be no vicarious liability for Weiss's allegedly criminal conduct, which was wholly outside his responsibility as an Assistant Football Coach and done for his own purposes.

## B.   All Moving Defendants Are Entitled To Dismissal Of Both Claims For Failure To State A Claim

The University Defendants are no longer named in the CFAA claim.  Therefore, there is no vicarious liability under that claim, and the Individual Defendants can be

liable only for their own acts. Nor is there vicarious liability as to the University Defendants in the SCA claim as previously indicated.

And there are no facts suggesting that any of the Individual Defendants themselves obtained any private information regarding plaintiffs in violation of either Act. Further, there can be no liability against any Moving Defendant for any alleged conduct by Weiss after January 20, 2023, the date plaintiffs admit his employment at the University terminated. (CACC ¶76, PageID 2281). *See, Abu v. Dickson*, 107 F.4th 508, 516 (6th Cir. 2024), citing *U.S. v. Shahulhameed*, 629 F. App'x 685, 688 (6th Cir. 2015) for the proposition that "firing an employee cut off his 'authorization' to access company accounts, even though the employee could still log in."

1. The CFAA Claim Fails To State A Claim Because Plaintiffs Do Not Allege Damages Compensable Under The CFAA

The CFAA claim fails to state a claim as to the Individual Defendants, the only Moving Defendants still named in that Count. The plaintiffs fail to make any allegations as to how any of the Individual Defendants themselves violated the Act by improperly accessing any information. But further, the only damages potentially available for a claim under the CFAA are damages to a computer system or database resulting from improper access. The CACC alleges no such damages against any of the Moving Defendants, even the now dismissed University Defendants. *See Courser v. Allard*, 969 F.3d 604, 619 (6th Cir. 2020)(affirming dismissal of CFAA claim,

because that claim is "limited to damage to the illegally-accessed computer or computer system, or loss incurred because the computer's service was interrupted **and does not include subsequent use of illegally-obtained information**.". . . . The district court properly determined that Courser failed to state a claim under the CFAA. (cite omitted). *See also Yoder & Frey v. EquipmentFacts*, 774 F.3d 1065, 1072-73 (6th Cir. 2014)(discussing the types of "damage" and "loss" compensable under the Act.

As the Supreme Court stated in *Van Buren v. U.S.*, 593 U.S. 374 (2021):

> Provisions defining "damage" and "loss" specify what a plaintiff in a civil suit can recover. "'[D]amage,"'the statute provides, means "any impairment to the integrity or availability of data, a program, a system, or information." The term "loss" likewise relates to costs caused by harm to computer data, programs, systems, or information services. § 1030(e)(11). The statutory definitions of "damage" and "loss" thus focus on technological harms – such as the corruption of files – of the type unauthorized users cause to computer systems and data. Limiting "damage" and "loss" in this way makes sense in a scheme "aimed at preventing the typical consequences of hacking." The term's definitions are ill fitted, however, to remediating '"misuse" of sensitive information that employees may permissibly access using their computers. (cites omitted).

*See also*, *W. Excelsior Corp. v. Propex Operating Co.*, 2017 U.S. Dist. LEXIS 227496, at *9 (E.D. Tenn. 2017)("The CFAA does not contemplate consequential damages that are unrelated to harm to the computer itself."; "Losses under the CFAA are only compensable when they result from damage to a computer system or the

inoperability of the accessed system").  To the same effect, *Am. Family Mut. Ins. Co. v. Rickman*, 554 F. Supp. 2d 766 (N.D. Ohio 2008).

Plaintiffs quote the statutory language that a violation requires that one "intentionally or recklessly causes damage without authorization."  (CACC ¶562, PageID 2403).  But other than quote the statutory language, plaintiffs here do not allege damages to the University's computers or systems (or any other computers or systems) or any loss of any data.  They make the conclusory statement that "the class may recover damages in this civil action from each of the Defendants, as well as injunctive relief" (CACC ¶572, PageID 2405).  But they do not, in the CFAA Count, allege to have suffered any damages at all, much less the type compensable under the Act.  The Individual Defendants are therefore also entitled to dismissal of the CFAA on that basis for failure to state a valid claim.

2.     The SCA Claim Fails to State A Claim Because The Moving Defendants Are Not Service Providers To Whom the SCA Applies

None of the Moving Defendants are the type of service providers covered by the SCA.  None are "a facility through which an electronic communication service is provided" or a "remote computing service" provider, such as "telephone companies, internet or e-mail service providers" *Abu v. Dickson*, 2023 U.S. Dist. LEXIS 91828, at *20 (E.D. Mich. 2023).   On that basis alone, dismissal is appropriate.

