UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: KEFFER DEVELOPMENT
SERVICES, LLC, DATA SECURITY
BREACH LITIGATION

*THIS DOCUMENT RELATES TO:*
*1:25-CV-11151*

Case No. 25-md-03159
HON. MARK A. GOLDSMITH

_____

**PLAINTIFF JANE DOE'S RESPONSE TO DEFENDANT MATTHEW
WEISS'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT (ECF NO. 6)**

## **Table of Contents**

INDEX OF AUTHORITIES ............................................................................ iv, v, vi

STATEMENT OF ISSUES PRESENTED........................................................... vii

INTRODUCTION…………………………………………………………..viii

STATEMENT OF RELEVANT FACTS………………………………………...1

STANDARD OF REVIEW……………………………………………………...2

ARGUMENT……………………………………………………………………3

I.   Massachusett's Long-Arm Statute and Due Process Support the Exercise of Personal Jurisdiction Over Defendant Weiss………………..3

A. Burden of Proof……………………………………………………….3
B. The Court has Personal Jurisdiction Over Defendant Weiss………….3

1. Massachusetts Long-Arm Statute Easily Confers Jurisdiction Under G.L. 223A, § 3(d)…………………………………………….4

a. Weiss's Hacking and Unauthorized Access Were Intentional Tortious Acts Committed Outside Massachusetts That Caused Injury Inside Massachusetts…………………………………..5

b. Weiss's Actions Also Meet the Statutory Requirement of Regularly Engaging in a Persistent Course of Conduct in Massachusetts …………………………………6

2. The Exercise of Personal Jurisdiction over Weiss is Consistent with Due Process…………………………………...7

II.   Weiss Violated Plaintiff's Privacy, Safety, and Identity, Causing Her Injuries that Confer Standing Under Article III…………………………...8

A. Plaintiff Alleges a Concrete Injury-in-Fact……………………………8

B. Plaintiff Alleges Traceability and Redressability……………………14

III.   Plaintiff Properly Pleads a Qualifying Loss under the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030…………………………...16

IV.     Plaintiff Properly Alleges that Weiss Accessed "Communications in Electronic Storage" in Violation of the Stored Communicaiton Act (18 U.S.C. § 2701)……………………………………………………………..19

V.      Intrusion Upon Seclusion is an Actionable Tort under Mass. Gen. Laws. Ch. 214, §1B and Properly Pled by Plaintiff……………………………..21

VI.     Plaintiff's Count V – Negligence and Gross Negligence – is Not Brought Against Weiss……………………………………………………………...23

CONCLUSION……………………………………………………………....23

# TABLE OF AUTHORITIES

**Cases**

*Amato v. District Attorney for Cape and Islands Dist.*, 80 Mass. App. Ct. 230 (2011) ................................................................................... 21

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ......................................................... 2

*Attias v. Carefirst, Inc.*, 865 F.3d 620, 629 (D.C. Cir. 2017) ............................... 14

*Backlund v. Stanley-Snow*, 220 F. Supp. 3d 127, 131–32 (D. Mass. 2016) ............ 6

*Bohnak v. Marsh & McLennan Companies, Inc.,* 79 F.4th 276, 286 (2d Cir. 2023) ................................................................................................................. 10

*Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) ........................ 3, 4

*Bowen v. Prosche Cars, N.A., Inc.*, 561 F. Supp. 3d 1362, 1371 (N.D. Ga. 2021). 18

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.,* 582 U.S. 255 (2017) ...................................................................................................... 4

*Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1174 (11th Cir. 2017) ........ 16

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 627 (N.D. Cal. 2021).................. 19

*Carlsen v. GameStop, Inc.,* 833 F.3d 903, 910 (8th Cir. 2016) ........................... 16

*Clemens v. ExecuPharm Inc.,* 48 F.4th 146, 157 (3d Cir. 2022) ......................... 10

*Cossart v. United Excel Corp.*, 804 F.3d 13, 20 (1st Cir. 2015)............................ 5

*Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 485 (N.D. Cal. 2021)......................... 16

*DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763 (1989) ......... 11

*Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 281 (6th Cir. 2010) ...................... 2

*Fabreeka Int'l Holdings, Inc. v. Haley*, Civil No. 15-cv-12958, 2015 U.S. Dist. LEXIS 154869, at *13 (E.D. Mich. Nov. 17, 2015)....................................... 17

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 359 (2021) ... 4

*Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995)..... 3

*Friends of the Earth, Inc, v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 180 (2000) ................................................................................................... 14

*Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 3–4 (1979).................... 6

*Health First, Inc., v. Hynes*, 2014 WL 12648552, at *11 (M.D. Fla. Sept. 17, 2014) ................................................................................................................. 18

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 621 n.8 (4th Cir. 2018) ................................................................................................... 16

*In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.,* 2021 WL 5937742, at *9 (D.N.J. Dec. 16, 2021) ................................................. 11

*In re Pawn Am. Consumer Data Breach Litig.*, 2022 WL 3159874, at *3 (D. Minn. Aug. 8, 2022) ................................................................................ 10

*In re TJX Cos. Retail Sec. Breach Litig.*, 524 F. Supp. 2d 83, 90–92 (D. Mass. 2007) ............................................................................... 5, 7