- 44 -

Moreover, the SCA applies only such facilities that provide those services ***to the public.***" 18 U.S.C. § 2702(a)(1)-(2).  But there is no allegation that any of the Moving Defendants provide any such computer or electronic services ***to the public.*** *See*, *Walker v. Coffey*, 956 F.3d 163, 166 (3d Cir. 2020)("The SCA is inapplicable because Penn State does not provide electronic communication services *to the public…*")

### 3. There Is No Claim That Any Moving Defendant Knowingly Divulged Covered Communications

Further, the SCA provides that "a person or entity providing an electronic communication service to the public shall not ***knowingly divulge*** to any person or entity the contents of a communication while in electronic storage…" 18 U.S.C. 2702(a)(1)(emphasis added).  There is no claim that any of the Moving Defendants divulged, or even had access to, any communication of plaintiffs while in electronic storage.  An alleged failure to safeguard data does not satisfy the "knowingly divulge" requirement. *See, e.g., Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 896 (N.D. Ill. 2012).  Additionally, they fail to allege or provide facts that any unauthorized access, even by Weiss, resulted in obtaining the type of "wire or electronic communication ***while it is in electronic storage***" which they admit is a necessary element.  (CACC ¶574, PageID 2405-6).

4.    The SCA Claim is Barred by the Statute of Limitations

The SCA claim is also time-barred.  An SCA action "may not be commenced later than two years after the date upon which the claimant first discovered or had a reasonable opportunity to discover the violation."  18 U.S.C. § 2707(f).  The original complaint filed in case 25-10806 (prior to the consolidation), was filed March 21, 2025 (ECF #1).

Plaintiffs received a Notice letter from the University regarding the unauthorized access.  (CACC ¶84, Page ID 2282).  The Notice letter refers to itself as the "Data Incident Notification Letter from Feb. 2023," and provides contact information if additional information is desired.  (CACC, ¶102, PageID 2285; *see also* CACC Exhibit A, PageID 74-4, 2431).  Among other things, the Notice letter informed plaintiffs of the unauthorized access itself, and also that (i) the access was possibly criminal in nature; (ii) the investigation had already been turned over to law enforcement, (iii) non-University accounts which were linked to a University email might also have been accessed and (iv) to prevent any further unauthorized access the University had randomized email passwords.  Plaintiffs themselves characterize the Notice letter as indicating that the unauthorized access "had led to the compromising of private data."  (CACC, ¶84 PageID 2282).

- 46 -

Under the SCA, the limitations period starts to run when a plaintiff has information that would motivate a reasonable person to investigate whether someone intentionally accessed a covered facility and obtained unauthorized access. *Sewell v. Bernardin*, 795 F.3d 337, 340 (2d Cir. 2015). The *Sewell* court held that knowledge of unauthorized access there alone was sufficient to start the limitations period. *Id.* at 341. By plaintiffs' own admission the February 2023 Notice provided them with notice of "unauthorized access" and "compromising of private information" as well as additional information. That was sufficient to start the running of the statute of limitations. The SCA claim is barred as to all Moving Defendants by the applicable statute of limitations.

## VIII. PLAINTIFFS' COMMON LAW CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FAIL TO STATE CLAIMS

### A. Plaintiffs Have Failed To State A Common Law Privacy Claim

In Count III, plaintiffs allege that each of the Individual Defendants (not the University Defendants) violated their right to privacy. Therefore, plaintiffs must plausibly allege separately for each Individual Defendant that he engaged in conduct and invaded their privacy.

"Invasion of privacy" is an umbrella term for several distinct torts. *Lewis v LeGrow,* 258 Mich. App. 175, 193 (2003). Here, plaintiffs advance three of those privacy torts: *i*) intrusion upon seclusion or into private affairs; *ii*) public disclosure

of embarrassing private facts; and *iii*) appropriation, for the Defendants' advantage, of the plaintiffs' name or likeness.  (CACC ¶407, PageID2358-59).

       1.   <u>Intrusion</u>

The elements of the intrusion tort are :  "(1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man." *Dalley v. Dykema Gossett, P.L.L.C.*, 287 Mich. App. 296, 306 (2010).

Here, plaintiffs admit that ***only Weiss*** obtained plaintiffs' private information (CACC ¶409, PageID 2359).  As to the Individual Defendants, they only allege that their (collectively, not individually) "actions and/or inactions wrongfully appropriated Plaintiffs' and Class Members' NIL rights in that their ability to leverage their NIL rights on their own terms has been undermined," and that the Individual Defendants, collectively, acted with deliberate indifference.  (*Id.* ¶414, PageID 2360).