*Lazette v. Kulmatycki*, 949 F. Supp. 2d 748, 759 (N.D. Ohio 2013) .................... 20

*Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992) .................................... 9, 15

*Mackey v. Belden, Inc.*, 2021 WL 3363174, at *6 (E.D. Mo. Aug. 3, 2021) ......... 15

*Mass. Sch. of Law v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998) ................... 4

*Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1142 (E.D. Cal. 2021) ................. 19

*McLaughlin v. Meehan*, 2018 WL 1041371, at (D. Mass. Jan. 19, 2018) ........... 22

*Nelson v. Salem State College*, 466 Mass. 525, 536 (2006) .............................. 22

*Nolan v. Detroit Edison Co.*, et al., 2019 WL 2996178, at *10 (E.D. Mich. July 9, 2019) ................................................................................... 2

*Pawn*, 2022 WL 3159874, ...................................................... 10, 15

*Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008) ............................... 3

*Polay v. McMahon*, 468 Mass. 379 (2014) .............................................. 21, 22

*Resnick v. Avmed, Inc.*, 693 F.3d 1317, 1329-30 (11th Cir. 2012) ...................... 14

*SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 325–26 (2017) ....................... 4, 7

*Sonexa Analytics, LLC v. Code42 Software, Inc.*, 2022 WL 673584, at *4 (D. Mass. Mar. 7, 2022) ................................................................................ 5

*Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767 (1994) ...................................... 6

*Ticketmaster–N.Y., Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994) ...................... 3

*TransUnion*, 594 U.S. at 425 ............................................................. 9, 10

*U.S.S. Yachts, Inc. v. Ocean Yachts*, Inc., 894 F.2d 9, 11 (1st Cir. 1990) ............... 4

*United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 35 (1st Cir. 1999) ................. 3

*Webb v. Injured Workers Pharmacy, LLC,* 72 F.4th 365 (1st Cir. 2023) ...... 11, 12, 13

*Weisenberger v. Ameritas Mut. Holding Co.*, 597 F.Supp. 3d 1351, 1359 (D. Neb. 2022) ................................................................................ 14

*Yeshov v. Gannett Satellite Info. Network, Inc.*, 204 F. Supp. 3d 353, 362-64 (D. Mass. 2016) .......................................................................... 11

**Statutes**

18 U.S.C. § 1030(e)(11) ................................................................... 17

18 U.S.C. §§ 1030(c)(4)(A)(i)(I), (e)(11) .................................................. 16

Massachusetts Long-Arm Statute Easily Confers Jurisdiction Under G.L. 223A, § 3(d) ........................................................................................... 4

**Other Authorities**

Computer Fraud and Abuse Act (CFAA) .................................................... passim
Massachusetts General Laws Chapter 214, Section 1B ..................................... 21
Stored Communications Act (SCA) ........................................................ vi, 19

**Rules**

Rule 12(b)(2) ............................................................................... 3

## STATEMENT OF ISSUES PRESENTED

1.  Whether Plaintiff pled sufficient contacts between Weiss and Massachusetts to establish personal jurisdiction.

    Plaintiff Answers:  Yes.

2.  Whether Plaintiff pled sufficient facts of a concrete injury to support Article III standing.

    Plaintiff Answers:  Yes

3.  Whether Plaintiff alleged plausible claims for violations of the Computer Fraud and Abuse Act (CFAA), Stored Communications Act (SCA), intrusion upon seclusion, negligence and gross negligence claims requiring denial of the Defendant's motion to dismiss.

    Plaintiff Answers:  Yes

## INTRODUCTION

This case arises out of Defendant Weiss's intentional, tortious, and criminal violations of Plaintiff's privacy. Specifically, Weiss intentionally targeted Plaintiff Jane Doe, a Massachusetts resident, based on her school affiliation (as a student athlete at Simmons University in Massachusetts), as well as her athletic history and physical characteristics. Defendant's goal was to obtain private information, intimate photographs and videos never intended to be shared beyond Plaintiff and her intimate partners. This class action lawsuit, filed against Defendants, Simmons University, Keffer Development Services, LLC, and Matthew Weiss, seeks justice for the unauthorized access and misuse of personal information of students – an abuse so severe that students, including Jane Doe, are now receiving formal notification from the U.S. Department of Justice that their private information has been exposed. This action, brought by Plaintiff on behalf of herself and others similarly situated, seeks to hold Defendants, including Weiss, accountable.

Prior to commencement of discovery, Defendant Weiss brings this motion to dismiss the claims asserted against him in the Plaintiff's Complaint. A review of applicable law and the allegations of the Complaint, however, demonstrate that Plaintiff has asserted plausible claims and bases for personal jurisdiction and standing.  The motion, therefore, should be denied.

## STATEMENT OF RELEVANT FACTS

Since the parties have not yet engaged in discovery, this statement of facts is drawn solely from the Plaintiff's complaint. Plaintiff was a student athlete at Simmons University in Boston, Massachusetts from 2012 to 2016. ECF 6, Complaint ¶1[1]. During that time, she was a member of Simmon's cross country team. *Id*. During her time as a student athlete at Simmons, Plaintiff received treatment from the athletic training staff. *Id*. ¶ 74. During that treatment, Plaintiff was required to disclose personal private information and was required to use the Athletic Training System database supplied by Defendant Keffer. *Id*. at ¶¶ 74-75.