Plaintiffs' allegations fail for several reasons.  First, and most obviously, they do not allege that any of the Individual Defendants accessed, received, or benefitted from the private information.  Second, assuming *arguendo* that a person who did not themselves access the private information could ever be liable, plaintiffs do not

plausibly allege that any Individual Defendant acted with the necessary intent for such a tort.

Plaintiffs further fail to state an intrusion claim because they have not plausibly alleged that any of the Individual Defendants obtained any information regarding any plaintiff. The CACC focuses entirely on Weiss's actions. *E.g.*, CACC ¶338, PageID 2339 ("[Weiss] obtained private photographs and videos never intended to be shared by their owners with anyone but their intimate partners"). While plaintiffs allege, in an entirely conclusory fashion, that "[t]he Individual University Employees' actions violated Plaintiffs' and Class Members' right to privacy," they provide no facts concerning what those supposed tortious "actions" are. (CACC ¶ 407, PageID 2359).

This is wholly insufficient to state claims against the Individual Defendants. For example, the "intrusion" theory requires, among other things, that plaintiffs plead "the obtaining of information about that subject matter ***by defendant*** through some method objectionable to the reasonable man." *Tobin v. Michigan Civil Service Commission*, 416 Mich. 661, 672 (1982) (emphasis added). The CACC is devoid of allegations that any of the Individual Defendants took any affirmative actions to obtain plaintiffs' private information. This alone requires dismissal as to all three theories alleged.

### 2.   Public Disclosure Of Private Facts

Plaintiffs' second theory, public disclosure of private or embarrassing facts, fails because the CACC alleges no such broad public disclosure, an indispensable element.   "A cause of action for public disclosure of private facts requires the **disclosure** of information…"   *Duran v. The Detroit News*, 200 Mich App. 622, 631 (1993).   The disclosure must be "to the public in general or to a large number of people."   *Ledl v. Quik Pik Food Stores, Inc.,* 133 Mich. App. 583, 592 (1984).

There is no allegation or facts alleged that Weiss disclosed information to the public at large, to a large number of people or indeed, to anyone.   But most importantly, there are no allegations or facts that the Individual Defendants publicly disclosed (or even had access to) plaintiffs' private information.

### 3.   Misappropriation

Plaintiffs' third theory, misappropriation, similarly fails.   As plaintiffs concede, an appropriation claim requires that the name or likeness be appropriated "for the defendant's advantage."   (CACC ¶406, PageID 2358, quoting *Battaglieri,* 261 Mich. App. at 300.)   However, not only do plaintiffs fail to allege that any of the Individual Defendants themselves "appropriated" any plaintiff's name or likeness, there is no claim that any purported appropriation was for any Individual

Defendant's own advantage.  Indeed, Weiss is the only person they allege used plaintiffs' personal information for his own use.  (CACC ¶408, PageID 2359).

Further, misappropriation requires not just "use" for the Individual Defendants' advantage, but that the use be for a "commercial purpose," meaning "mainly for purposes of trade."  *Battaglieri*, 261 Mich. App. at 302.  There are no allegations at all that any of the Individual Defendants used the private intimate information of any plaintiff for his own advantage, or for any purpose, much less a commercial one.  At most, the CACC in conclusory terms merely alleges, without facts, that **Weiss** used that information, (CACC ¶¶409-410, PageID 2359).  But conclusory or not, these allegations as to Weiss do not support a claim against the Individual Defendants.  For these reasons the Individual Defendants are entitled to dismissal of Count III.

## B.      The "Recklessness" Claim (Count XVIII)

This claim has been dismissed as to the University Defendants but not the Individual Defendants.  But the Individual Defendants are entitled to dismissal of Count XVIII because of GTLA immunity as discussed initially.

Moreover, the Individual Defendants are also entitled to dismissal because "recklessness" fails to state an independent claim upon which relief can be granted.  "Recklessness" is an element of certain other causes of action, which are not asserted here.  But "recklessness" is not an independent cause of action under Michigan law.

- 51 -

*Torno v. 2SI, LLC*, 2006 U.S. Dist. LEXIS 27856, at *3 (E.D. Mich. 2006).  While the term "gross negligence" also appears in the "Recklessness" Count (CACC ¶600, PageID 2410), that too is not an independent cause of action.  *Bletz v. Gribble,* 641 F.3d 743, 756 (6th Cir. 2011).  And plaintiffs plead a negligence claim specifically, Count XXIII, but only as to Keffer not any of the Moving Defendants.  Thus, Count XVIII fails to state a claim and should be dismissed.