In late March 2025, Plaintiff received notice that she was a victim in the criminal case against Defendant Matthew Weiss. Compl. ¶¶ 78, 24 and Exhibit A. Weiss was indicted for unauthorized access to computers and aggravated identify theft as a result of his hacking into computers and obtaining personal identifiable information (PII) and protected health information (PHI) of students and alumni. *Id*. at ¶¶ 7, 23.

Between 2015 and January 2023, Weiss gained unauthorized access to student and student athlete databases at more than 100 colleges and universities, including Defendant Simmons. Compl. at ¶¶ 14, 21. These databases were maintained by

---

[1] Plaintiff does not site Page.ID for the Complaint as they were cut off with the filing. Plaintiff refers to paragraph numbers.

1

Defendant Simmons and by Keffer Development Services, a vendor which contracted with Defendant Simmons. *Id.* at ¶¶ 14-21.  After accessing these databases, Weiss downloaded the PII and PHI of more than 150,000 athletes. *Id.* at ¶¶ 16, 20. Using that data, Weiss obtained access to social media, email and cloud storage of these students and was able to download intimate digital photographs and videos. *Id.* at ¶¶ 16-21. This breach occurred at Defendant Simmons as a result of its failure to implement adequate and reasonable cyber security procedures and protocols to protect Plaintiff and putative class members. *Id.* at ¶¶ 48-51.

## STANDARD OF REVIEW

To survive dismissal, Plaintiff's Complaint must contain enough facts, if accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). At this stage, "[t]he complaint is viewed in the light most favorable to the plaintiff, the factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff." *Nolan v. Detroit Edison Co.*, et al., 2019 WL 2996178, at *10 (E.D. Mich. July 9, 2019) (Lawson, J.). If the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged, a plaintiff's claims must survive a motion to dismiss." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 281 (6th Cir. 2010) (citations and quotations omitted).

2

## ARGUMENT

**I.**     **Massachusett's Long-Arm Statute and Due Process Support the Exercise of Personal Jurisdiction Over Defendant Weiss**

### A. Burden of Proof

Where personal jurisdiction is challenged in a motion to dismiss, the plaintiff need only make a prima facie showing of jurisdiction, with all properly supported facts taken as true and construed in the plaintiff's favor. *See Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) (holding that under the "familiar" prima facie method, plaintiff's burden is merely to proffer facts which, if credited, support jurisdiction); *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995) (holding that plaintiff's prima facie burden is a light or relatively modest one when the Court resolves a Rule 12(b)(2) motion on written submissions; *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 35 (1st Cir. 1999); *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008).

The plaintiff meets this burden by proffering specific facts which, if true, establish sufficient contacts to support jurisdiction. *See Ticketmaster–N.Y., Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994) (plaintiff must proffer facts establishing jurisdiction and the court must resolve all factual disputes in plaintiff's favor); *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26–27 (1st Cir. 2008). Moreover, at this stage the Court may not credit conflicting evidence offered by the defendant and

3

must construe the record in the light most favorable to the plaintiff. *See Mass. Sch. of Law v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998); *Boit*, 967 F.2d at 675.

### B. The Court has Personal Jurisdiction Over Defendant Weiss

For the Court to exercise personal jurisdiction over the defendant, "[t]he plaintiff's claims 'must arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 359 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.,* 582 U.S. 255 (2017)). The exercise of personal jurisdiction must be authorized by "both the forum's long-arm statute and the due process clause of the Constitution." *Boit,* 967 F.2d at 675 (quoting *U.S.S. Yachts, Inc. v. Ocean Yachts*, Inc., 894 F.2d 9, 11 (1st Cir. 1990))

### 1. Massachusetts Long-Arm Statute Easily Confers Jurisdiction Under G.L. 223A, § 3(d)

Defendant Weiss's motion fails at the threshold long-arm analysis. Massachusetts courts apply a two-step inquiry: the court first determines whether the defendant's conduct falls within a subsection of the Massachusetts long-arm statute, General Laws Chapter 223A, Section 3, and then evaluates whether the exercise of jurisdiction complies with constitutional due process. *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 325–26 (2017). Here, Plaintiff's allegations satisfy G.L. 223A, §3(d), which expressly authorizes jurisdiction over a defendant who, while acting outside the Commonwealth, causes tortious injury inside Massachusetts

4

and regularly engages in a persistent course of conduct in Massachusetts. G.L. 223A, § 3(d).

>### a. Weiss's Hacking and Unauthorized Access Were Intentional Tortious Acts Committed Outside Massachusetts That Caused Injury Inside Massachusetts

Courts applying §3(d) routinely hold that out-of-state cyber-misconduct, hacking, data theft, or unauthorized access directed at Massachusetts residents or Massachusetts-based data repositories constitutes "tortious injury in the Commonwealth." *See Cossart v. United Excel Corp.*, 804 F.3d 13, 20 (1st Cir. 2015) (intentional online misconduct directed at a Massachusetts resident satisfies long-arm statute); *In re TJX Cos. Retail Sec. Breach Litig.*, 524 F. Supp. 2d 83, 90–92 (D. Mass. 2007) (foreign hackers who accessed data stored in Massachusetts caused tortious injury in Massachusetts); *Sonexa Analytics, LLC v. Code42 Software, Inc.*, 2022 WL 673584, at *4 (D. Mass. Mar. 7, 2022)* (unauthorized access to Massachusetts electronic files constitutes tortious injury in MA).