## IX.   COUNT X, ELCRA

Count X is captioned a claim for "sexual harassment and assault," the same as the Count I Title IX claim.  It has been dismissed as to the University Defendants, and assuming, without conceding, that plaintiffs attempt to include the Individual Defendants in that claim, they are entitled to dismissal.

The ELCRA claim suffers from some of the same legal deficiencies as the Title IX claim.  That is, plaintiffs cannot claim sexual harassment based on conduct of which they say they were unaware.  Further, they do not identify any educational opportunity or program which was purportedly adversely affected by harassment, nor could they since, again, they admit they were unaware of the alleged harassment.

Importantly, they also fail to allege any specific sexually harassing conduct as to any given Individual Defendant, the only Moving Defendants still in that claim.  As with their other claims, they allege this claim against all Individual Defendants as a group.  But what sexually harassing conduct, by way of example only, could

*e.g.*, Defendant Grasso have engaged in?  He was by plaintiffs' own admission only appointed Interim President a few months ago, more than two years after Weiss's employment was terminated, and long after any of the plaintiffs were University of Michigan students.  The Individual Defendants are entitled to dismissal of this claim.

## X.   THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER ANY STATE LAW CLAIMS THAT ARE NOT DISMISSED

The University Defendants clearly have 11th Amendment immunity as to all state law claims against them.  Moving Defendants further contend, for the reasons stated above, that there is GTLA immunity as to virtually all state law claims against them and that all state law claims fail to state claims.

Plaintiffs have stipulated to dismiss all the state law claims against the University Defendants but not the Individual Defendants.  But dismissal of some but not all state law claims, or dismissal of some but not all of the Moving Defendants, already means that if those state law claims against the Individual Defendants were not dismissed for failure to state claims, and the Court were to exercise supplemental jurisdiction it would result in some state law claims, or even parts of them as to some Moving Defendants, remaining in federal court while others, if pursued, would be in state court.

Such a result is clearly an inefficient use of judicial resources and would create other issues such as the possibility of inconsistent decisions regarding matters of

- 53 -

purely state constitutional and statutory law.  In short, all state law claims against the Moving Defendants should be dismissed; they do not belong in federal court.[6]

Except as to claims to which immunity applies, for which dismissal is mandatory, an exercise of supplemental jurisdiction over state law claims is discretionary.  As the Sixth Circuit stated recently in *Stanley v. Western Michigan University*, 105 F.4th 856, 866 (6th Cir. 2024):  "District courts do not have to exercise supplemental jurisdiction…"  "[A] district court has discretion in deciding whether to exercise supplemental jurisdiction."

If any state law claim as to any Moving Defendant is not dismissed as legally deficient, the Court should decline to exercise its discretion to assert supplemental jurisdiction and should dismiss all the state law claims as to all Moving Defendants.

---

[6]  Indeed, attorneys for some of the plaintiffs in the consolidated Michigan cases are already pursuing a lawsuit in state court involving similar or identical state law claims.

## **CONCLUSION**

For the foregoing reasons, Moving Defendants request that their Motion be granted, and that the CACC be dismissed as to them, in its entirety.

BUTZEL LONG

*s/ Daniel B. Tukel*
201 West Big Beaver Road
Suite 1200
Troy, Michigan  48084
(248) 258-1616
tukel@butzel.com
(P34978)

*s/ Sheldon Klein*
201 West Big Beaver Road
Suite 1200
Troy, Michigan  48084
(248) 258-1616
klein@butzel.com
(P41062)

DATED:    September 8, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2025, I electronically filed the foregoing paper, Defendants University of Michigan, the Regents of the University of Michigan, Domenico Grasso, Santa J. Ono, Mark Schlissel, Warde J. Manuel, Doug Gnodtke, James Joseph Harbaugh, Ravi Pendse, and Sol Bermann's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), with the Clerk of the Court using the ECF system which will send notification of such filing to all parties registered with ECF,  and which is served on pro se Defendant Matthew Weiss via email to mattwprose@gmail.com, and by U.S. Mail, to:

Matthew Weiss
2075 W Stadium Blvd #1066
Ann Arbor, MI  48106

s/ Daniel B. Tukel
201 West Big Beaver Road
Suite 1200
Troy, Michigan  48084
(248) 258-1616
tukel@butzel.com
(P34978)