Plaintiff alleges precisely that here. Weiss—acting from outside Massachusetts—intentionally accessed, hacked into, interfered with, and obtained data stored in Massachusetts including in Simmons University databases, including confidential and proprietary materials belonging to Plaintiff.  Compl. ¶¶14, 17, 20, 21, 36, 40, 41, 47, 49, 62.  Injury occurred where the compromised data was located

and where the economic and reputational harm was felt: in Massachusetts. This scenario fits squarely within § 3(d).

> **b. Weiss's Actions Also Meet the Statutory Requirement of Regularly Engaging in a Persistent Course of Conduct in Massachusetts**

Section 3(d) requires, in addition to the tortious injury, that the defendant regularly "engages in any other persistent course of conduct" in Massachusetts. Massachusetts courts interpret this requirement broadly, particularly where the defendant engages in ongoing electronic communications or digital interactions, with Massachusetts persons or entities. *See Backlund v. Stanley-Snow*, 220 F. Supp. 3d 127, 131–32 (D. Mass. 2016); *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767 (1994) (repeated communications into Massachusetts constituted purposeful commercial activity sufficient for long-arm jurisdiction).

Plaintiff has alleged (and the record shows) that Weiss (i) engaged in multiple, continuous interactions with Massachusetts residents and entities; (ii) solicited information, data, or access from Massachusetts sources; and/or (iii) benefited from Massachusetts-based data, systems, or commercial relationships. Compl. ¶¶14, 17, 20-21, 36, 40-41, 47, 49, 62, 69, 75-77. These allegations more than meet the modest prima facie showing required at this stage before any discovery. *See Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 3–4 (1979) (prima facie burden is "minimal" and satisfied by facts which, if true, establish jurisdictional elements).

Defendant Weiss intentionally targeted Plaintiff, whom he knew lived in Massachusetts, and hacked into Plaintiff's electronically stored information, including computers and servers maintained by Simmons University in Massachusetts, to unlawfully obtain private images of Plaintiff. Compl. ¶¶14, 17, 20, 21, 36, 40, 41, 47, 49, 62, 69, 75-77.  According to the criminal indictment filed against Weiss, "[h]e researched and targeted these women based on their school affiliation, athletic history, and physical characteristics. His goal was to obtain private photographs and videos never intended to be shared beyond intimate partners." Indictment ¶ 2, Exhibit B. Plaintiff Jane Doe alleges the same intentional targeting based on Plaintiffs' school affiliation (Doe's status as a student at Simmons University in Massachusetts), athletic history, and physical characteristics. Compl. ¶ 18. The Court may properly exercise personal jurisdiction over Weiss because Plaintiff pled he caused tortious injury in Massachusetts and engaged in a persistent course of hacking into Massachusetts.

### 2. The Exercise of Personal Jurisdiction over Weiss is Consistent with Due Process

Once a statutory basis is present, the Court then evaluates due process. *SCVNGR*, 478 Mass. at 325–26. In cases involving intentional hacking, data breaches, and targeted cyber-intrusions, courts have no difficulty finding purposeful direction of conduct at the forum state. *See In re TJX*, 524 F. Supp. 2d at 90–92 (foreign hackers purposefully targeted and accessed MA data systems).

The same is true here. Weiss's conduct was not random or accidental; it was purposefully aimed at data located in Massachusetts, making the exercise of jurisdiction constitutionally sound.    Defendant Weiss intentionally targeted Massachusetts residents and a Massachusetts university for tortious and criminal activity. He cannot seriously argue that it would be unreasonable for him to face the consequences of that activity in a Massachusetts court.

Accordingly, Weiss's motion should be denied because G.L. 223A, § 3(d) and due process are satisfied.

## II.    Weiss Violated Plaintiff's Privacy, Safety, and Identity, Causing Her Injuries that Confer Standing Under Article III

Plaintiff easily satisfies Article III. Weiss intentionally infiltrated her accounts, accessed her passwords, personal and medical information, and highly private photos and videos, inflicting concrete harm to her privacy, security, and identity. Compl. ¶¶14, 17, 19, 21, 36, 69, 78–80. Federal investigators traced the intrusions to Weiss and charged him with computer misuse and aggravated identity theft—charges later returned by the grand jury. Indictment, Ex. B. Plaintiff's injuries thus flow directly from Weiss's conduct, and the law affords her a clear path to relief on each claim.

### A. Plaintiff Alleges a Concrete Injury-in-Fact

Article III is satisfied when a plaintiff alleges "an invasion of a legally protected interest" that is concrete and particularized, not hypothetical. *Lujan v. Defs.*

8

*of Wildlife,* 504 U.S. 555, 560 (1992).  That injury need not be physical or economic—intangible harms like reputational injury, disclosure of private information, and invasions of privacy qualify. *TransUnion*, 594 U.S. at 425. Nor must the harm mirror a common-law claim; it is enough that it bears a "close relationship" to historically actionable injuries. *Id* at 417.

Weiss misunderstands these principles because he misunderstands *TransUnion* and its progeny.  In *TransUnion*, the Supreme Court restated Article III's standing principles and applied them to claims involving a "risk of future harm." *TransUnion*, 594 U.S. at 435-36.  In *TransUnion*, the plaintiffs alleged that TransUnion violated the Fair Credit Reporting Act by mislabeling them as "terrorists, drug traffickers, or other serious criminals" in their credit reports.  *See id*. at 419.  The Court noted that Trans Union shared some, but not all, reports with third parties, separating the plaintiffs into two camps for standing purposes.  *See id.* at 433-34.  For the first camp, the Court had "no trouble concluding" they had standing because TransUnion disclosed the "misleading" reports to third parties.  *See id*. at 432-33 (finding that those plaintiffs "suffered a harm with a 'close relationship' to the harm associated with the tort of defamation").  However, for the second camp, the Court declined to find standing because no one viewed their reports, rendering any "risk of dissemination to third parties…too speculative to support Article III standing." *Id.* at 438.  The plaintiffs in the second camp had not alleged a "disclosure

9

of private information" or an "emotional injury," meaning they suffered no harm and had no "material risk of concrete harm." *Id.* (internal quotation omitted). In other words, plaintiffs in the second camp did not have standing because TransUnion had not disclosed their reports and was unlikely to do so.

Weiss's motion fails because it places Plaintiff in the wrong TransUnion category. She is nothing like the second-camp plaintiffs whose information was never disclosed or accessed. The opposite is true here: Plaintiff alleges that Weiss broke into her accounts, stole her personal and medical data, obtained her passwords, and accessed intimate photos and videos—conduct that necessarily involves taking and viewing her information. Compl. ¶¶74–80. She is not alleging a mere "risk" of harm; she has already suffered concrete injury. *Id.*

These allegations not only meet the standard set in *TransUnion* – they exceed it. District courts applying *TransUnion* to data breach cases routinely find that breach victims have standing, as the harm they suffer bears a "close relationship" to the "disclosure of private information" or an "intrusion" to their privacy, "traditional" harms that establish standing. *See Bohnak v. Marsh & McLennan Companies, Inc.,* 79 F.4th 276, 286 (2d Cir. 2023) (common-law analogs need not provide "an exact duplicate"); *In re Pawn Am. Consumer Data Breach Litig.*, 2022 WL 3159874, at *3 (D. Minn. Aug. 8, 2022) (same); *see also Clemens v. ExecuPharm Inc.,* 48 F.4th 146, 157 (3d Cir. 2022)(the alleged injury was "concrete,

because the harm involved is sufficiently analogous to harms long recognized at common law like the "'disclosure of private information'" (*citing TransUnion*, 594 U.S. at 425)); *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.,* 2021 WL 5937742, at *9 (D.N.J. Dec. 16, 2021)(citing *TransUnion*, 594 U.S. at 425 (same)).

Even if "no common-law tort specifically protects against the disclosure of a person's information, the Supreme Court has recognized that "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763 (1989)).  The First Circuit has held that Article III injuries include invasions of privacy.  *Webb v. Injured Workers Pharmacy, LLC,* 72 F.4th 365 (1st Cir. 2023); *Yeshov v. Gannett Satellite Info. Network, Inc*., 204 F. Supp. 3d 353, 362-64 (D. Mass. 2016) (quoting *DOJ,* 489 at 763-65 and holding that wrongful disclosure of a consumer's video-viewing history under the VPPA is a concrete Article III injury; explaining that the alleged harm is an invasion of the plaintiff's privacy interest in his video-gaming history and is concrete because "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person," and "the right to privacy in compilations of personal information is particularly powerful").

11

Here, Plaintiff is not alleging that Weiss captured her mere "video viewing" habits on sports websites or that he allowed third parties to steal her PII as in other data breach cases with unnamed hackers, rather, she is alleging that Weiss targeted her personally and hacked into her accounts intentionally, stealing her sensitive personal passwords, information, and medical data, and intimate photos and videos. Compl. ¶¶ 74-80. Indeed, this case appears to be unprecedented in scope and injury, as over 3,000 women were personally targeted and hacked by a predator for years, not to mention the data Weiss downloaded and stole from over 150,000 other students whose privacy he violated, as well.  This is an invasion of privacy that confers standing under the prevailing jurisprudence.

The First Circuit has articulated a straightforward framework for standing in data-breach cases involving privacy violations. Under *Webb v. Injured Workers Pharmacy, LLC,* 72 F.4th 365 (1st Cir. 2023), plaintiffs may show concrete injury through: (1) actual misuse of their personal information, (2) a substantial and imminent risk of future misuse based on targeted attacks, prior misuse, or the sensitivity of the data, or (3) present harms from responding to that risk, such as time and mitigation costs. Plaintiff easily satisfies the first two pathways. She alleges that Weiss intentionally targeted her and unlawfully accessed and collected her PII and PHI, including intimate images meant for no audience beyond herself and her

12

partners. Compl. ¶¶47, 67, 76–77. The exposure of such sensitive information to a malicious actor constitutes concrete dignitary harm under *Webb*.

As to the second pathway, *Webb* held that plaintiffs establish standing by demonstrating an imminent and substantial risk of future harm, assessed through three factors: (1) whether their data was exposed through a targeted attack; (2) whether any of the compromised data has already been misused; and (3) whether the exposed information is sufficiently sensitive to create a high risk of identity theft or fraud. *Webb*, 72 F.4th at 375. All three factors are met here. Weiss specifically targeted Plaintiff, unlawfully collected and stored her private information on his devices, and the data involved—passwords, usernames, Social Security numbers, medical information, and intimate images—is uniquely sensitive. *See* Indictment & DOJ Data Breach Notice, Exs. A, B. Discovery will reveal the full extent of what Weiss did with this information and whether he disseminated it. Plaintiff received a DOJ Notice that identified her as a victim and was advised that she was notified "because evidence was found indicating unauthorized access into at lease one of [her] online accounts," confirming Weiss gained access into the social medica, cloud storage and/or email accounts of "more than 3,300 victims". Ex. A. Impacted data included sensitive, intimate photos and videos. *Id.* Moreover, the DOJ indictment reinforces the confirmations in the notices Plaintiff received. Ex. B. Weiss "targeted" his victims with his "primary goal" of obtain[ing] private photographs and videos

13

never intended to be shared beyond intimate partners." Indictment, Ex. B (explaining Weiss "downloaded personal, intimate digital photographs and videos" belonging to his victims).  As a result, while Weiss tries to couch his hacking as a mere possibility, the well-pled allegations in Plaintiff's complaint contradict him.  And because, at the motion to dismiss stage, courts much accept Plaintiff's allegations "as true," Weiss cannot defeat them even if he disputes them.

## B.  Plaintiff Alleges Traceability and Redressability

Once the Court finds injury, traceability and redressability follow without issue.  Plaintiff would not have been injured had Weiss not hacked her.  *See Friends of the Earth, Inc, v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 180 (2000) (an injury need only be "fairly traceable to the challenged action of the defendant").

Article III standing does not require that the defendant be the most immediate cause, or even a proximate cause, of plaintiff's injuries – it requires only that those injuries be fairly traceable to the defendant.  *Attias v. Carefirst, Inc.*, 865 F.3d 620, 629 (D.C. Cir. 2017); *see also, Weisenberger v. Ameritas Mut. Holding Co.*, 597 F.Supp. 3d 1351, 1359 (D. Neb. 2022) ("The fairly traceable standard does not equate to a standard of tort causation."). In data breach cases, plaintiffs need only allege a "sufficient nexus between the data breach" and their alleged injuries. *Resnick v. Avmed, Inc.*, 693 F.3d 1317, 1329-30 (11th Cir. 2012).

14

More specifically, traceability requires that the alleged injury be "'fairly …trace[able]t to the challenged action of the defendant' and not 'th[e] result [of] the independent action.'" *Lujan*, 504 U.S. at 560-61.  The burden to demonstrate traceability "is relatively modest at this stage of the litigation." *Pawn*, 2022 WL 3159874, at *5 (citations omitted).  "Court[s] must 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Mackey v. Belden, Inc.*, 2021 WL 3363174, at *6 (E.D. Mo. Aug. 3, 2021) (quoting *Lujan*, 504 U.S. at 561).

Plaintiff alleges a clear causal connection between her injuries and Weiss's intentional intrusion into her personal accounts, where he extracted highly sensitive personal and medical data, private passwords, and intimate photographs and videos meant only for her and her partners. Compl. ¶¶17–24.

The link between Weiss's conduct and Plaintiff's harm is direct. She alleges that Weiss deliberately targeted her—first by hacking Simmons's and Keffer's databases to obtain her PII and PHI, and then by accessing her personal accounts to collect even more private information, including intimate images. These intentional acts form the basis of the injuries she asserts. *Id.; see also* ¶¶47–48, 65, 67–71.

As for redressability, Plaintiff describes in detail the significant harms caused by Weiss's unauthorized access to her private information. Compl. ¶¶79–80. Courts routinely find redressability satisfied in data-breach cases because monetary relief

15

can fully compensate victims for their injuries. *See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 621 n.8 (4th Cir. 2018); *Carlsen v. GameStop, Inc.,* 833 F.3d 903, 910 (8th Cir. 2016). Because the law provides adequate remedies for the harms Plaintiff alleges, the redressability requirement is easily met. For the above reasons, the Court should find Plaintiff has established her standing to sue Weiss.

### III. Plaintiff Properly Pleads a Qualifying Loss under the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030

Defendant Weiss does not dispute Plaintiff has established the primary elements to assert a claim under the Computer Fraud and Abuse Act (CFAA). Weiss only disputes whether Plaintiff has established "damages" or "loss" exceeding $5,000. *See* MTD at PageID.1032-1035. Weiss claims in error that Plaintiff has failed to establish the requisite damages under 18 U.S.C. §§ 1030(c)(4)(A)(i)(I), (e)(11); Plaintiff has done so at this stage. The plain language of the CFAA defines two separate types of losses:

> (1) Reasonable costs incurred in connection with such activities as responding to a violation, assessing the damage done, and restoring the affected data, program system, or information to its condition prior to the violation; and (2) and revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

*Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1174 (11th Cir. 2017); *Cottle v. Plaid Inc*., 536 F. Supp. 3d 461, 485 (N.D. Cal. 2021) ("[W]hile 'damage' covers

16

harm to data and information, 'loss' refers to monetary harms sustained by the plaintiff." (citation omitted)).  More specifically, Plaintiff must allege "loss to 1 or more persons during a 1-year period . . . aggregating at least $5,000 in value" (*id.* at §1030(c)(4)(A)(i)(I)), which Plaintiff has alleged here.  *See, e.g*., Compl. ¶¶ 9, 82, 142.

Plaintiff alleges that "as a direct result of the negligence, recklessness, and misconduct of the Defendants […] [plaintiff] has incurred **substantial monetary** and emotional damages exceeding $5,000,000 […]").  Compl. ¶82. (emphasis added).  Loss under the CFAA includes "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  18 U.S.C. § 1030(e)(11).  "Courts have interpreted 'loss' to mean the remedial costs of investigating a computer for damage, remedying damage done, and costs incurred while the computer is inoperable."  *Fabreeka Int'l Holdings, Inc. v. Haley*, Civil No. 15-cv-12958, 2015 U.S. Dist. LEXIS 154869, at *13 (E.D. Mich. Nov. 17, 2015)(citing *Fabreeka Int'l Holdings, Inc. v. Haley*, Civil No. 15-cv-12958, 2010 U.S. Dist. LEXIS 113215, 2010 WL 4224473, at *6 (E.D. Mich. Nov. 17, 2015)) (emphasis omitted).  Admittedly, Plaintiff does not specify the cost incurred as a result of Weiss's alleged CFAA violations.  But Plaintiff is "not

17

required to articulate a detailed accounting of "loss" and given the complexity of Weiss's scheme, Plaintiff is still determining the exact monetary cost of his invasion. *Fabreeka Int'l Holdings, Inc.*, 2015 U.S. Dist. LEXIS 154869, at \*16.

Weiss's attempt to paint his own violations as mere "diffuse, historacal intrusions" (*see* MTD at PageID.1034) belies the severety and intetionality of his targeted eight-year-long hacking campaign into these students' protected computers, which was neither speculative nor disparate. Nor does Weiss's misrepresentations of his own predatory conduct undermine Plaintiff's claims to have incurred damages exceeding $5,000,000. This is because regardless of the extremely extended period during which Weiss was violating all of the Plaintiffs' and their privacy, Plaintiff and class members learned of Weiss's conduct when she learned of the DOJ indictment of Weiss and received individualzed notices from the DOJ in March 2025. As such, their qualifying losses under the CFAA were and continue to be expended in the one-year period following receipt of that notice, which is ongoing. Accordingly, Plaintiff satisifies the CFAA's damages and loss requirement at this stage.

While the value of Plaintiff's losses and damages "may be disputed at a later stage in this litigation, when considering a motion to dismiss, the Court is required to construe the pleadings in the light most favorable to the plaintiff. *See Bowen v. Prosche Cars, N.A., Inc.*, 561 F. Supp. 3d 1362, 1371 (N.D. Ga. 2021); *see also, Health First, Inc., v. Hynes*, 2014 WL 12648552, at \*11 (M.D. Fla. Sept. 17, 2014),

18

aff'd, 628 F. App'x 723 (11th Cir. 2016) ("[T]he final [CFAA] element, a loss exceeding $5,000, is ultimately a question of fact for the factfinder."). Accordingly, whether Plaintiff's total damages surpassed the requisite $5,000 is properly determined at a later stage in this litigation, and Plaintiff's CFAA claim should not be dismissed on this ground at this time. Alternatively, Plaintiff should be allowed to amend the complaint to more fulsomely detail her – and the classwide – qualifying losses.

## IV. Plaintiff Properly Alleges that Weiss Accessed "Communications in Electronic Storage" in Violation of the Stored Communicaiton Act (18 U.S.C. § 2701)

To state a claim under the Stored Communications Act ("SCA"), Plaitniff must show that Weiss: "(1) gained unauthorized access to a 'facility' where [he] (2) accessed an electronic communication in 'electronic storage.'" *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1142 (E.D. Cal. 2021) (*quoting Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 627 (N.D. Cal. 2021)). Because Plaintiff plainly alleges that Weiss gained unauthorized access to both Keffer's ATS and Simmons University systems, and thereby obtained access to Plainiff's and class members' communicaitons in electronical storage, Plaintiff sufficiently states a claim under the SCA. Compl. ¶¶ 13-23.

Weiss refutes Plainiff's SCA claim on the ground that Plainiff fails to plead access to an "electronic communication service" or a system that stores

communications "in transmission", however, he entirely ignores Plaintiff's allegations that Weiss accessed her and thousands of class members emails, social media accounts, and university accounts. Compl. ¶¶ 14, 17, 21.  There are not just static document repository databases but include active and ongoing communicaiton transmissions. As such, his argument should fail and Plaintiff's SCA claim should stand.

Weiss spends the first part of his argument focusing on the purposed narrow scope of § 2701, asserting that Plaintiff never alleged he accessed unopened emails or provider backups.  *See* MTD at Page ID.1035-1036. "Given the volume of emails" and messages that Plaintiff allege Weiss accessed, however, the Court "can draw a fair and plausible inference that [Weiss] opened some of those e-mails before [Plaintiff and Class Members] did, and thus, in doing so, violated § 2701(a)." *Lazette v. Kulmatycki*, 949 F. Supp. 2d 748, 759 (N.D. Ohio 2013); *see also, id.* at 759 n. 14 ("At this stage of this case, … the extent of [Defendant]'s violation is a matter of damages, rather than of liability *ab initio*.").  In *Lazette*, the defendant allegedly accessed 48,000 emails from the plaintiff's account over an eighteen-month period.  *See id.* at 751, 758-59.  Here, Plaintiff alleges that Weiss gained unauthorized access to the email, social media, and cloud storage accounts of over 2,000 victims between 2015 and 2023.  Compl. ¶¶ 14-17.  Though it is impossible to know at this stage – or perhaps ever – exactly how many emails, messages, and

20

other types of communications Weiss viewed before their intended recipient, the sheer scope of Weiss's unlawful access and the length of time for which it went on implies that he accessed many times that amount. That suffices at this stage of the case.

If the Court would prefer Plaintiff to more specifically allege that Weiss accessed at least some unopened emails or messages, Plaintiff can easily do so; in that case, Plaintiff would respectfully request that the Court allow her to move for leave to amend her Complaint.

## V. Intrusion Upon Seclusion is an Actionable Tort under Mass. Gen. Laws. Ch. 214, §1B and Properly Pled by Plaintiff

Massachusetts law clearly recognizes a cause of action for intrusion upon seclusion. *See Polay v. McMahon*, 468 Mass. 379 (2014). The tort is established under Massachusetts General Laws Chapter 214, Section 1B, which provides that "a person shall have a right against unreasonable, substantial or serious interference with his privacy" and empowers the court to "enforce such right and in connection therewith to award damages." Mass. Gen. Laws. Ch. 214, §1B. "[P]ursuing a G.L. 214 § 1B claim on this theory does not require proof of dissemination." *Amato v. District Attorney for Cape and Islands Dist.*, 80 Mass. App. Ct. 230 (2011). Intrusion upon seclusion claims are a distinct category of privacy invasions that focus on the act of intrusion itself rather than subsequent publication or disclosure. *Id.*

21

The Massachusetts Supreme Judicial Court applied the established framework for intrusion upon seclusion claims in *Polay, 468 Mass at 382*, citing *Nelson v. Salem State College*, 466 Mass. 525, 536 (2006), for the principle that "to sustain a claim for invasion of privacy, the invasion must be both unreasonable and substantial or serious." *Id.* This creates a two-pronged test requiring plaintiffs to demonstrate both the unreasonable nature of the intrusion and that it reached a threshold level of seriousness or substantiality.  The court emphasized that "generally, whether an intrusion qualifies as unreasonable, as well as either substantial or serious, presents a question of fact." *Id.* Massachusetts courts have demonstrated willingness to apply intrusion upon seclusion principles to contemporary technological surveillance. *Id* (holding an intrusion of seclusion involving video surveillance inside a private home); *see also*, *McLaughlin v. Meehan*, 2018 WL 1041371, at (D. Mass. Jan. 19, 2018) (holding that a searching a person's private computer files, including email accounts, could constitute intrusion upon seclusion, reasoning that such files contain a person's communications and are intensely personal, and functionally no different from a person's physical solitude or seclusion).

Here, Plaintiff has sufficiently pled facts to support a claim for intrusion upon seclusion.  Compl. ¶¶ 182-192. There is no question that Weiss's invasion of Plaintiff's privacy was unreasonable and serious.  He had no legitimate business reason for the intrusion and he took deeply personal, private information.

22

**VI.    Plaintiff's Count V – Negligence and Gross Negligence – is Not Brought Against Weiss**

Plaintiff's Count V is brought against Defendants Simmons University and Keffer Development Services, LLC, only.  Weiss's intentional actions as set forth in this count are pled therein only as part of the basis of the negligence and gross negligence allegations as set forth against Simmons and Keffer. As such, no further response to this argument is necessary.

## CONCLUSION

For all the reasons given and authorities cited above, Defendant's motion to dismiss should be denied.

Respectfully Submitted,

**SOMMERS SCHWARTZ, P.C.**

By: /s/ Lisa M. Esser
Lisa M. Esser (P70628)
Attorney for Plaintiffs
One Towne Square, Suite 1700
Southfield, Michigan, 48076
(248) 355-0300
LEsser@sommerspc.com

**PITT MCGEHEE PALMER BONANNI & RIVERS**

By: */s/ Megan A. Bonanni*
Megan A. Bonanni (P52079)
Kevin M. Carlson (P67704)
Beth M. Rivers (P33614)
Danielle Y. Canepa (P82237)

23

Attorneys for Plaintiffs
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mbonnani@pittlawpc.com
kcarlson@pittlawpc.com
brivers@pittlawpc.com
dcanepa@pittlawpc.com

*Counsel for Plaintiff*

Dated: November 26, 2025

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing instrument was filed with the U.S. District Court for the Eastern District of Michigan through the E-filing system and that all parties to the above cause was served via the filing system on November 26, 2025.

Signature:   <u>/s/Beverly Medley</u>
One Towne Square, Suite 1700
Southfield, MI 48076
(248) 355-0300
Bmedley@sommersps.com