IN RE: KEFFER DEVELOPMENT
SERVICES, LLC, DATA SECURITY
BREACH LITIGATION

                            **Case No. 25-md-3159**

                            **HON. MARK A. GOLDSMITH**

**THIS DOCUMENT RELATES TO**
**25-cv-10806**

_____/

**DEFENDANTS UNIVERSITY OF MICHIGAN, REGENTS OF THE
UNIVERSITY OF MICHIGAN, DOMENICO GRASSO, SANTA J. ONO,
MARK SCHLISSEL, WARDE J. MANUEL, DOUG GNODTKE, JAMES
JOSEPH ("Jim") HARBAUGH, RAVI PENDSE, and SOL BERMANN'S
MOTION TO DISMISS SECOND AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT, PURSUANT TO F.R.CIV.P. 12(b)(1) AND (6)**

The undersigned counsel certifies that on April 7, 2026, counsel communicated in writing with plaintiffs' counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in that relief, and three business days have lapsed without opposing counsel expressly agreeing to the relief, orally or in writing, making it necessary to bring this Motion for hearing.

Accordingly, Defendants University of Michigan, the Regents of the University of Michigan (together the "University" or "University Defendants"), individual defendants Domenico Grasso, Santa J. Ono, Mark Schlissel, Warde J. Manuel, Doug Gnodtke, James Joseph Harbaugh, Ravi Pendse, and Sol Bermann (those together the

"Individual Defendants" and both groups collectively the "Moving Defendants"), and pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), move for dismissal of the Second Amended Consolidated Class Action Complaint ("2nd ACCAC) based on immunity conferred by the 11th Amendment to the U.S. Constitution, immunity conferred by Michigan's Governmental Tort Liability Act, and for failure to state claims upon which relief can be granted, for the reasons set forth below and as more fully set forth in the attached brief, in support thereof state as follows:

1)      All the state law claims – constitutional, statutory and common law – are asserted only against the Individual Defendants.  Those same state law claims previously asserted against the University have been voluntarily dismissed and now refiled and pending against the University in the Michigan Court of Claims.  This Court should decline to exercise its discretion to accept supplemental jurisdiction over all state law claims against the Individual Defendants.  If the Court were to retain those state law claims, it will result in some state law claims – including those involving novel and complex issues of state constitutional and statutory law – being litigated against the Individual Defendants in this Court, while the same claims are litigated in state court against the University.  Such a result would create duplication and inefficient use of judicial resources, as well as possibly inconsistent decisions.

2)      There are two remaining claims against the University Defendants; violations of Title IX (Counts I and II) and the Stored Communications Act (Count

XVII).  The Board of Regents is the entity capable of suing and being sued, the University is not a legal entity separate from the Board of Regents and with the capacity to sue or be sued, therefore any claim against "The University of Michigan" should be dismissed.

3)     The University is entitled to dismissal of the Title IX claims because plaintiffs cannot claim to have subjectively perceived the educational environment to be hostile or abusive based on conduct of which they were admittedly unaware, nor have they identified any educational program or opportunity of which they were allegedly denied, and because they cannot show that the University was deliberately indifferent to alleged harassment of which it had actual knowledge.

4)     The University is entitled to dismissal of the Stored Communications Act claim because that same claim was previously filed and is pending against it in the Michigan Court of Claims and plaintiffs cannot sue the same party for the same claim in two different courts.  Further, the University Defendants have immunity pursuant to the 11th Amendment to the U.S. Constitution for that claim.

5)     All Moving Defendants are also entitled to dismissal of the Stored Communications Act claim for failure to state a claim, because they are not vicariously liable for Weiss's alleged criminal conduct; none are either a provider of electronic communications services nor remote computing services, nor did any "knowingly divulge" plaintiffs' protected information.  Moreover, none provide the

types of covered services to the public. Further, the SCA claim is barred by the applicable statute of limitations.

6) The Individual Defendants (the only remaining Moving Defendants) are entitled to dismissal of the Computer Fraud and Abuse Act claim for failure to state a claim because plaintiffs have not pled the only types of damages compensable under the Act, and because the claim is barred by the applicable statute of limitations.

7) The Individual Defendants, sued only in their individual capacities, are entitled to dismissal of the claims under 42 U.S.C. §1983 (Counts IV–VIII) because of qualified immunity. Additionally, plaintiffs fail to plausibly allege that the Individual Defendants themselves each engaged in unconstitutional conduct that was a cause in fact and proximate cause of the alleged violation.

8) The Individual Defendants are entitled to dismissal of the Michigan constitutional claims because they also fail to state claims for many of the same reasons as the §1983 claims and otherwise fail to state claims. Additionally, the Michigan Constitution protects Michigan citizens, and plaintiffs fail to allege they are Michigan citizens, and those constitutional claims cannot be maintained against individual defendants.

9) The Individual Defendants are entitled to dismissal of the two state common law claims because of immunity under the Governmental Tort Liability Act, and because those claims otherwise fail to state viable claims.

10)     The Individual Defendants are entitled to dismissal of the Elliott-Larsen Civil Rights Act claim because they can be named individually only by virtue of being agents of the University, a state instrumentality, and because plaintiffs failed to comply with the filing requirements of the Michigan Court of Claims Act.  Additionally, as with the Title IX claims, plaintiffs cannot claim that their educational environment was so hostile because of severe and pervasive sexual harassment premised on conduct of which they were admittedly unaware, nor do plaintiffs identify an educational program or opportunity of which they were denied by the alleged harassment.

LOCAL RULE CERTIFICATION:   I, Daniel Tukel, certify that this document complies with Local Rule 5.1(a), including:  double-spaced (except for quoted materials and footnotes); at least one inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate length, as modified by Court's 9/4/2025 Text Order, and the Order Regarding Plaintiffs' Proposed Second Amended Complaint (ECF 98) granting up to 65 pages for the brief (Local Rule 7.1(d)(3)).

Wherefore, Moving Defendants request that their motion be granted, and that

the 2nd ACCAC be dismissed in its entirety.

**BUTZEL LONG**

*s/ Daniel B. Tukel*
201 West Big Beaver Road
Suite 1200
Troy, Michigan  48084
(248) 258-1616
tukel@butzel.com
(P34978)

*s/ Sheldon Klein*
201 West Big Beaver Road
Suite 1200
Troy, Michigan  48084
(248) 258-1616
klein@butzel.com
(P41062)

DATED:      April 13, 2026

TABLE OF CONTENTS

INDEX OF AUTHORITIES ........................................................................... i

STATEMENT OF ISSUES PRESENTED ...........................................................x

TABLE 1 ...........................................................................................xiii

INTRODUCTION ..................................................................................- 1 -

Statement of Background Facts ..................................................................- 1 -

Plaintiffs ...........................................................................................- 3 -

Individual University Defendants ...............................................................- 3 -

Procedural Status ..................................................................................- 4 -

STANDARD OF REVIEW ........................................................................- 5 -

**ARGUMENT** .....................................................................................- 6 -

**I.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER ALL STATE LAW CLAIMS** ...................................................................- 6 -

**II.   THE FEDERAL CLAIMS AGAINST THE UNIVERSITY DEFENDANTS SHOULD BE DISMISSED** ........................................- 8 -

    A.    The "University of Michigan" Is An Improper Party ....................- 8 -

    B.    Plaintiffs Fail To State A Title IX Claim for Sexual Harassment and Assault ...............................................- 8 -

        1.    Plaintiffs Cannot Show That Conduct Of Which They Were Admittedly Unaware Created A Severe and Pervasive Sexually Harassing Educational Environment .......................................- 9 -

        2.    Plaintiffs Do Not Allege That the Sexual Harassment Deprived Them of Educational Opportunities.......................................- 10 -

        3.    Plaintiffs Do Not Plausibly Allege "Actual Knowledge" by An Appropriate University Official ............................................- 11 -

| | 4. | Prior Unrelated Conduct By Others Does Not Constitute Actual Knowledge Or Support Plaintiffs' Title IX claim | - 13 - |
| | 5. | Plaintiffs Do Not Plausibly Allege Facts Demonstrating Deliberate Indifference to Known Sexual Harassment | - 16 - |
| | 6. | There Are Insufficient Facts To Constitute Stalking | - 21 - |
| C. | | Plaintiffs Fail To State A Title IX Unequal Treatment And Benefits Claim | - 21 - |
| **III.** | | **OTHER FEDERAL CLAIMS** | - 23 - |
| **A.** | | **The SCA Claim** | - 23 - |
| | 1. | There Is An Earlier SCA Claim Pending Against The University In Another Court | - 23 - |
| | 2. | The University Has Immunity Under the 11th Amendment to the U.S. Constitution | - 23 - |
| | 3. | Neither The University Nor the Individual Defendants Are Vicariously Liable Under the SCA | - 25 - |
| | 4. | The SCA Claim Otherwise Fails To State A Claim | - 26 - |
| | | a. The Moving Defendants Are Not Service Providers To Whom the SCA Applies | - 27 - |
| | | b. There Is No Claim That Any Moving Defendant Knowingly Divulged Covered Communications | - 28 - |
| | 5. | The SCA Claim is Barred by the Statute of Limitations | - 28 - |
| **B.** | | **The CFAA Claim** | - 30 - |
| | 1. | Plaintiffs Do Not Allege "Damage" or "Loss" Compensable Under The CFAA | - 30 - |
| | 2. | The CFAA Claim Is Barred By The Statute of Limitations | - 33 - |

**IV.    THE SECTION 1983 CLAIMS**..................................................................- 34 -

    A.      Requirements Applicable To All Section 1983 Claims...............- 34 -

        1.    The Individual Defendants Are Entitled to Dismissal of Any Claim For Injunctive Relief ....................- 34 -

        2.    The Individual Defendants Have Qualified Immunity Because Plaintiffs Do Not Plausibly Allege Violation of Clearly Established Constitutional Rights................................................- 35 -

        3.    Plaintiffs have not plausibly alleged that each Individual Defendant himself engaged in unconstitutional conduct .......................................- 36 -

        4.    Weiss's Conduct Did Not Constitute "State Action" ....................................................................- 37 -

    B.      The §1983 Counts Additionally Fail To State Claims.................- 39 -

        1.    Count IV – The Invasion Of Privacy Claim Fails Because The Individual Defendants Are Not Alleged To Have Disclosed Plaintiffs' Private Information.....................................................- 39 -

        2.    Count V Fails to State a Claim that The Individual Defendants Violated a Substantive Due Process Right to Property ..............................- 39 -

        3.    The Bodily Integrity Claim in Count VI Fails Because Plaintiffs Did Not Suffer A Physical Intrusion to Their Bodies ....................................- 40 -

        4.    The Equal Protection Claim in Count VII Fails Because Plaintiffs Have Not Alleged that The Individual Defendants Treated Them Differently than Similarly Situated Males ...............................- 42 -

        5.    Plaintiff Do Not Allege a Viable Search And Seizure Claim ....................................................- 43 -

**V.    THE STATE LAW CLAIMS**...............................................................- 44 -

    A.      The Common Law Claims .........................................................- 45 -

        1.    The Individual Defendants Have GTLA Immunity...................................................................- 45 -

    a.    The University Presidents Have Absolute Immunity .................................................... - 45 -

    b.    GTLA Qualified Immunity Also Bars The Claims Against The Other Individual University Defendants ............................................. - 47 -

    2.    The Common Law Claims Also Fail To State Claims ...... - 48 -

    a.    Plaintiffs Have Failed To State A Common Law Privacy Claim ................................................ - 48 -

        1.    Intrusion ......................................................... - 49 -

        2.    Public Disclosure Of Private Fact ................. - 50 -

        3.    False Light ...................................................... - 51 -

        4.    Misappropriation ........................................... - 51 -

    b.    "Gross Negligence" Is Not An Independent Claim .................................................................. - 52 -

B.    The ELCRA Claim Fails to State A Claim ................................. - 52 -

VI.    **THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO DISMISSAL OF THE MICHIGAN CONSTITUTIONAL CLAIMS** ............................................................................................ - 55 -

A.    Michigan Law Does Not allow Constitutional Claims Against the Individual Defendants In Their Individual Capacity ................................................................................... - 55 -

B.    The State Constitutional Claims Should be Dismissed Because Plaintiffs are Not Alleged to be Michigan Citizens ................................................................................... - 56 -

C.    The State Constitutional Claims Additionally Fail To State Claims .................................................................................. - 57 -

    1.    Plaintiffs Do Not Plead Actual, Present Injury .................. - 57 -

    2.    The State Constitutional Claims Against The Individual Defendants Must Be Based On Clearly Established Law ................................................................. - 59 -

    3.    There Is Not A Private Cause Of Action For Violation Of The Michigan Constitution's Equal Protection Provision .............................................................. - 60 -

4.    Dismissal Of Plaintiffs Constitutional Civil Rights Claim Is Appropriate Because The Elliott-Larsen Civil Rights Act Provides An Equivalent Remedy ................................................................- 61 -

5.    Dismissal Is Appropriate for the Violation of Bodily Integrity Claim ..........................................- 61 -

6.    Count XIV Alleging Violation of Search and Seizure Should Be Dismissed ...............................- 62 -

7.    The State Created Danger Claim Should Be Dismissed ...............................................................- 62 -

8.    The Claim For Violation of Procedural Due Process Should Be Dismissed ..............................- 64 -

**CONCLUSION**...............................................................................- 64 -

# INDEX OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Advisory Opinion on Constitutionality of 1978 PA 426*,
  403 Mich. 631 (1978) ....................................................................................47

*Abu v. Dickson*,
  107 F.4th 508 (6th Cir. 2024) ........................................................................26

*Albright v. Oliver*,
  510 U.S. 266 (1994) ......................................................................................40

*Ali v. University of Michigan Health System*,
  523 Fed. Appx. 319 (6th Cir. 2013) ................................................................8

*Anderson Consulting LLP v. UOP*,
  991 F. Supp. 1041 (N.D. Ill. 1998) ...............................................................27

*Anderson v. Creighton*,
  483 U.S. 635 (1987) ......................................................................................35

*Armstrong v. Ypsilanti Charter Twp*,
  248 Mich. App. 573 (2001) ...........................................................................46

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................12, 37

*Barber v. Overton*,
  496 F.3d 449 (6th Cir. 2007) ...................................................................42, 63

*Battaglieri v. Mackinac Ctr. For Pub Policy*,
  261 Mich. App. 296 (2004) .................................................................40, 51, 52

*Bauserman v. Unemployment Insurance Agency*,
  509 Mich 673 (2022) .........................................................................55, 56, 60, 61

*Beals v. State*,
  497 Mich. 363 (2015) ....................................................................................47

*Bear Stearns Gov't Sec., Inc. v. Dow Corning Corp.*,
  419 F.3d 543 (6th Cir. 2005) ...................................................................47

*Bell v. City of Southfield*,
  37 F. 4th 362 (6th Cir. 2022) ...............................................................39, 40

*Bletz v. Gribble*,
  641 F.3d 743 (6th Cir. 2011) ...................................................................52

*Butera & Andrews v. IBM Corp.*,
  456 F. Supp. 2d 104 (D.D.C. 2006) ...................................................................26

*Cartwright v City of Marine City*,
  336 F3d 487 (CA 6, 2003) ...................................................................63

*Chambers v. City of Detroit*,
  786 F. Supp. 2d 1253 (E.D. Mich. 2011) ...................................................45, 48

*Champine v. DOT*,
  509 Mich. 447 (2022) ...................................................................45

*Chappell v. Cleveland*,
  585 F.3d 901 (6th Cir. 2009) ...................................................................35

*City of Escondido v. Emmons*,
  586 U.S. 38 (2019) ...................................................................35

*Courser v Allard*,
  969 F.3d 604 (6th Cir. 2020) ...................................................................31, 32

*Cruzan v. Dir. Mo. Dep't of Health*,
  497 U.S. 261 (1990) ...................................................................41

*Cummins v. Robinson Twp.*,
  283 Mich. App. 677 (2009) ...................................................................40

*Cunningham v. Shelby County*,
  994 F.3d 761 (6th Cir. 2021) ...................................................................35

*Dahmer v. W. Ky. University*,
2022 U.S. App. Lexis 28533 (6th Cir. 2022) .........................................................9

*DeShaney v. Winnebago County Dep't of Social Servs.*,
489 U.S. 189 (1989) ...............................................................................................38

*Doe v Henry Ford Health Systems*,
308 Mich. App. 592 (2014) ...............................................................................57, 59

*Doe v. Hamilton Cnty. Bd. of Educ.*,
329 F. Supp. 3d 543 (E.D. Tenn. 2018) ................................................................14

*Duran v. The Detroit News*,
200 Mich. App. 622 (1993) ....................................................................................50

*Estate of Ritter v. University of Michigan*,
851 F.2d 846 (6th Cir. 1988) .................................................................................24

*Fazica v. Jordan*,
926 F.3d 283 (6th Cir. 2019) ...................................................................................2

*Gebser v. Lago Vista School District*,
524 U.S. 274 (1998) ...............................................................................................12

*Glass v. Franklin Cnty., Kentucky*,
2020 WL 3086602 (E.D. Ky. 2020) ........................................................................2

*Guertin v. Michigan*,
2017 U.S. Dist. LEXIS 85544 (E.D. Mich. 2017) ................................................48

*Guertin v. Michigan*,
912 F.3d 907 (6th Cir. 2019) ...........................................................................41, 48

*Hague v. Kent County*,
2024 U.S. Dist. LEXIS 161331 at *29-20 ...............................................................6

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) ...............................................................................................35

*Henderson v. Walled Lake Consol. Schools*,
  469 F.3d 479 (6th Cir. 2006) ...............................................................................18

*Heyerman v. Cty. of Calhoun*,
  680 F.3d 642 (6th Cir. 2012) ...............................................................................37

*Hile v. Michigan*,
  86 F.4th 269 (6th Cir. 2023) ...............................................................................5

*Jaleelah Ahmed v. Sch. Dist.*,
  2024 U.S. Dist. LEXIS 169748 (E.D. Mich. 2024) ...........................................2

*Jones v Powell*,
  462 Mich. 329 (2000) ........................................................................................55

*Kallstrom v. City of Columbus*,
  136 F. 3d 1055 (6th Cir. 1998) ...........................................................................41

*Karasek v. Regents of the Univ. of Cal.*,
  956 F.3d 1093 (9th Cir. 2020) ...........................................................................18

*Kenny v. Bartman*,
  2017 U.S. App. LEXIS 16640 (6th Cir. 2017) ...................................................39

*Kerrigan v. Visalus, Inc.*,
  112 F. Supp. 3d 580 (E.D. Mich. 2015) .............................................................2

*Kreipke v. Wayne State University*,
  807 F.3d 768 (6th Cir. 2015), ..........................................................................6, 8

*Ledl v. Quik Pik Food Stores, Inc.*,
  133 Mich. App. 583 (1984) ...........................................................................50, 51

*Lewis v. LeGrow*,
  258 Mich. App. 175 (2003) ................................................................................48

*Lipian v. Univ. of Mich.*,
  453 F. Supp. 3d 937 (E.D. Mich. 2020) ...........................................12, 13, 14, 43

iv

*MacKey v. Rising*,
  106 F.4th 552 (6th Cir. 2024) ........................................................................38

*Malick v. Croswell-Lexington Schools*,
  148 F. 4th 855 (6th Cir. 2025) ...........................................................16, 20, 60

*Marcilis v. Twp. of Redford*,
  693 F.3d 589 (6th Cir. 2012) .............................................................................2

*Mays v. Governor of Mich*,
  506 Mich. 157 (2020) .....................................................................................62

*Mays v. Snyder*,
  323 Mich. App. 1 (2018) ............................................................................62, 63

*Murphy v. Spring*,
  58 F. Supp. 3d 1241 (N.D. Okla. 2014) ...........................................................25

*New Jersey v. TLO*,
  469 U.S. 325 (1985) ........................................................................................44

*Nicklas v. Koelling*,
  2004 Mich. App. LEXIS 3321 (2004) ...............................................................46

*Oden v. N. Marianas Coll.*,
  440 F.3d 1085 (9th Cir. 2006) ...................................................................18, 19

*Odom v. Wayne Cty.*,
  482 Mich. 459 (2008) ......................................................................................47

*Papelino v. Albany College of Pharmacy*,
  633 F.3d 81 (2nd Cir. 2011) .........................................................................9, 10

*Peatross v. City of Memphis*,
  818 F.3d 233 (6th Cir. 2016) ...........................................................................44

*People v. Brcic*,
  342 Mich. App. 271 (2022) ..............................................................................62

v

*Pineda v. Hamilton Cty.*,
  977 F.3d 483 (6th Cir. 2020) ................................................................36, 37

*Planned Parenthood Sw. Ohio Region v. Dewine*,
  696 F.3d 490 (6th Cir. 2012) ......................................................................40

*Polkowski v. Jack Doheny Co, Inc.*,
  2025 U.S. Dist. LEXIS 217278 (E.D. Mich. 2025) ...........................................58

*Proctor v. Saginaw Cty. Bd. of Comm'rs*,
  340 Mich. App. 1 (2022) .............................................................................59

*Rakyta v. Munson Healthcare*,
  2021 Mich. App. LEXIS 5905 (2021) .......................................................58, 59

*Malick v. Croswell-Lexington Schools*,
  148 F. 4th 855 (6th Cir. 2025) ....................................................................16

*Regents of the University of California v. Doe*,
  519 U.S. 425 (1997) ..................................................................................23

*Rondigo, L.L.C. v. Twp. of Richmond*,
  641 F.3d 673 (6th Cir. 2011) ........................................................................5

*Saucier v. Katz*,
  533 U.S. 194 (2001) ..................................................................................35

*Searcy v. Cty. of Wayne*,
  2024 Mich. App. LEXIS 4256 (2024) ...........................................................55

*Skinner v. Oklahoma*,
  316 U.S. 535 (1942) ..................................................................................41

*Smith v. City of Troy, Ohio*,
  874 F.3d 938 (6th Cir. 2017) .......................................................................35

*Smith v. Dep't. of Pub. Health*,
  428 Mich. 540 (1987) .................................................................................55

*Snyder-Hill v. Ohio State Univ.*,
  48 F.4th 686 (6th Cir. 2022) ...............................................................................11

*Speerly v. GM, LLC*,
  143 F.4th 306 (6th Cir. 2025) ...............................................................................2

*Stanley v. Western Michigan University*,
  105 F.4th 856 (6th Cir. 2024) ...............................................................6, 24, 34

*Stiles v. Grainger County*,
  819 F.3d 834 (6th Cir. 2016) ...............................................................................17

*Sumlin v. Mt. Morris Twp.*,
  2023 U.S. Dist. LEXIS 220219 (E.D. Mich. 2023) ............................................44

*Tennessee v. Lane*,
  541 U.S. 509 (2004) ...............................................................................24

*Tobin v. Michigan Civil Service Commission*,
  416 Mich. 661 (1982) ...............................................................................49

*U.S. v. Shahulhameed*,
  629 F. App'x 685 (6th Cir. 2015) ...............................................................27

*United States v. Robinson*,
  390 F.3d 853 (6th Cir. 2004) ...............................................................44

*United States v. Zabawa*,
  719 f.3d 555 (6th Cir. 2013) ...............................................................27

*Univ. Pediatricians v. Wilson, No. 353462*,
  2021 Mich. App. LEXIS 5499 (2021) ...............................................................46

*Van Buren v. U.S.*,
  593 U.S. 374 (2021) ...............................................................................32

*Vance v. Spencer Public School District*,
  231 F.3d 253 (6th Cir. 2000) ...............................................................11

vii

*VanVorous v. Burmeister*,
   262 Mich. App. 467 (2004) .................................................................................59

*Varlesi v. Wayne State University*,
   909 F.Supp. 2nd 827 (E.D. Mich 2012) ........................................................9, 10

*Wagner v. Metropolitan Nashville Airport Authority*,
   772 F.2d 227 (6th Cir. 1985) .............................................................................37

*Washington v. Harper*,
   494 U.S. 210 (1990) ...........................................................................................41

*Waters v. City of Morristown*,
   242 F.3d 353 (6th Cir. 2001) .............................................................................38

*White v. Hlavaty*,
   2023 U.S. Dist. LEXIS 130105 (E.D. Mich. 2023) ...........................................45

*Will v. Michigan Department of State Police*,
   491 U.S. 58 (1989) ........................................................................................23, 54

*Worix v. MedAssets, Inc.*,
   869 F. Supp. 2d 893 (N.D. Ill. 2012) .................................................................28

*Yoder & Frey Auctioneers, Inc v. EquipmentFacts, LLC*,
   774 F.3d 1065 (6th Cir. 2014) ...........................................................................31

*Zisgo v. Hurley Med. Ctr.*,
   475 Mich. 215 (2006) .........................................................................................26

**Statutes**

18 U.S.C.§ 1030(e)(11) ...........................................................................................32

18 U.S.C.§ 1030(g) ..................................................................................................33

18 U.S.C.§1983 ...........................iii, v, 34, 35, 36, 37, 39, 46, 60, 61, 62, 64, 18

18 U.S.C. § 2702 ................................................................................................27, 28

18 U.S.C. § 2707 ...............................................................................................29

18 U.S.C. §1030 ...............................................................................................31

42 U.S.C. §1983 ........................................................... iii, 4, 34, 18, 60

MCL §37.2402. ...............................................................................................61

MCL §691.1407 ........................................................................................45, 47

MCL 37.2103 ...................................................................................................53

MCL 37.2401 ...................................................................................................54

MCL 600.6431 .................................................................................................54

MCL 691.1401, et. seq. ...................................................................................45

**Other**

Article I, § 2 of the Michigan Constitution ....................................................60

Black's Law Dictionary ...................................................................................27

Const. 1963, art. 1, § 2 ...................................................................................60

F.R.CIV.P. 12 ...........................................................................1, 2, 1, 15, 16

Fourth Amendment of the U.S. Constitution .................................................62

Michigan Constitution Article I, § 11 ............................................................62

Michigan Constitution Article VIII §5 .................................................8, 24, 46

Rule 12 ........................................................................................................5, 2

Rule 5.1 ...........................................................................................................19

Rule 7.1 ...........................................................................................................19

## STATEMENT OF ISSUES PRESENTED

I.      Should the Court decline to exercise supplemental jurisdiction over the state law claims, asserted against only the Individual Defendants, because they involve novel and complex issues of state constitutional and statutory law, and because many of the same claims are already pending against the University Defendants in the Michigan Court of Claims?

Moving Defendants Answer:       Yes

Plaintiffs Answer:              No

II.     Is "The University of Michigan" entitled to dismissal as an improper party because it is not an independent legal entity separate from the Board of Regents and does not have the capacity to sue or be sued?

Moving Defendants Answer:       Yes

Plaintiffs Answer:              No

III.    Are the University Defendants entitled to dismissal of Count XVII alleging violation of the Stored Communications Act, because that same claim is already pending against it in the Michigan Court of Claims, and because as an instrumentality of the state it has immunity under the 11th Amendment to the U.S. Constitution?

Moving Defendants Answer:       Yes

Plaintiffs Answer:              No

x

IV.    Are all Moving Defendants entitled to dismissal of the Stored Communications Act claim because they are not service providers covered by the Act, they are not alleged to have knowingly divulged covered communications and because the claim is barred by the statute of limitations?

Moving Defendants Answer:    Yes

Plaintiffs Answer:    No

V.    Are the Individual Defendants entitled to dismissal of the Computer Fraud and Abuse Act claim because plaintiffs do not allege statutory "damage" and "loss" compensable under the Act, and because the claim is barred by the statute of limitations?

Moving Defendants Answer:    Yes

Plaintiffs Answer:    No

VI.    Are the Individual Defendants entitled to dismissal of the claims for violation of 42 U.S.C. §1983 because they have qualified immunity, because plaintiffs do not plausibly allege that each of them personally violated plaintiffs' clearly established constitutional rights, and because those claims otherwise fail to state claims?

Moving Defendants Answer:    Yes

Plaintiffs Answer:    No

VII.    Are the Individual Defendants entitled to dismissal of the Michigan Constitutional claims because those claims cannot be asserted against them in their individual capacities, because plaintiffs do not allege they are Michigan citizens, because plaintiffs do not plead actual present injuries, and because they otherwise fail to state claims including for the reasons regarding the §1983 claims?

Moving Defendants Answer:    Yes

Plaintiffs Answer:    No

VIII. Are the Individual Defendants entitled to dismissal of the two state common law claims against them, Count III (common law privacy) and Count XIX ("gross negligence") because of immunity granted to them pursuant to Michigan's Governmental Tort Liability Act, because plaintiffs otherwise fail to state a privacy claim, and because "gross negligence" is not an independent cause of action?

Moving Defendants Answer:     Yes

Plaintiffs Answer:     No

TABLE 1

CLAIMS IN THE 2ND AMENDED
CONSOLIDATED CLASS ACTION COMPLAINT

| Count | Regents | U of M | Ind. Def | Weiss | Keffer |
|---|---|---|---|---|---|
| Count I:  Title IX, Harassment And Assault | X | X | | | |
| Count II:  Title IX, Treatment And Benefits | X | X | | | |
| Count III:  Privacy, Michigan Common Law (PLUS WEISS) | | | X | | |
| Count IV:  §1983 Invasion Of Privacy | | | X | | |
| Count V:  §1983 Deprivation Of Property | | | X | | |
| Count VI:  §1983 Deprivation Of Bodily Integrity | | | X | | |
| Count VII:  §1983 Equal Protection | | | X | | |
| Count VIII:  §1983 Search And Seizure | | | X | | |
| Count IX:  Civil Rights (Michigan Constitution) | | | X | | |
| Count X:  ELCRA Sexual Harassment And Assault | | | X | | |
| Count XI:  Equal Protection (Michigan Constitution) | | | X | | |
| Count XII:  Privacy and Bodily Integrity (Michigan Constitution) | | | X | | |
| Count XIII:  Procedural Due Process (Michigan Constitution) | | | X | | |
| Count XIV:  Search And Seizure (Michigan Constitution) | | | X | | |
| Count XV:  State-Created Danger (Michigan Constitution) | | | X | | |
| Count XVI:  Computer Fraud And Abuse Act | | | X | | X |
| Count XVII:  Stored Communications Act | X | X | X | | |
| Count XVIII: Stored Communication Act | | | | | X |
| Count XIX:  Gross Negligence | | | X | | X |
| Count XX:  Trespass to Chattels | | | | X | |
| Count XXI:  Common Law Conversion | | | | X | |
| Count XXII:  Statutory Conversion | | | | X | |
| Count XXIII:  Negligence | | | | | X |

xiii

IN RE: KEFFER LOPMENT
SERVICES, LLC, DATA SECURITY
BREACH LITIGATION

Case No. 25-md-3159

HON. MARK A. GOLDSMITH

THIS DOCUMENT RELATES TO
25-cv-10806

_____
/

### BRIEF IN SUPPORT OF
### DEFENDANTS UNIVERSITY OF MICHIGAN, REGENTS OF THE UNIVERSITY OF MICHIGAN, DOMENICO GRASSO, SANTA J. ONO, MARK SCHLISSEL, WARDE J. MANUEL, DOUG GNODTKE, JAMES JOSEPH ("Jim") HARBAUGH, RAVI PENDSE, and SOL BERMANN'S MOTION TO DISMISS PURSUANT TO F.R.CIV.P. 12(b)(1) AND (6)

### INTRODUCTION

### Statement of Background Facts

Matthew Weiss, whose alleged conduct is the basis for this lawsuit, was employed by the University for less than two years, from February 2021 through January 2023. Second Amended Consolidated Class Action Complaint ("2ND ACCAC," ECF 101, ¶70 PageID 2633). Within days after learning of unauthorized access in its systems, the University quickly, as of December 23, 2022, "randomized" passwords for email addresses that had the unauthorized access, so that no further such access could take place. (Exhibit A to 2nd ACCAC, ECF 101-2,

PageID 2805-2808).[1]   It quickly referred the matter to law enforcement for investigation as to whether there had been a criminal violation.  *Id*.

Plaintiffs were notified in writing of the unauthorized access.  (Ex. A).[2]  They were informed of the referral to law enforcement and its ongoing criminal investigation.  They were instructed to change any passwords for non-University applications which they had linked to their University email.  They were offered identity theft protection at no cost, and were provided instructions as to a number of other security measures that should be taken to protect their credit, information and data.

Mr. Weiss was placed on leave on January 17, 2023.  On January 20, 2023, just days after he was placed on leave, the University terminated his employment.  (¶¶120-121, PageID 2642-2643).  Weiss is now facing federal criminal charges.  The 24 Count federal indictment alleges that for the two-day period from December 21–December 23, 2022, Weiss improperly accessed certain computer information on

---

[1]   All paragraph citations are to the 2nd ACCAC, ECF 101, unless otherwise indicated, and all further citations to "Ex. A" are to ECF 101-2.

[2]   Prior to class certification only the individual claims of the named plaintiffs are before the Court.  *Speerly v. GM, LLC*, 143 F.4th 306 (6th Cir. 2025).  Therefore, all references to "plaintiffs" are to the named plaintiffs only.

University system(s). (See Case 25-cr-20165, ECF 1, PageID 1-15). It was after the indictment was filed that plaintiffs brought their lawsuits.

### Plaintiffs

Only four of the 11 Jane Doe plaintiffs (Does 1, 2, 4, and 5) are alleged to be former University of Michigan students and student athletes. (¶¶1, 3, 7, 9, PageID 2621-2622). Six of the remaining seven plaintiffs (Does 3, 6, 7, 8, 9, and 10) are alleged to have been student athletes at other institutions but never students or student athletes at the University of Michigan. (¶¶5, 11, 13, 15, 17, 19, PageID 2621-2623). One plaintiff (Doe 11) was never a student athlete; she is alleged to have been a student at another university but never at the University of Michigan. (¶21, PageID 2623).

### Individual University Defendants

With regard to the "Individual University Employees" / "Individual University Defendants," as plaintiffs define that group (and hereafter "Individual Defendants"), plaintiffs allege: Domenico Grasso is the current Interim President of the University. He was appointed in May of 2025. (¶¶31-32, PageID 2624-2625).[3] Santa J. Ono is a former President of the University, holding that position from

---

[3] It has already been publicly reported that his interim appointment will end when the newly appointed President assumes the office as of July 1.

October 2022 to May 2025.  (¶34, PageID 2625).  <u>Mark Schlissel</u> is a former President of the University, holding that position from July 2014 to January 2022.  (¶36, PageID 2625-2626).  <u>Warde J. Manuel</u> is the Athletic Director at the University, holding that position since January 2016.  (¶¶37-38, PageID 2626).  <u>Doug Gnodtke</u> is the Executive Associate Athletic Director and Chief of Staff for University athletics, holding those positions since January 2016.  (¶39, PageID 2626).  <u>James Joseph ("Jim") Harbaugh</u> was (but is no longer) the head football coach at the University, including the years 2015-2023.  (¶41, PageID 2627).  <u>Ravi Pendse</u> is the Vice President for Information Technology and Chief Information Officer at the University holding those positions since 2018.  (¶¶46-47, PageID 2628).  <u>Sol Bermann</u> is the Executive Director of Privacy & Faculty Affairs in the office of the Vice President for Information Technology and Chief Information Officer at the University, holding that position since 2014.  (¶48-49, PageID 2628).

### Procedural Status

The nearly 180 page, 792-paragraph 2nd ACCAC alleges twenty-three counts. The University Defendants (the University of Michigan and Regents) are named in three of those counts, Counts I and II (violation of Title IX); and Count XVII (violation of the Stored Communication Act).  The Individual Defendants are named in sixteen counts, the Stored Communication Act ("SCA") and the Computer Fraud and Abuse Act ("CFAA"); five claims under 42 U.S.C. §1983, six claims for

violation of the Michigan Constitution, and three claims under Michigan statutory or common law.   The Moving Defendants (the University/Board and Individual Defendants) are named in eighteen of the twenty-three Counts.   The remaining claims are against Wiess or Keffer alone.   Table 1 identifies the claims asserted in the 2nd ACCAC, and which parties are named in those Counts.

Plaintiffs voluntarily dismissed all the state law claims and the CFAA claim they had asserted against the University/Regents in their prior Consolidated Amended Class Action Complaint, ECF 74. (See Orders, ECF 16 and 17, Page ID 481-484).   They have refiled those claims against the University/Regents in the Michigan Court of Claims (Case 25-000155-MZ).   For the reasons discussed below, the Moving Defendants are entitled to dismissal of all claims.

## STANDARD OF REVIEW

The applicable standard of review under Rule 12(b)(6) is familiar.   Although the complaint is viewed in the light most favorable to the non-moving party:

> [A] legal conclusion couched as a factual allegation need not be accepted as true.. . . [A] formulaic recitation of the elements of a cause of action will not do. . . The complaint must state a claim that is plausible on its face, i.e., the court must be able to draw a reasonable inference that the defendant is liable for the misconduct alleged. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011)(quotations and cites omitted).  The same standard applies to a facial challenge under Rule 12(b)(1).  *Hile v. Michigan*, 86 F.4th 269, 273 (6th Cir. 2023)(cites omitted).

In addition to the 2nd ACCAC and its attachments, in considering a Rule 12 motion this Court may also consider the criminal indictment of Defendant Weiss, which is a public record and referenced in the complaint.  *Kreipke, supra,* 807 F.3d at 774.  The Court may also consider the Court of Claims Complaint, which is a public record and related to this case, and in which all but one of the plaintiffs in this case are also plaintiffs.

## ARGUMENT

### I.   THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER ALL STATE LAW CLAIMS

There are eight state law claims – common law, statutory and constitutional – against the Individual Defendants.  Specifically, Count III (privacy); Counts IX and XI-XV (Michigan constitutional claims), Count X (Elliott-Larsen Civil Rights Act); and Count XIX ("gross negligence").[4]  An exercise of supplemental jurisdiction over state law claims is discretionary.  *See*, *Stanley v. Western Michigan University*, 105

---

[4]  Counts III and XIX (common law privacy and "gross negligence") are also asserted against Weiss.  All other state law claims are asserted only as to the moving Individual Defendants.  Accordingly, if the Court declines to exercise supplemental jurisdiction, all state law claims will be dismissed entirely.

F.4th 856, 866 (6th Cir. 2024)("District courts do not have to exercise supplemental jurisdiction…"   "[A] district court has discretion in deciding whether to exercise supplemental jurisdiction."); *Hague v. Kent County*, 2024 U.S. Dist. LEXIS 161331 at \*29-20 9W.D. Mich. 20240("[T]he Court declines to exercise supplemental jurisdiction over that claim because it raises a 'novel or complex issue of State law'.")

In this case, the Court should decline to exercise that discretion.  There are novel and complex state law issues, including but not limited to whether a damage claim under the Michigan Constitution may be maintained against the Individual Defendants, and whether such constitutional claims may be brought by plaintiffs who are not Michigan citizens and have no connection to the University or State of Michigan, and whether the Elliott-Larsen claim against the Individual Defendants is barred by plaintiffs' failure to comply with the Michigan Court of Claims Act.

Additionally, relevant state law issues are already before the Michigan Court of Claims, a case which was filed prior to the filing of the 2nd ACCAC.  That case, in which all of the plaintiffs are also plaintiffs here, asserts substantially the same state law claims against the University as are asserted here against the Individual Defendants.  An exercise of supplemental jurisdiction would not only create great inefficiencies, but would also risk inconsistent results.  The Court should therefore decline to exercise supplemental jurisdiction, and dismiss the state law claims.

## II.   THE FEDERAL CLAIMS AGAINST THE UNIVERSITY DEFENDANTS SHOULD BE DISMISSED

### A.   The "University of Michigan" Is An Improper Party

The three remaining claims against the "University Defendants" are the Title IX claims (Counts I and II), and the Stored Communications Act Claim (Count XVII).   Plaintiffs have named as defendants both "the University of Michigan" and "the Regents of the University of Michigan" in those claims.   But only the Board of Regents has the capacity to sue and be sued.   (Michigan Constitution Article VIII §5, MCL 390.3).   Because the "University of Michigan" is not a legal or corporate entity separate from the Board of Regents with the capacity to sue or be sued, it should be dismissed.   *See, Ali v. University of Michigan Health System*, 523 Fed. Appx. 319-320 (6th Cir. 2013)(affirming dismissal which had been based in part on grounds that "any suit against the University of Michigan must be brought against the Board of Regents.   *See* Mich. Comp. Laws § 390.4.");   *Kreipke v. Wayne State University*, 807 F.3d 768 (6th Cir. 2015)(same as to Wayne State University).

### B.   Plaintiffs Fail To State A Title IX Claim for Sexual Harassment and Assault

Count I alleges a Title IX violation of "sexual harassment and assault" resulting from Weiss's unauthorized access and the claimed deliberate indifference to it by the University.   Plaintiffs allege the University's inaction "created a heightened risk of

- 8 -

sex-based discrimination, including cyber sexual harassment, sexual assault, privacy invasion and/or stalking." (¶470, PageID 2723).

1.   **Plaintiffs Cannot Show That Conduct Of Which They Were Admittedly Unaware Created A Severe and Pervasive Sexually Harassing Educational Environment**

Plaintiffs allege that sexual harassment and assault subjected them to a severe and pervasive hostile educational environment. "Sexual harassment claims brought under Title IX are governed by the same legal framework as sexual harassment claims brought under Title VII." *Varlesi v. Wayne State University*, 909 F.Supp. 2nd 827, 854 (E.D. Mich 2012)*, citing Papelino v. Albany College of Pharmacy*, 633 F.3d 81, 89 (2nd Cir 2011).  See also, *Dahmer v. W. Ky. University*, 2022 U.S. App. Lexis 28533 (6th Cir. 2022), citing *Doe v. Miami Univ.,* 882 F.3d 579, 590 (6th Cir. 2018).  "Title IX plaintiffs have a heavy burden; they must show 'harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit'." *Varlesi*, 909 F. Supp. at 859 (cite omitted).  *Doe, id*.  Plaintiffs acknowledge this standard.  (Conduct must be "so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the recipient's education program or activity." (¶488, PageID 2728-2729).

The first element of the claim is that plaintiffs were subject to a sexually hostile educational environment. *Klemencic v. Ohio State Univ.*, 263 F.3d 504, 510 (6th Cir. 2001).  Plaintiffs cannot make the necessary showing, because at the heart

of their claim is that they were not aware of Weiss's conduct at the time they attended the University, and did not learn of it until his indictment in March 2025, two years after Weiss had been fired by the University.  (¶193, PageID 2658-2659).  By that time the few plaintiffs who had been University of Michigan students had long before left the University.  (¶¶1, 3, 7 and 9, PageID 2621-2622).

But, as this Court stated in *Varlesi,* 909 F. Supp. 2d at 859, "[A] Title IX plaintiff must show that he subjectively perceived the environment to be hostile or abusive…")(quoting *Papelino, supra).*  Plaintiffs cannot make that showing.  They cannot claim that they perceived the educational environment to be hostile and abusive based on conduct of which they were admittedly unaware at the time it was allegedly occurring.  Nor can they claim that despite being unaware of the conduct, it nonetheless was so severe and pervasive that it created an educational atmosphere sufficiently tainted as to deny them educational opportunities.

### 2. Plaintiffs Do Not Allege That the Sexual Harassment Deprived Them of Educational Opportunities

Plaintiffs also fail to identify, or provide any facts regarding, any educational program or activity of which they say they were deprived based on the alleged sexually harassing hostile environment.  There is no claim that their participation in athletics was curtailed or ended or affected in any way, or that there was any non-

athletic program or activity in which they were unable to participate or which was otherwise adversely affected.

Nor could they make such a claim given the admission that they had already left the University – and therefore both their University athletic and educational careers had ended – before they had any knowledge of the alleged harassment.  A non-student or alumnus can pursue a Title IX claim only if she was "subjected to discrimination while participating, or at least attempting to participate, in the funding recipient's education program or activity," something not alleged here.  *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 708 (6th Cir. 2022), citing *Doe v. Brown University,* 896 F.3d 127, 131 (1ˢᵗ Cir. 2018).[5]  Just as with the hostile atmosphere harassment allegation itself, an alumnus cannot claim to have been deprived of any educational program or activity as the result of alleged sexually harassing conduct of which she was unaware.

### 3.    Plaintiffs Do Not Plausibly Allege "Actual Knowledge" by An Appropriate University Official

Plaintiffs concede that for a Title IX sexual harassment claim, they must show that the University had *actual knowledge* of the sexual harassment, but nonetheless

---

[5] The plaintiffs who were never University of Michigan students fail to state claims because they do not allege that they were subject to discrimination while participating or attempting to participate in any University of Michigan educational program or activity.  *Snyder-Hill, Id*.

was deliberately indifferent to it.  (¶430, Page ID 2710).  *See also*, *Vance v. Spencer Public School District*, 231 F.3d 253, 258-59 (6th Cir. 2000).  But despite that concession, plaintiffs do not sufficiently and plausibly allege such actual knowledge.

The required actual knowledge must be that of "appropriate person," that is, an official with authority to institute corrective measures on behalf of the institution. *Gebser v. Lago Vista School District*, 524 U.S. 274, 277 (1998).  Neither imputed or constructive knowledge nor knowledge via respondeat superior liability constitutes the necessary "actual knowledge."  *Lipian v. Univ. of Mich.*, 453 F. Supp. 3d 937, 957 (E.D. Mich. 2020)(citing *Davis v. Monroe County Board of Ed.,* 526 U.S. 629, 642 (1999); *Gebser,* 524 U.S. at 285.

In an effort to address the pleading failure of their prior Amended Consolidated Complaint (ECF 74), plaintiffs now make the conclusory allegation that an unnamed individual purportedly saw Weiss inappropriately accessing private information, and that said "individual who saw Weiss reported the events between December 21 and 23, 2022, to the person within the University designated to receive complaints including those complaints based on Title IX violations and related to Title IX."  (¶77, PageID 2634).  But the incantation of magic words is insufficient. "[A] plaintiff cannot rely on 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements'," nor do legal conclusions couched as

- 12 -

factual allegations have a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The allegations here are both conclusory and implausible and therefore insufficient. The "individual" who purportedly saw Weiss is unnamed, as is "the person within the University" to whom the report was allegedly made, and not even that person's office or title is provided. And plaintiffs also contradictorily allege that the unnamed person to whom the report is claimed to have been made informed several of the individual defendants of the report "by the end of the day on December 22, 2022," and also that some of the individual defendants had "specific notice by at least December 21, 2022." (¶¶88, 184, PageID 2636-2637, 2656). They also claim that the "University Defendants" "first became aware of Weiss's actions in 2021." (¶186, PageID 2657). These allegations regarding notice, both vague and contradictory, regarding actual knowledge by an appropriate person are not sufficient to meet the required plausibility threshold.

### 4. Prior Unrelated Conduct By Others Does Not Constitute Actual Knowledge Or Support Plaintiffs' Title IX claim

The required actual knowledge by an appropriate person cannot be based, as plaintiffs attempt to do, on allegations that others previously associated with the University – a former President, a former Provost or a former physician – engaged in past sexually inappropriate behavior. As a preliminary matter, a claim of actual

- 13 -

knowledge based on alleged prior conduct requires notice of prior impermissible conduct by the same alleged harasser. "The weight of the case law supports the conclusion that once on notice that *a faculty member* has sexually harassed others, the school is on notice that *he* may harass more students." *Lipian,* 453 F. Supp. 3d at 959-60 (emphasis added). *See also*, *Doe v. Hamilton Cnty. Bd. of Educ.*, 329 F. Supp. 3d 543, 567 (E.D. Tenn. 2018)("Under *Davis [v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999)], actual knowledge can be derived from *a harasser's* past harassment.")(emphasis added). But acts by others do not support a claim of actual knowledge regarding Weiss's conduct.

The 2nd ACCAC devotes significant space to allegations of prior sex-related misconduct, some directed at females and some at males, by several others associated with the University. In addressing these allegations, the University does not minimize Weiss's alleged conduct, nor seek to engage in a comparison of the seriousness of the various alleged bad acts of Weiss and the others. Rather, it does so for the sole purpose of assessing whether any of that past conduct bears on whether plaintiffs here have stated a claim under Title IX or otherwise. A review of those allegations demonstrates that they are so disconnected and dissimilar from Weiss's alleged conduct that they do not support the claims here.

The former Provost is alleged to have "made comments about women's bodies" and "stored explicit photos of his victims on University-owned devices."

- 14 -

(¶¶169-171, PageID 2653).  While some of the conduct involved images, none are claimed to have been obtained through computer hacks or other surreptitious means, rather they were apparently exchanged between him and women.  That is entirely different from the claim here, that Weiss secretly accessed and thereby obtained private information of individuals who were strangers with no relationship or association with him, and who were unaware that he had done so.

Plaintiffs allege that the former physician over a period of some thirty years "sexually assaulted and raped thousands of student victims."  (¶167, PageID 2652).  The physical sexual assaults and rapes allegedly occurred in person, not surreptitiously.  Those claimed rapes and physical assaults are wholly different from Weiss's alleged conduct; there is no claim here that he had *any* physical contact – indeed contact of any kind – with any plaintiff, nor were they aware of his actions.  With regard to former President Schlissel, without addressing whether his conduct was appropriate given his position, there is no claim that he engaged in any relationship that was non-consensual or sexually harassing.  Nor do plaintiffs allege that any conduct of newly named defendant Moore occurred during Weiss's employment or otherwise put the University on notice of Weiss's unauthorized access.

None of the alleged conduct of those individuals is claimed to have involved unauthorized access into students' private emails or accounts, the central claims

- 15 -

against Weiss.   The only commonality these prior incidents have with Weiss's alleged acts is that the University officers were disciplined and removed from their positions.   But their conduct is entirely dissimilar to this case and is insufficient to constitute actual knowledge here by an appropriate person.   That is, nothing about those situations puts an individual with the required authority on notice that in this particular situation, an assistant football coach would (or could) gain unauthorized access into female athletes' email or google accounts and then allegedly access other accounts on which private videos or photos were stored.   Those disconnected and dissimilar acts are such that plaintiffs cannot plausibly allege that they should have or could have caused the University Defendants to anticipate and prevent Weiss's conduct.

## 5.   <u>Plaintiffs Do Not Plausibly Allege Facts Demonstrating Deliberate Indifference to Known Sexual Harassment</u>

Nor have plaintiffs sufficiently and plausibly pled that any official who had actual knowledge was deliberately indifferent to sexual harassment.   Recently, in *Malick v. Croswell-Lexington Schools*, 148 F. 4th 855, 862 (6th Cir. 2025), the Court of Appeals addressed the deliberate indifference element involving racial harassment in violation of Title VI but applying the same standards and analysis as applicable to a sexual harassment claim under Title IX.   Affirming summary judgment the court stated:

- 16 -

> Showing deliberate indifference is no easy task.  A plaintiff must establish that her school responded "to known acts of . . . harassment" in a "clearly unreasonable" manner.  Through it all, we "ask not whether the school's efforts were ineffective but whether they amounted to an official decision not to remedy" the harassment.

The deliberate indifference standard "sets a high bar for plaintiffs to recover under Title IX." *Stiles v. Grainger County*, 819 F.3d 834, 848 (6th Cir. 2016).  There is no deliberate indifference unless the response was "clearly unreasonable in light of the known circumstances." *Id*.  Moreover "there is no reason why courts . . . [can]not identify a response as not 'clearly unreasonable' as a matter of law" at a motion to dismiss stage. *Id.*, (ellipses and bracket in original, cites omitted).  No showing of deliberate indifference here can be made.

Here, the undisputed actions taken by the University belie any claim of deliberate indifference.  It is undisputed that by December 23, within the two-day period plaintiffs claim an "appropriate individual" was notified of Weiss's unauthorized access, the matter was turned over to law enforcement for investigation of possible criminal conduct. (See Ex. A).  Plaintiffs allege that on January 10, 2023, law enforcement executed search warrants at the University football facilities and seized computer equipment. (¶¶116-117, PageID 2642).  They concede that Weiss was placed on leave just one week later and was fired just three days after that. (¶¶120-121, PageID 2642-2643).  Claims that the University might have taken additional steps, such as "secur[ing] the physical areas and devices that were

- 17 -

available to and used by Weiss" are insufficient to constitute deliberate indifference.

(¶81, PageID 2635). They fail to plausibly allege that plaintiffs have met the standard stated in *Malick*, that the University's response "amounted to an official decision not to remedy the harassment."

Less than one month elapsed time from when plaintiffs allege an "appropriate individual" was notified of Weiss's unauthorized access until he was fired. *See Henderson v. Walled Lake Consol. Schools*, 469 F.3d 479, 492 (6th Cir. 2006)(no deliberate indifference in Title IX claim when "[a]ll in all, less than a month passed between Jill's [the plaintiff's] parents' complaint … and Crawford's [the perpetrator's] termination…")(bracketed material added). *See also*, *e.g.*, *Karasek v. Regents of the Univ. of Cal.*, 956 F.3d 1093, 1106 (9th Cir. 2020)(8½ months between complaint and sanctions insufficient to show deliberate indifference); *Oden v. N. Marianas Coll.*, 440 F.3d 1085 (9th Cir. 2006) (9 months between sexual assault and formal hearing).

While plaintiffs essentially argue that the University could, or should, have taken additional steps, they do not dispute the steps that the University did take. Those actions demonstrate there was no deliberate indifference. As of December 23, 2022, just two days after the time the indictment indicates Weiss first had unauthorized access, the University "randomized" plaintiffs' passwords so that no further unauthorized access could occur. (*See* Ex. A). And plaintiffs were notified

- 18 -

in writing of the unauthorized access.  They were informed that the unauthorized access was possibly criminal, that the University had already referred the matter to law enforcement and that a criminal investigation was ongoing.  *Id*.

Plaintiffs were specifically informed that they should change passwords on any non-University accounts or services they had linked to their University email. It was recommended that they complete a Google security check and they were provided instructions as to how to do so.  They were told to check their umich email password settings and to report any unfamiliar settings to the University police.  (Ex. A).  They were also offered identity theft protection at no cost.  *Id*.  Whether plaintiffs took any of those recommended proactive steps, the steps taken by the University (and the notice and recommendations provided to plaintiffs) did not amount "to an official decision not to remedy the harassment" and are contrary to any claim of deliberate indifference.

Nor do plaintiffs' repeated references to Weiss coaching in a football game on December 31, 2022, demonstrate deliberate indifference.  There is no claim that plaintiffs perceived Weiss's participation in coaching the game on December 31, 2022, as somehow subjecting them to a severe and pervasive sexually hostile educational environment.  Additionally, that game took place not more than ten days after plaintiffs allege an "appropriate individual" had notice of the unauthorized access.  But by that time Weiss's access had already been cut-off as a result of the

- 19 -

University randomizing passwords for the accounts accessed. The matter had already been turned over to law enforcement and was being investigated. Plaintiffs assert that failing to take additional steps such as placing Weiss on leave after the unauthorized access and before the football game, demonstrates deliberate indifference.

But during that ten-day period – which included the Christmas holiday during which the University was closed – steps had been taken to prevent any additional unauthorized access, and while the law enforcement investigation was already ongoing it was not complete. The issue is not whether additional steps might have been taken, it is whether the steps taken "amounted to an official decision not to remedy" the conduct. They did not.

Separate incidents, those involving Philbert, Anderson or Schlissel, or a claimed general harassing atmosphere, do not demonstrate deliberate indifference. Rather, "the deliberate indifference inquiry must focus on the particular incidents of harassment suffered by C.M. [the plaintiff] and the school's response to those particular incidents. *See,Malick*, 184 F.4ᵗʰ at 868. The claims here fails because the alleged harassment by Weiss as to the Jane Doe plaintiffs, and the University's response to it, does not plausibly demonstrate that the University's response "amounted to an official decision not to remedy the harassment."

### 6. There Are Insufficient Facts To Constitute Stalking

Count I also alleges that Weiss engaged in "stalking" that constituted sexual assault. "Stalking" is a course of conduct directed at a specific person that would cause a reasonable person to fear for her safety or the safety of others, or suffer substantial emotional distress. (¶431, PageID 2711). Plaintiffs do not claim that Weiss's conduct was directed "at a specific person." Indeed, they claim that his conduct was directed against 150,000 individuals. (*See, e.g.*, ¶¶299, 433, PageID 2684, 2712).

Moreover, as discussed above, plaintiffs admit that they were unaware of any alleged "stalking" at the time they allege it was occurring, and did not learn of it until March 2025, after Weiss was indicted, and years after he had been fired by the University. One cannot be in fear for her safety based on conduct of which she is unaware and which had ended by the time she says she became aware. The University is entitled to dismissal of Count I.

### C. Plaintiffs Fail To State A Title IX Unequal Treatment And Benefits Claim

Count II is captioned as an alleged Title IX violation based on unequal treatment and benefits between male and female athletics. While plaintiffs make vague allegations of unequal programs between male and female athletics, they offer

no facts nor do they claim that any such alleged unequal programs denied them educational or athletic opportunities.

Count II largely repeats the allegations in Count I, that Weiss's conduct constituted sexual harassment to which the University was deliberately indifferent. (*See, e.g.*, ¶¶483-486, PageID 2727-2728).  Count II has the same deficiencies as Count I; it does not plausibly identify an individual who had actual knowledge of sexual harassment, had the authority to take action but was deliberately indifferent, nor do the undisputed facts demonstrate deliberate indifference.  It again fails to identify how plaintiffs were denied any educational program or opportunity.

Plaintiffs allege that Weiss's conduct was so severe and pervasive that it denied them equal access to the University's educational programs or activities, including medical and training services.  But in the very next paragraph plaintiffs admit that they did receive medical and training services from the University. (¶¶492-493, PageID 2729-2730).  Plaintiffs provide no facts as to which medical or training services were allegedly unequally provided, or how they were denied equal access.  Nor do they set forth any facts regarding unequal treatment they or any other female athlete received, or that there is a disparity in general as to benefits offered to male athletes but not female athletes.  Count II fails to state a claim upon which relief can be granted and the University is entitled to dismissal.

### III.   OTHER FEDERAL CLAIMS

**A.      The SCA Claim.**  The SCA claim in Count XVII is asserted against theUniversity and the Individual Defendants.  All Moving Defendants are entitled to dismissal of that claim.

### 1.   There Is An Earlier SCA Claim Pending Against The University In Another Court

As previously indicated, there is another case by plaintiffs against the University/BOR in the Michigan Court of Claims.  That case was filed 9/21/2025, and asserts a claim for violation of the SCA.  The 2nd ACCAC here was filed months later, on 3/30/2026.  It asserts that same claim against the University/BOR, as well as the Individual Defendants.  The University Defendants are entitled to dismissal of the SCA claim, because plaintiffs cannot simultaneously pursue the same claim against the same parties in two different courts.  As the later filed claim, the SCA claim here should be dismissed.

### 2.   The University Has Immunity Under the 11th Amendment to the U.S. Constitution

Additionally, the University has immunity to the SCA claim pursuant to the 11th Amendment.  The Eleventh Amendment bars "any suit in law or equity, commenced or prosecuted against one of the United States."  Under the Eleventh Amendment there is an "established jurisprudence" that a state cannot be sued without its consent.  *Will v. Michigan Department of State Police,* 491 U.S. 58, 67 (1989).  That immunity also

- 23 -

applies to claims against instrumentalities of the state. *Regents of the University of California v. Doe,* 519 U.S. 425, 429 (1997). *See also*, *Tennessee v. Lane*, 541 U.S. 509, 517 (2004)("[T]he Eleventh Amendment bars suits against state entities in federal court…").

The University is a constitutionally created arm of the State. (*See*, Michigan Constitution, Article VIII, §§4 and 5). Thus, the University Defendants are entitled to Eleventh Amendment immunity to the same extent as the State itself. *See, e.g.*, *Estate of Ritter v. University of Michigan*, 851 F.2d 846, 850-51 (6th Cir. 1988)(Eleventh Amendment applies to the Board of Regents.) *See, also, Stanley v. Western Michigan University*, 105 F.4th 856, 864 (6th Cir. 2024)(because the constitutionally created public university was "an arm of the State of Michigan, a suit against [that University] is a suit against Michigan.")

That immunity applies unless "Congress has 'unequivocally expressed its intent to abrogate the immunity'[.]" *Seminole Tribe v. Florida*, 517 U.S. 44, 55 (1996), citing *Green* v. *Mansour*, 474 U.S. 64, 68 (1985). Congress has not abrogated immunity in the SCA as the courts considering this issue under that Act have held: *See e.g., Sullivan v. Mericle*, 2013 U.S. Dist. LEXIS 81390, at *4–5 (N.D. Ohio 2013)("Plaintiff seeks monetary damages for past behavior and Congress has not abrogated the state's immunity. The Eleventh Amendment therefore is an absolute bar for this suit for damages against the State of Ohio or its agency.");

- 24 -

*Bolanos v. NE. Ill. Univ.*, 2017 U.S. Dist. LEXIS 1313, at *55 n.37 (N.D. Ill. 2017)("The court has found nothing to suggest the state has waived sovereign immunity for claims, or that Congress abrogated that immunity.")  To the same effect, dismissing SCA claims due to 11th Amendment immunity:  *Doe v. Office of the Kan. Sec. Comm'r*, 2017 U.S. Dist. LEXIS 190438, at *12–13 (D. Kan. 2017); *Hall v. Fla. Dep't of Corr.*, 2018 U.S. Dist. LEXIS 103585, at *6 (N.D. Fla. 2018). That immunity, in addition to all other grounds discussed below, independently entitles the University to dismissal of the SCA claim.

> **3.    Neither The University Nor the Individual Defendants Are Vicariously Liable Under the SCA**

Not only is the University immune from the SCA claim, but the Moving Defendants are not vicariously liable for the allegedly criminal conduct of Weiss. Vicarious liability under the SCA applies only if "the employer 'affirmatively urged the employee to access the plaintiff's computer system beyond his authorization for their benefit'."  *Murphy v. Spring*, 58 F. Supp. 3d 1241, 1266 (N.D. Okla. 2014). That is consistent with general principles of vicarious liability:

> [A]n employer is not liable for the torts committed by an employee when those torts are beyond the scope of the employer's business. This Court has defined "within the scope of employment" to mean engaged in the service of his master, or while about his master's business.  Independent action, intended solely to further the employee's individual interests, cannot be fairly characterized as falling within the scope of employment.

*Hamed v. Wayne Cty.*, 490 Mich 1, 10-11 (2011)(internal quotations omitted).  *See also, Zisgo v. Hurley Med. Ctr.*, 475 Mich. 215 (2006) ("[T]he general rule is that an employer is not liable for the torts intentionally or recklessly committed by an employee when those torts are beyond the scope of the employer's business").  Plaintiffs concede their claims against the Moving Defendants are based on state law vicarious liability principles.  (¶737, PageID 2787).  *See also, Butera & Andrews v. IBM Corp.*, 456 F. Supp. 2d 104, 112 (D.D.C. 2006)(Dismissing SCA vicarious liability claim based on state law agency principles.)

The Individual Defendants were not the employer, and therefore cannot be vicariously liable.  Additionally, there can be no vicarious liability for Weiss's allegedly criminal conduct here.  There is no allegation that any Moving Defendant urged Weiss to engage in unauthorized access.  And such conduct was wholly outside his responsibility as an Assistant Football Coach for the men's team, and done for his own purposes – not the University's or any Individual Defendant's.

### 4.    The SCA Claim Otherwise Fails To State A Claim

There are no facts suggesting that any of the Individual Defendants themselves obtained any private information regarding plaintiffs in violation of the SCA.  Further, there can be no liability against any Moving Defendant for any alleged conduct by Weiss after January 20, 2023, the date plaintiffs admit his employment at the University terminated.  (¶100, PageID 2639).  *See, Abu v. Dickson*, 107 F.4th

508, 516 (6th Cir. 2024), citing *U.S. v. Shahulhameed*, 629 F. App'x 685, 688 (6th Cir. 2015) for the proposition that "firing an employee cut off his 'authorization' to access company accounts, even though the employee could still log in."

### a. The Moving Defendants Are Not Service Providers To Whom the SCA Applies

The SCA applies to "service providers" that is "a facility through which an electronic communication service is provided" or a "remote computing service" provider, such as "telephone companies, internet or e-mail service providers" *Abu v. Dickson*, 2023 U.S. Dist. LEXIS 91828, at \*20 (E.D. Mich. 2023) . On that basis alone, dismissal is appropriate.

Moreover, the SCA applies only to such facilities that provide those services *to the public*." 18 U.S.C. § 2702(a)(1)-(2). Plaintiffs acknowledge that requirement. (¶749). But there is no allegation that any of the Moving Defendants provide any such computer or electronic services *to the public.* While the SCA does not define the term "public" it is to be given its ordinary meaning. *United States v. Zabawa*, 719 f.3d 555, 559 (6th Cir. 2013). And "[i]n determining that meaning, dictionaries are a good place to start." *Id.* According to Black's Law Dictionary, "public" means "the aggregate of the citizens," "everybody," "the people at large" or "the community at large." (as quoted in *Anderson Consulting LLP v. UOP*, 991 F. Supp. 1041, 1042 (N.D. Ill. 1998). There is no claim that the University's email or Google

- 27 -

accounts were available to "everybody" or to the community at large, or to anyone other than students or alumni or employees.  For that reason, dismissal was found proper as to the University in *Walker v. Coffey*, 956 F.3d 163, 166 (3d Cir. 2020), stating "The SCA is inapplicable because Penn State does not provide electronic communication services *to the public…*"  (emphasis added).

### b.  There Is No Claim That Any Moving Defendant Knowingly Divulged Covered Communications

Further, the SCA provides that "a person or entity providing an electronic communication service to the public shall not *knowingly divulge* to any person or entity the contents of a communication while in electronic storage…" 18 U.S.C. 2702(a)(1)(emphasis added).  There is no such allegation as to any of the Moving Defendants.  Nor would an alleged failure to safeguard data satisfy the "knowingly divulge" requirement.  *See, e.g., Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 896 (N.D. Ill. 2012).  Additionally, they fail to allege or provide facts that any Moving Defendant obtained the type of "wire or electronic communication *while it is in electronic storage*" which they admit is a necessary element.  (¶749, PageID 2789-2790).

### 5.  The SCA Claim is Barred by the Statute of Limitations

Additionally, the SCA claim is time-barred, entitling all moving defendants to dismissal.  An SCA action "may not be commenced later than two years after the

date upon which the claimant first discovered or had a reasonable opportunity to discover the violation."  18 U.S.C. § 2707(f).

Plaintiffs received a Notice letter from the University regarding the unauthorized access.  (Ex. A).  The Notice letter refers to itself as the "Data Incident Notification Letter from Feb. 2023," and provides contact information if additional information is desired.  (¶152, PageID 2649; *see also* Ex. A).  Among other things, the Notice letter informed plaintiffs of the unauthorized access itself, and also that (i) the access was possibly criminal in nature; (ii) the investigation had already been turned over to law enforcement, (iii) non-University accounts which were linked to a University email might also have been accessed and (iv) to prevent any further unauthorized access the University had randomized email passwords.  Plaintiffs themselves characterize the Notice letter as indicating that the unauthorized access "had led to the compromising of private data."  (¶130, PageID 2644).

Under the SCA, the limitations period starts to run when a plaintiff has information that would motivate a reasonable person to investigate whether someone intentionally accessed a covered facility and obtained unauthorized access.  *Sewell v. Bernardin*, 795 F.3d 337, 340 (2d Cir. 2015).  The *Sewell* court held that knowledge of unauthorized access there alone was sufficient to start the limitations period.  *Id.* at 341.  By plaintiffs' own admission the February 2023 Notice provided them with notice of "unauthorized access" and "compromising of private

- 29 -

information" as well as additional information. The Notice letter was sufficient to start the running of the statute of limitations.

The original complaint filed in case 25-10806 (prior to the consolidation), and which named only the University and Board was filed March 21, 2025 (ECF #1). That was more than two years after plaintiffs received the Notice letter, entitling the University Defendants to dismissal. And the Individual Defendants were not named as parties until the filing of the First Consolidated Class-Action Complaint, ECF 74, on 6/27/2025, well over two years after the Notice letter. The SCA claim is barred as to all Moving Defendants by the applicable statute of limitations.

**B.** **The CFAA Claim**. The CFAA claim, Count XVI, is asserted only as to the Individual Defendants. Again, that claim was previously dismissed as to the University but has been refiled against it as part of plaintiffs' pending Court of Claims case.

### 1. Plaintiffs Do Not Allege "Damage" or "Loss" Compensable Under The CFAA

The CFAA claim fails to state a claim as to the Individual Defendants, the only Moving Defendants still named in that Count. The plaintiffs fail to make any allegations as to how any of the Individual Defendants themselves violated the Act by improperly accessing any information, and dismissal is appropriate on that basis alone.

Additionally, the CFAA claim fails to state a claim because plaintiffs do not allege statutorily defined "damage" or "loss" both of which are requirements of the Act. *Yoder & Frey Auctioneers, Inc v. EquipmentFacts*, LLC, 774 F.3d 1065, 1072 (6th Cir. 2014). Plaintiffs must plead facts demonstrating a compensable "damage" before they can claim compensable "loss." "Damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. §1030(e)(8). Plaintiffs have pled no such "damage" to data or a system. *See Courser v Allard*, 969 F.3d 604, 619 (6th Cir. 2020)(affirming dismissal of CFAA claim, because that claim is "limited to damage to the illegally-accessed computer or computer system…***  The district court properly determined that Courser failed to state a claim under the CFAA." (cite omitted).

Moreover, absent statutory "damage" pleading "loss" alone is insufficient. But here plaintiffs have also not pled facts showing a statutory "loss." "Loss" under the Act relates to costs caused by harm to computer data, programs, systems, or information services. 18 U.S.C. §1030(e)(11). Plaintiffs claim to have suffered "loss" alleging, for example, that they "suffered losses, including but not limited to, mitigation costs, including time and money spent to prevent identity theft, such as on credit monitoring and software like DeleteMe." (¶732, PageID 2786). And they claim that they will suffer future loss: "Plaintiffs will incur expenses to investigate what has happened to their sensitive information, where it was stored, whether it was

- 31 -

distributed to third parties and to ensure it is never distributed without their consent." (¶¶732-733, PageID 2786).  But these types of purported loss are not recoverable under the CFAA, which are limited to costs related to damage to a system or data something plaintiffs do not allege.

Nor are alleged consequential damages from misuse of a computer system or data compensable under the CFAA.  As the Supreme Court stated in *Van Buren v. U.S.*, 593 U.S. 374, 391 (2021):

> Provisions defining "damage" and "loss" specify what a plaintiff in a civil suit can recover.  "[D]amage," the statute provides, means "any impairment to the integrity or availability of data, a program, a system, or information."  The term "loss" likewise relates to costs caused by harm to computer data, programs, systems, or information services.  § 1030(e)(11).  The statutory definitions of "damage" and "loss" thus focus on technological harms – such as the corruption of files – of the type unauthorized users cause to computer systems and data.  Limiting "damage" and "loss" in this way makes sense in a scheme "aimed at preventing the typical consequences of hacking."  The term's definitions are ill fitted, however, to remediating "misuse" of sensitive information that employees may permissibly access using their computers. (cites omitted).

*See also*, *Courser*, 969 F.3d at 619 (affirming dismissal of CFAA claim which had stated that damage under the Act "does not include subsequent use of illegally-obtained information."; *W. Excelsior Corp. v. Propex Operating Co.*, 2017 U.S. Dist. LEXIS 227496, at *9 (E.D. Tenn. 2017)("The CFAA does not contemplate consequential damages that are unrelated to harm to the computer itself."; "Losses under the CFAA are only compensable when they result from damage to a computer

- 32 -

system or the inoperability of the accessed system"). To the same effect, *Am. Family Mut. Ins. Co. v. Rickman*, 554 F. Supp. 2d 766 (N.D. Ohio 2008). Not only are such consequential damages not recoverable, but plaintiffs do not allege that the Individual Defendants somehow obtained and then misused any information improperly obtained by Weiss. Plaintiffs do not allege to have suffered either any "damage" or "loss" of the type defined in and compensable under the Act. The Individual Defendants are entitled to dismissal of the CFAA on that basis for failure to state a valid claim.

### 2.  The CFAA Claim Is Barred By The Statute of Limitations

A CFAA claim must be brought within 2 years of the date of the act complained of or the date of the discovery of the damage. § 1030(g). As indicated above, plaintiffs do not allege any statutory "damage" and therefore cannot claim to have discovered any. Accordingly, the statute began to run from the date of the "act complained of," the December 2022 unauthorized access. But the Individual Defendants were named as parties only when the First Consolidated Class-Action Complaint, ECF 74, was filed on 6/27/2025, well over two years after the unauthorized conduct. Accordingly, the CFAA claim is barred by the statute of limitations, entitling the Individual Defendants to dismissal.

## IV.   THE SECTION 1983 CLAIMS

There are five claims under 42 U.S.C. §1983; Counts IV (Invasion of Privacy); V (Deprivation of Property); VI (Bodily Integrity); VII (Equal Protection); and VIII (Search and Seizure).  Each of those claims is asserted only against the Individual Defendants.

### A.   Requirements Applicable To All Section 1983 Claims

#### 1.   <u>The Individual Defendants Are Entitled to Dismissal of Any Claim For Injunctive Relief</u>

Plaintiffs specifically allege that the §1983 claims are brought against each Individual Defendant only in his individual capacity.  *See, e.g.*, ¶¶523, 543, 566, 588, 610, PageID 2739, 2744, 2749-2750, 2755-2756, 2762.  Plaintiffs also allege that they are entitled to injunctive relief for those claims (¶¶539, 562, 584, 606, 629, PageID 2743, 2749, 2755, 2761, 2767).  But plaintiffs cannot seek injunctive relief against the Individual Defendants in their individual capacities.  Moreover, in their individual capacities the Individual Defendants would not have the authority to grant injunctive relief, a separate basis entitling the Individual Defendants to dismissal.  *See, Stanley v. Western Michigan University*, 105 F.4th 856 (6th Cir. 2024)(affirming dismissal of claim for injunctive relief against individual defendants because they could not grant the injunctive relief requested).

- 34 -

**2.** **The Individual Defendants Have Qualified Immunity Because Plaintiffs Do Not Plausibly Allege Violation of Clearly Established Constitutional Rights**

One of the elements plaintiffs must plausibly allege for each of their §1983 claims is that the Individual Defendants violated their clearly established constitutional rights.   Government officials have qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To avoid qualified immunity and dismissal, plaintiffs must show a constitutional right so clearly established that no reasonable official in the Individual Defendants' positions could have believed that his conduct was lawful.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Chappell v. Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).  Only caselaw of the Supreme Court and, perhaps, controlling authority from the Sixth Circuit, is sufficient for a right to be clearly established.  *City of Escondido v. Emmons*, 586 U.S. 38, 43 (2019).  A clearly established right must be identified in more than a generalized sense, *Anderson v. Creighton*, 483 U.S. 635, 639-640 (1987), it must "squarely govern[] the specific facts at issue." *City of Escondido*, 586 U.S. at 43.  Whether a right is clearly established is a "question[] of law for the court." *Smith v. City of Troy, Ohio*, 874 F.3d 938, 944 (6th Cir. 2017).  Plaintiffs "bear the burden of showing that the right was clearly established." *Cunningham v. Shelby County*, 994 F.3d 761, 765 (6th Cir. 2021).  There does not appear to be

- 35 -

Supreme Court or Sixth Circuit authority recognizing these rights in the context of a hacking case.

And the 2nd ACCAC merely alleges at the highest level of generality that each alleged constitutional right, e.g., privacy, property, bodily integrity, was clearly established.  See, ¶524, PageID 2739 (privacy); ¶544, PageID 2744 (property), ¶568, PageID 2750 (right to bodily integrity); ¶589, PageID 2756 (equal protection); and ¶611, PageID 2762 (search and seizure).  These allegations fall well short of meeting plaintiffs' burden.

Moving Defendants contend that there were no constitutional violations, as explained below.  But the failure to satisfy the "clearly established" element, in addition to the other required elements discussed above, means the Individual Defendants retain their qualified immunity and are entitled to dismissal of all of the §1983 claims.

### 3. <u>Plaintiffs have not plausibly alleged that each Individual Defendant himself engaged in unconstitutional conduct</u>

Not only must plaintiff plausibly allege that a clearly established constitutional right was violated, but even if those elements are met they must also plausibly allege that "a defendant was *personally* at fault and that the defendant's culpable conduct (not somebody else's) *caused* the injury." *Pineda v. Hamilton Cty.*, 977 F.3d 483, 490 (6th Cir. 2020)(emphasis and parenthetical in original).  Plaintiffs

- 36 -

must state a claim separately for each Individual Defendant. "[A] plaintiff must plead that each…defendant, *through the official's own individual actions*, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added). Accord, *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012); and *Pineda, supra*.

This pleading obligation is not satisfied by the various allegations including all, or substantially all of the Individual Defendants by name or by use of plaintiffs' defined group term "Individual Defendants," without differentiation. *See, e.g.,* ¶522, PageID 2738 ("The Individual Defendants violated Plaintiffs' and Class Members' Due Process rights…"); ¶525, PageID 2739 ("The Individual Defendants invaded Plaintiffs' and Class Members' privacy…"). All of the §1983 claims are asserted against all of the Individual Defendants, without differentiation or explanation as to what each specific individual did that is actionable. Plaintiffs' failure to allege facts as to the Individual Defendants' direct involvement means the §1983 claims all fail to state claims and should be dismissed.

### 4. Weiss's Conduct Did Not Constitute "State Action"

In a claim under §1983, there is a "threshold requirement of 'state action'." *Wagner v. Metropolitan Nashville Airport Authority*, 772 F.2d 227, 22 (6th Cir. 1985). "If the defendant was not engaged in state action, the Fourteenth Amendment is not implicated . . .". *Federal Judicial Cen*ter "Section 1983 Litigation (3rd ed), p.

- 37 -

81. On the face of the Complaint, it was Weiss, not the Individual Defendants, who allegedly invaded plaintiffs' privacy.  In engaging in his allegedly criminal conduct, Weiss's conduct did not constitute state action.  As explained in *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001):

> Not every action undertaken by a person who happens to be a state actor is attributable to the state. , . . The acts of state officials in the ambit of their personal pursuits do not constitute state action.  Accordingly, a defendant's private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law.  For the purposes of a state-action analysis, there can be no pretense of acting under color of state law if the challenged conduct is not related in some meaningful way either to the actor's governmental status or to the performance of his duties.  (Quotations and citations omitted, cleaned up).

*See also*, *MacKey v. Rising*, 106 F.4th 552, 559 (6th Cir. 2024)("For conduct to be considered state action the challenged action must be meaningfully related to the official's governmental status or performance of duties.")(internal citations omitted).

Here, plaintiffs seek to hold the Individual Defendants liable for their alleged failure to prevent the criminal wrongs allegedly committed by Weiss; but that personal and outside the scope of his job conduct was not state action.  Since that allegedly criminal conduct was not state action, the Individual Defendants had no constitutional duty to prevent it.  *See DeShaney v. Winnebago County Dep't of Social*

*Servs.*, 489 U.S. 189, 195 (1989). The lack of state action entitles the Individual Defendants to dismissal of all the §1983 claims.

### B. The §1983 Counts Additionally Fail To State Claims

#### 1. Count IV – The Invasion Of Privacy Claim Fails Because The Individual Defendants Are Not Alleged To Have Disclosed Plaintiffs' Private Information

While plaintiffs make conclusory statements regarding Weiss's unauthorized access (¶525, PageID 2739), they do not allege that any Individual Defendant disseminated any of plaintiffs' information, a failure fatal to this claim. *See, e.g.*, *Kenny v. Bartman*, 2017 U.S. App. LEXIS 16640, at *17-18 (6th Cir. 2017)("Moreover, [the plaintiff] does not allege that [the defendants] disseminated any of the pictures. [The plaintiff] therefore has failed to state a constitutional claim for violation of his right to privacy."). This pleading failure entitles the Individual Defendants to dismissal. *See Bell v. City of Southfield*, 37 F. 4th 362, 367 (6th Cir. 2022).

#### 2. Count V Fails to State a Claim that The Individual Defendants Violated a Substantive Due Process Right to Property

The substantive due process right to property in Count V is predicated on allegations of Weiss accessing and retaining their private information and data. But such conduct classically falls under a search-and-seizure analysis, the claim plaintiffs explicitly assert in Count VIII. Plaintiffs cannot repackage and relabel that

- 39 -

same claim as arising and stating a claim under substantive due process. *See, e.g.,* *Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Cummins v. Robinson Twp.*, 283 Mich. App. 677 (2009).

Further, a defendant is only liable for the tort of misappropriation if the defendant's use was for a "predominantly commercial purpose . . . .  The use must be *mainly* for purposes of trade, without a redeeming public interest, news, or historical value." *Battaglieri v. Mackinac Ctr. For Pub Policy*, 261 Mich. App. 296, 302 (2004)(emphasis added).  While plaintiffs allege generally that Weiss's conduct harmed the value of their NIL, they fail to allege that any of the Individual Defendants benefitted commercially from the same.

Plaintiffs cannot establish a clearly established constitutionally protected property right protected by substantive due process.  Therefore, there is no underlying constitutional violation, and the Individual Defendants are entitled to dismissal.  See *Bell, supra,* 37 F. 4th at 367.

### 3. The Bodily Integrity Claim in Count VI Fails Because Plaintiffs Did Not Suffer A Physical Intrusion to Their Bodies

The constitutional right to bodily integrity means the "right *to be free from forcible physical intrusions* of their bodies against their will, absent a compelling state interest." *Planned Parenthood Sw. Ohio Region v. Dewine*, 696 F.3d 490, 506 (6th Cir. 2012).  Thus, courts have found that the right to bodily integrity is violated

- 40 -

by, *e.g.*:  the forcible injection of medication (*Washington v. Harper*, 494 U.S. 210, 229 (1990)), or unwanted medical treatment (*Cruzan v. Dir. Mo. Dep't of Health*, 497 U.S. 261, 278 (1990), or forced sterilization (*Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942)), or, as in the Flint Water Cases, the consumption of unsafe water (*Guertin v. Michigan*, 912 F.3d 907, 919 (6th Cir. 2019)).  There was no physical intrusion here, nor do plaintiffs claim otherwise.  That alone entitles the Individual Defendants to dismissal.

Moving Defendants anticipate that plaintiffs may cite *Kallstrom v. City of Columbus*, 136 F. 3d 1055 (6th Cir. 1998), as allowing a claim based on a perceived likely threat without an actual physical bodily intrusion.  But that case was a narrow and inapplicable exception.  *Kallstrom* involved the release to gang members with a "propensity for violence and intimidation" and who were "likely to seek revenge" of home addresses and other information regarding both police who had testified against them and those officers' families.  *Id* at 1059, 1063.  That release thereby "place[d] an individual at substantial risk of serious bodily harm, possibly even death."  *Id* at 1064.  The Sixth Circuit has subsequently made clear that *Kallstrom* was narrow and limited:

> We belabor the discussion of *Kallstrom* to emphasize what it did *not* do:  It did not create a broad right protecting plaintiffs' personal information. Rather, *Kallstrom* created a narrowly tailored right, limited to circumstances where the information

- 41 -

> disclosed was particularly sensitive and the persons to whom it was disclosed were particularly dangerous *vis-a-vis the plaintiffs.*

*Barber v. Overton*, 496 F.3d 449, 456 (6th Cir. 2007)(emphasis in original).

As *Barber* makes clear, this case does not involve the extreme facts and narrow exception of *Kallstrom*.  There is no allegation in the 2nd ACCAC that Weiss had any propensity for violence or had ever threatened or even contacted any plaintiff or put them at risk of physical bodily harm.  The admission that plaintiffs did not know about Weiss's conduct until he was indicted, years after the unauthorized access is alleged to have occurred, belies any claim of threats or intimidation.  There is neither an allegation of actual physical bodily intrusion nor facts that might allow an exception.

### 4. The Equal Protection Claim in Count VII Fails Because Plaintiffs Have Not Alleged that The Individual Defendants Treated Them Differently than Similarly Situated Males

Plaintiffs allege that, through Weiss's actions, the Individual Defendants denied them equal protection because "primarily targeted female athletes" and that "[s]imilarly situated male athletes were not subjected to the same sexual harassment, sexual assaults and/or stalking, as their female peers." (¶594, PageID 2757-2758-2564).  The allegation that Weiss "*primarily* targeted female athletes" concedes that he also targeted male athletes.

"In order to state a claim for an equal protection violation based upon gender

discrimination, [a] [p]laintiff must demonstrate that [s]he was treated differently – under the same facts and circumstances – than a member of the opposite gender." *Lipian v. Univ. of Mich.*, 453 F. Supp. 3d 937, 964 (E.D. Mich. 2020) (quotation marks omitted).  But the allegations do not support such a claim.  They do not allege that the Individual Defendants treated them differently than males in the same facts and circumstances.  They do not allege that the University had different information technology security policies or practices for females and males, nor that that there were different policies regarding training, supervision, enforcement, or other activities.

Plaintiffs do not connect the alleged equal-protection violation to actions by the Individual Defendants, or allege they were actively involved in Weiss's conduct.  There can be no supervisory liability absent a showing of active involvement or encouragement in unconstitutional conduct by each Individual Defendant.  Plaintiffs make no such showing, therefore fail to sufficiently allege that the Individual Defendants themselves violated plaintiffs' constitutional right to equal protection.

**5.      Plaintiff Do Not Allege a Viable Search And Seizure Claim**

Count VIII alleges a Fourth Amendment search and seizure violation.  That claim fails for at least two independent reasons.  First, plaintiffs allege that Weiss, but not any of the Individual Defendants, conducted or participated in a search.  ("Weiss intentionally searched and seized Plaintiffs' private information…"( ¶613,

PageID 2763).   They allege that "[t]he Individual Defendants violated Plaintiffs'…Fourth Amendment [rights] *through Weiss' access…* (¶612, PageID 2762-2763).   These allegations do not make the Individual Defendants Fourth Amendment violators.   Even a supervisor is not liable unless "the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it..." *Sumlin v. Mt. Morris Twp.*, 2023 U.S. Dist. LEXIS 220219, at *9 (E.D. Mich. 2023), quoting *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016).   Plaintiffs have made no such allegation as to any of the Individual Defendants.

Second, the Fourth Amendment applies only to law enforcement and other government actors intending to investigate or enforce criminal laws or breaches of other statutory or regulatory standards, *New Jersey v. TLO*, 469 U.S. 325, 335 (1985), or to private actors acting for the sole purpose of assisting the government in doing so.   *United States v. Robinson*, 390 F.3d 853, 871-72 (6th Cir. 2004). Plaintiffs do not and cannot allege that the Individual Defendants satisfy that requirement.

## V.    THE STATE LAW CLAIMS

The remaining claims are all state law claims asserted only against the Individual Defendants.   Counts IX and XI – XV are claims under the Michigan

- 44 -

Constitution, Counts III and XIX are state common law claims, and Count X is a claim for violation of the ELCRA.

### A.     The Common Law Claims

There are two state common law claims asserted against the Individual Defendants; Count III ("privacy and appropriation") and Count XVIII ("gross negligence," also asserted Keffer).   The Individual Defendants are entitled to dismissal of both claims

### 1.     The Individual Defendants Have GTLA Immunity

The Individual Defendants have immunity, pursuant to Michigan's Governmental Tort Liability Act MCL 691.1401, *et. seq.* ("GTLA"), Plaintiffs have not pled in avoidance of this immunity.  They do not plead that the claims fit within a statutory exception, nor that the alleged torts occurred during the exercise or discharge of a non-governmental or proprietary function.  *Chambers v. City of Detroit*, 786 F. Supp. 2d 1253, 1271 (E.D. Mich. 2011)(internal quotations omitted). GTLA immunity is a question of law, properly resolved on a motion to dismiss. *Champine v. DOT*, 509 Mich. 447, 452 (2022).  *See also, White v. Hlavaty*, 2023 U.S. Dist. LEXIS 130105, at *20 (E.D. Mich. 2023).

### a.     The University Presidents Have Absolute Immunity

Under MCL §691.1407(5) "the elective or highest appointive executive official of all levels of government" is absolutely immune if "acting within the scope

- 45 -

of his or her legislative … or executive authority."  Immunity covers both negligent and intentional torts.  *Nicklas v. Koelling*, 2004 Mich. App. LEXIS 3321, at *3 (2004), citing *Armstrong v. Ypsilanti Charter Twp*, 248 Mich. App. 573, 592-594 (2001).  The three named University Presidents – Schlissel, Ono and Grasso – are or were the "highest appointed executive."  *See* Michigan Constitution, Article VIII §5 (the Board of Regents shall elect a president to be "the principal executive officer of the institution…").  The 2^(ND) ACCAC alleges that each of them, at all relevant times was "an employee of the University and his conduct was under color of law." (¶¶32, 34, 36, PageID 2624-2626).  They are each absolutely immune for conduct while exercising their presidential authority.

Defendants anticipate that plaintiffs will argue that *Kreipke v. Wayne State University* stands for the proposition that a University President does not have immunity under the GTLA.  While *Kreipke* found the Wayne State University President was not entitled to absolute immunity, it offered no reasoning or authority whatsoever for its conclusion; it never mentioned or addressed the President's constitutional status as the principal executive officer.  Neither *Kreipke* nor any argument against immunity can be squared with Article VII, §5 of the Michigan Constitution and §5 of the GTLA.  Unsurprisingly, a subsequent Michigan decision reached precisely the opposite conclusion from *Kreipke*.  *Univ. Pediatricians v.*

*Wilson*, No. 353462, 2021 Mich. App. LEXIS 5499, at **29-30 (2021)(Wayne State University President was absolutely immune).

The Court must follow Michigan law as it would be applied by the Michigan Supreme Court. *Bear Stearns Gov't Sec., Inc. v. Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). Constitutional language must be given its plain meaning. *Advisory Op. on Constitutionality of*, 403 Mich. 631, 638 (1978). That plain meaning is clear, the President-Defendants are immune from the two state common law claims (Counts III and XIX) and entitled to dismissal of both claims.[6]

### b.   GTLA Qualified Immunity Also Bars The Claims Against The Other Individual University Defendants

As to the other Individual Defendants the GTLA standard is that:

> [G]overnmental employees enjoy qualified immunity for intentional torts . . . if (1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than ministerial, in nature.

MCL §691.1407(3); *Odom v. Wayne Cty.*, 482 Mich. 459, 461 (2008). A government employee is immune unless he or she is "the *one* most immediate, efficient, and direct cause of that injury." *Beals v. State*, 497 Mich. 363, 365 (2015) (quotation omitted, emphasis added). "It is not enough to say any defendant's

---

6   Alternatively, this issue of Michigan Constitutional law demonstrates why supplemental jurisdiction should not be exercised.

actions were 'among' those that caused plaintiffs' harm.  Rather, the test is whether … a particular defendant, individually, was the most direct cause of the harm." *Guertin v. Michigan*, 2017 U.S. Dist. LEXIS 85544, at \*80-81 (E.D. Mich. 2017), rev'd in part on other grounds, *Guertin v. Michigan*, 912 F.3d 907 (6th Cir. 2019). Plaintiffs do not make such allegation as to each of the Individual Defendants, and fail to allege facts in avoidance of GTLA immunity.  *Chambers, supra* at 1271.  Even if the Presidents are not found to have absolute immunity they would nonetheless also have immunity under this section of the GTLA.  The two common-law tort claims (Counts III and XIX) against the Individual Defendants should be dismissed.

### 2. The Common Law Claims Also Fail To State Claims

Not only are these two claims – privacy (Count III) and "gross negligence" (Count XIX) – barred by GTLA immunity, they both also fail to state claims.

### a. Plaintiffs Have Failed To State A Common Law Privacy Claim

Plaintiffs must plausibly allege separately for each Individual Defendant that he engaged in conduct that invaded their privacy.  "Invasion of privacy" is an umbrella term for several distinct torts.  *Lewis v. LeGrow,* 258 Mich. App. 175, 193 (2003).  Here, plaintiffs advance four privacy torts:  *i*) intrusion upon seclusion or into private affairs; *ii*) public disclosure of embarrassing private facts; and *iii*) publicity which places plaintiffs in a false light, and *iv*) appropriation, for the Defendants' advantage, of the plaintiffs' name or likeness.  (¶509, PageID 2735).

- 48 -

**1.**    **Intrusion**.   Plaintiffs allege that *Weiss* obtained plaintiffs' private information, and that the Individual Defendants invaded plaintiffs' privacy "through Weiss' access and sexualized exploitation of Plaintiffs' and Class Members' private images and PII…" (¶525, PageID 2739).  But plaintiffs fail to allege that any of the Individual Defendants accessed, received, or benefitted from the private information.  Second, assuming *arguendo* that a person who did not themself access the private information could ever be liable, plaintiffs do not plausibly allege that any Individual Defendant acted with the necessary intent for such a tort.

Plaintiffs further do not state an intrusion claim because they have not plausibly alleged that any of the Individual Defendants obtained any information regarding any plaintiff.  The 2nd ACCAC focuses entirely on Weiss's actions.  *E.g.*, "[Weiss] obtained private photographs and videos never intended to be shared by their owners with anyone but their intimate partners."   (¶433, PageID  2712). Plaintiffs make the conclusory allegation that "[t]he Individual University Employees' actions violated Plaintiffs' and Class Members' right to privacy," but provide no facts concerning what those purported tortious "actions" are.  (¶510, PageID 2735).  That is insufficient to state claims against the Individual Defendants.

To state an intrusion claim plaintiffs must plead "the obtaining of information about that subject matter *by defendant* through some method objectionable to the reasonable man." *Tobin v. Michigan Civil Service Commission*, 416 Mich. 661, 672

- 49 -

(1982) (emphasis added).  The 2nd ACCAC is devoid of allegations that any of the Individual Defendants took any affirmative actions to obtain plaintiffs' private information.  This alone requires dismissal as to all three theories alleged.

2.     **Public Disclosure Of Private Facts**.  Plaintiffs' second theory, public disclosure of private or embarrassing facts, fails because the 2nd ACCAC alleges no such broad public disclosure, an indispensable element.  "A cause of action for public disclosure of private facts requires the *disclosure* of information…"  *Duran v. The Detroit News*, 200 Mich App. 622, 631 (1993)(emphasis added).   The disclosure must be "to the public in general or to a large number of people."  *Ledl v. Quik Pik Food Stores, Inc.,* 133 Mich. App. 583, 592 (1984).

Plaintiffs do not allege that any Individual Defendant disclosed any of plaintiff's private information.  Nor is Weiss alleged to have disclosed information to the public at large or to a large number of people.  In fact, plaintiffs admit just the opposite, that they *do not* have evidence that their information was distributed or disclosed to anyone.  "[P]laintiffs will incur expenses to investigate what has happened to their sensitive information, where it was stored, *whether it was distributed to third parties* and to ensure it is never distributed without their consent." (¶733, PageID 2786emphasis added).  There are no allegations or facts that the Individual Defendants publicly disclosed (or even had access to) plaintiffs' private information.

- 50 -

3.     **False Light**.  "The gravamen of the false light privacy tort is that a defendant's publication "attribut[ed] to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position." *Battaglieri*, Mich App at  , citing (1993).  "In order to maintain an action for false-light invasion of privacy, a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people" "characteristics, conduct, or beliefs" that were false. *Duran, Id*.  There is no claim that any Individual Defendant broadcast any information regarding any plaintiff to anyone, much less to the general public or a large number of people.  Not only is there no allegation that any such broadcast was made, there is no allegation that it would have involved characteristics, conduct or beliefs that were false.  Individual Defendants are entitled to dismissal.

4.     **Misappropriation**.  Plaintiffs concede that a misappropriation claim requires that the name or likeness be appropriated "for the defendant's advantage." (¶509, PageID 2735, quoting *Battaglieri,* 261 Mich. App. at 300.)  But they do not allege that any of the Individual Defendants themselves "appropriated" any plaintiff's name or likeness, or that any purported appropriation was for any Individual Defendant's own advantage.  Indeed, Weiss is the only person they allege used plaintiffs' personal information for his own use. *See, e.g.*, ¶741, PageID 2788.

Further, misappropriation requires not just "use" for the Individual Defendants' advantage, but that the use be for a "commercial purpose," meaning

"mainly for purposes of trade." *Battaglieri*, 261 Mich. App. at 302. There are no allegations at all that any of the Individual Defendants used the private intimate information of any plaintiff for his own advantage, or for any purpose, much less a commercial one. At most, the 2nd ACCAC in entirely conclusory terms merely alleges, without facts, that *Weiss* used plaintiffs' information "for personal and/or commercial use" or sold that information (*e.g.*, ¶¶511, 686, 767, PageID 2735-2736, 2778, 2793). But conclusory or not, these allegations as to Weiss do not support a claim against the Individual Defendants entitling them to dismissal of Count III.

### b. "Gross Negligence" Is Not An Independent Claim

In addition to the GTLA immunity previously discussed, the Individual Defendants are entitled to dismissal of Count XVIII because "gross negligence" fails to state an independent claim upon which relief can be granted. *Bletz v. Gribble,* 641 F.3d 743, 756 (6th Cir. 2011). While gross negligence is an element of certain exceptions to GTLA immunity, that applies only if there is an underlying claim. And plaintiffs plead a separate negligence claim specifically, Count XXIII, but only as to Keffer not any of the Individual Defendants. Thus, Count XIX fails to state a claim and should be dismissed.

### B. The ELCRA Claim Fails to State A Claim

In Count X, plaintiffs assert a discrimination claim under ELCRA against the Individual Defendants (that same claim against the University was previously

- 52 -

voluntarily dismissed and is now one of the claims plaintiffs have refiled against the University in their pending Court of Claims case).   While Moving Defendants' contend that the Court should decline to exercise supplemental jurisdiction as to this and all state law claims, there are additional bases on which the ELCRA claim should be dismissed.[7]

The ELCRA prohibits, *inter alia*, discrimination including harassment by a public educational institution on the basis of sex.   MCL 37.2103(I)(i); 37.2401. Count X is captioned a claim for "sexual harassment and assault," the same as the Count I Title IX claim, and suffers from some of the same legal deficiencies as the Title IX claim.   That is, plaintiffs cannot claim a sexually harassing hostile, pervasive and offensive educational environment, based on conduct of which they were admittedly unaware.   Further, they do not identify any educational opportunity or program which was purportedly adversely affected by sexual harassment, nor could they since, again, they admit they were unaware of the alleged harassment.

Importantly, plaintiffs also fail to allege any specific sexually harassing conduct by any given Individual Defendant.   As with their other claims, they allege this claim against all Individual Defendants as a group.   But what sexually harassing

---

[7] Plaintiffs concede that the ELCRA protects Michigan citizens.   (¶641, PageID 2770).   As indicated below with regard to the state constitutional claims, none of the plaintiffs allege they are Michigan citizens, and dismissal of the ELCRA claim is appropriate on that basis.

conduct, by way of example only, could *e.g.*, Defendant Grasso have engaged in? He was by plaintiffs' own admission only appointed Interim President in 2025, more than two years *after* Weiss's employment was terminated, and long after any of the plaintiffs were no longer University of Michigan students.

Further, an "educational institution" is defined to include "an agent" of the institution. MCL 37.2401. Thus, while persons can be named individually, it is only by virtue of their asserted status as agents of the University of Michigan, which is a constitutionally created instrumentality of the State. Although not named in this Count, the University, as a state instrumentality is subject to the Court of Claims Act Notice and timely filing requirements, MCL 600.6431. As agents of that state instrumentality so too are claims against the Individual Defendants subject to those same Court of Claims requirements.[8] But plaintiffs did not file a Notice of Intent, and did not file this Complaint within 6 months or one year of their claims accruing, barring the ELCRA claim.

---

[8] This is analogous to an individual state employee being named in his or her official capacity. In such a circumstance the individual is treated the same as the state itself for purposes of immunity and other statutory issues. *See, e.g.*, *Will v. Michigan Department of State Police,* 491 U.S. 58, 71 (1989)("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.").

## VI.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO DISMISSAL OF THE MICHIGAN CONSTITUTIONAL CLAIMS

Plaintiffs allege six state constitutional claims against the Individual Defendants.  Those claims are:  Count IX (civil rights); Count XI (equal protection); Count XII (substantive due process), Count XIII (procedural due process), Count XIV (search and seizure), and Count XV (state created danger).  Those same claims as to the University are now pending against it in the Court of Claims.

### A.   Michigan Law Does Not allow Constitutional Claims Against the Individual Defendants In Their Individual Capacity

The Individual Defendants are named only in their Individual Capacities.  But state agents are not personally liable in their individual capacity for violations of the Michigan Constitution.  *Bauserman v. Unemployment Insurance Agency*, 509 Mich 673 (2022), recognized that while the state itself may be liable under *respondeat superior* principles for the constitutional torts of its agents, it explicitly declined to address individual liability for constitutional claims.  *Id.* at 798, n. 13.  The only case of which the Moving Defendants are aware to address the question since *Bauserman* held that Michigan Constitutional claims may not be maintained against state employees or agents in their individual capacity.  *Searcy v. Cty. of Wayne*, 2024 Mich. App. LEXIS 4256, at *31 (2024), citing *Jones v Powell*, 462 Mich. 329 (2000) and *Smith v. Dep't. of Pub. Health*, 428 Mich. 540 (1987).  Since *Bauserman*

- 55 -

declined to overrule its earlier cases with respect to the point at issue, this Court is bound by them under basic *Erie* principles. *See FCA U.S. LLC v. Kamax Inc.,* 2025 Mich. App. LEXIS (2025). The Individual Defendants are entitled to dismissal of the State constitutional claims on this basis.

**B.** **The State Constitutional Claims Should be Dismissed Because Plaintiffs are Not Alleged to be Michigan Citizens**

*Bauserman, supra,* recognized the right of Michigan citizens to bring a claim for violation of the Michigan Constitution:

> The Constitution poses restrictions on the state for the protection of Michigan citizens, and if the state harms its citizens in violation of those prohibitions, that is what creates liability.

*See also, id* at 601 (the protection of Michigan's citizens "is the bedrock upon which all else in the constitution may be built." Indeed, plaintiffs admit this limitation: "The Due Process Clause of the Michigan Constitution protects *citizens* from the deprivation of certain fundamental rights…" (¶678, PageID 2776, emphasis added).

Here, none of the plaintiffs allege they are Michigan citizens. Indeed, seven of the eleven plaintiffs, Does 3 and 6 - 11 are not alleged to have any connection to the State of Michigan. Nor do any of the four plaintiffs who allege they were former University of Michigan students allege they are Michigan citizens, and three of them (Does 2, 4 and 5) are admittedly non-Michigan residents. Accordingly, all state constitutional claims should be dismissed.

- 56 -

C.    **The State Constitutional Claims Additionally Fail To State Claims**

The state constitutional claims are largely duplicative of or mirror the federal constitutional claims against the Individual Defendants in Counts IV–VIII and fail to state claims against the Individual Defendants for the same reasons discussed above as to the federal constitutional claim counterparts, as well as the reasons below.

1.    **Plaintiffs Do Not Plead Actual, Present Injury**

Plaintiffs fail to sufficiently plead an actual, present injury, necessary for their state law claims. *See, e.g.*, *Doe v Henry Ford Health Systems*, 308 Mich App 592, 602 (2014)(the injury complained of "must be an actual, present injury."). Plaintiffs do not sufficiently plead such actual, present injuries. (*See, e.g.*, ¶517, PageID 2737, plaintiffs were subjected to "*potential* exposure of sensitive photographs." (emphasis added). A potential risk of future injury is insufficient.

Plaintiffs' injury allegations principally focus on alleged diminution to the value of NIL (name, image or likeness)(*see, e.g.,* ¶¶ 517-518, 520, PageID 2737-2738), resulting from that alleged *"potential* exposure." But they assert no facts regarding lost opportunities or a reduction in the value of such opportunities, nor as something of actual value to which they have suffered a present injury. Rather they claim that Weiss's actions diminish the "ability to control and profit from their NIL rights going forward." (¶463, PageID 2720). They do not allege that they have been

paid less, that they been paid or offered anything, or have even sought to exploit the potential value for that NIL. On its face, they have alleged only a hypothetical future injury.

Further, they allege no non-conclusory facts showing that any private or personal information was viewed or disclosed beyond Weiss, let alone that the disclosure was public, or at least known to those who might be interested in paying for NIL rights. As recently explained in *Polkowski v. Jack Doheny Co, Inc.*, 2025 U.S. Dist. LEXIS 217278, at *23 (E.D. Mich. 2025), even publication on the dark web – something not claimed here – of personally identifiable information including a plaintiff's social security number did not sufficiently allege a present injury: "disclosure of stolen information alone is not a present injury if no actual identity theft resulted from the disclosure," citing *Rakyta v. Munson Healthcare*, 2021 Mich. App. LEXIS 5905 (2021)(holding that "the unauthorized viewing of confidential information does not by itself reduce the value of the information."). Unlike *Polkowski*, here plaintiffs admit that they are unaware of any further disclosure beyond Weiss. Indeed, they admit that with regard to their private information, they will incur future expenses in determining "*whether* it was distributed to third parties..." (¶733, PageID 2786, emphasis added). If there was no further disclosure, and they admit they are not aware of any, they cannot show a present injury. The

- 58 -

purported potential future diminution of NIL value does not sufficiently allege a present injury.

Michigan cases addressing data breach claims such as plaintiffs', have repeatedly held that the type of damages that plaintiffs claim here, potential future damage or future expense, are not cognizable. *See, e.g., Doe,* 308 Mich App at 602 (negligence claim); *Rakyta, supra* (negligence, negligence *per* se, breach of contract, invasion of privacy, breach of fiduciary duty and breach of express and implied contracts). Allegations of emotional distress fail for the same reason. See *In re Grede Holdings LLC Data Breach Litig.*, 2026 U.S. Dist. LEXIS 29721 at *6-7 (E.D. 2026), quoting *Rakyta, supra,* at *14 as "rejecting the argument that 'allegations of damages arising from emotional distress or anxiety about a potential future injury were sufficient to save a claim from summary disposition'."

## 2. The State Constitutional Claims Against The Individual Defendants Must Be Based On Clearly Established Law

Michigan courts generally look to and follow the federal law analogs, and therefore the Court should apply the "clearly established" requirement to the state constitutional claims since the policy consideration underlying that requirement is recognized under Michigan law. *See, e.g., Proctor v. Saginaw Cty. Bd. of Comm'rs,* 340 Mich. App. 1, 12 (2022) (Referring to clearly established law under the GTLA); *VanVorous v. Burmeister*, 262 Mich. App. 467, 475 (2004)(applying the clearly

established requirement to a state law claim.)  For the reasons stated with regard to the §1983 claims, plaintiffs do not satisfy the clearly established requirement.

**3.   There Is Not A Private Cause Of Action For Violation Of The Michigan Constitution's Equal Protection Provision**

Count XI claims a violation of equal protection under Article I, § 2 of the Michigan Constitution.  But under *Bauserman*, 509 Mich. at 871, there is no private equal protection claim under § 2:

> There are instances in which the Constitution specifically tasks the Legislature with implementing the rights it affords. *An example is Const. 1963, art. 1, § 2*, which concludes by stating, "The legislature shall implement this section by appropriate legislation."  Therefore, the Constitution delegates the construction of the remedy for violation of Const. 1963, art. 1, § 2 to the Legislature.  (emphasis added).

Further, even if a private action were possible, it fails for the same reasons as the federal equal protection claim in Count VII.

Plaintiffs also cannot show deliberate indifference, for the reasons stated regarding the Title IX claim.  And without that showing their equal protection claim also fails.  *See, Malik, supra* at p. 8: "Because no deliberate indifference occurred, [plaintiff's] Title VI claim fails.  And that means her separate claim under 42 U.S.C. ¶1983 for violation of the Equal Protection Clause also fails."  Count XI should be dismissed.

- 60 -

4. **Dismissal Of Plaintiffs Constitutional Civil Rights Claim Is Appropriate Because The Elliott-Larsen Civil Rights Act Provides An Equivalent Remedy**

As with the equal protection claim, there is no private right of action for the civil rights claim in Count IX under §26 of the Michigan Constitution. As previously indicated, *Bauserman* provides that there is not a private cause of action under the Michigan Constitution if there is an adequate legislative remedy. A legislative remedy is "adequate" if it is "at least as protective of constitutional rights as a judicially recognized remedy would be." 509 Mich. at 705. §26 of the constitution prohibits, in relevant part, sex discrimination in public education. It also provides that remedies for violating §26 "shall be the same . . . as are otherwise available for violations of Michigan anti-discrimination law." *Id.*

ELCRA prohibits an educational institution and its agents from "discriminating against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of sex" which includes sexual harassment. MCL §37.2402. (cleaned up). ELCRA provides a full range of remedies and damages, and plaintiffs assert a separate ELCRA claim in Count X. Those legislative remedies and protection in the ELCRA are "adequate" and entitle the Individual Defendants to dismissal.

5. **Dismissal Is Appropriate for the Violation of Bodily Integrity Claim**

Count XII alleges a claim for violation of privacy and bodily integrity under

- 61 -

the Michigan Constitution.  The elements of a claim for bodily integrity under the Michigan Constitution are the same as those under plaintiff's §1983 claim in Count VI.  See, *Mays v. Governor of Mich*, 506 Mich. 157 (2020)(A "[v]iolation of the right to bodily integrity involves an egregious, nonconsensual entry into the body.")(internal quotation omitted).  There is no physical bodily intrusion alleged, and the Individual Defendants are entitled to dismissal of the state constitutional claim for the same reasons as discussed above regarding the equivalent federal claim.

### 6. Count XIV Alleging Violation of Search and Seizure Should Be Dismissed

Michigan Constitution Article I, § 11 addresses searches and seizures, and its bounds are co-terminus with the Fourth Amendment of the U.S. Constitution. *People v. Brcic*, 342 Mich. App. 271 (2022).  For all the reasons discussed above regarding the §1983 Search and Seizure claim in Count VIII, the Individual Defendants are also entitled to dismissal of Count XIV under the Michigan Constitution.

### 7. The State Created Danger Claim Should Be Dismissed

Count XV alleges a claim under the Michigan Constitution for a "state created danger."  Assuming, without conceding, that such a cause of action is recognized (see, *Mays v. Snyder*, 323 Mich. App. 1, 68-69 (2018)("This Court has never before

considered whether a cause of action for state-created danger is cognizable under Michigan law") it does not apply here.  In only the most extreme circumstances might disclosing private information be sufficient to create the necessary harm for a state-created danger claim.  *Barber v. Overton*, 496 F.3d 449, 454–57 (6th Cir. 2007).  If such a claim is cognizable, it would require:

> To show a state-created danger, plaintiff must show: 1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered the plaintiff. [*Mays*, 323 Mich App at 74-75, quoting *Cartwright v City of Marine City*, 336 F3d 487, 493 (CA 6, 2003).]

The first element is not met here, because plaintiffs do not allege an affirmative act by the Individual Defendants.  Rather, their claims are all based on the alleged failures of the Moving Defendants to act, to train or supervise, implement sufficient computer safety measures, etc.  For that reason alone the Individual Defendants are entitled to dismissal.

Nor is there an allegation that any such alleged failures placed plaintiffs specifically at risk, or that the Individual Defendants knew or should have known that any alleged failure endangered plaintiffs specifically.  The alleged security failures were not limited to plaintiffs but potentially to all system users.  Nor is there any allegation that the Individual Defendants should have known that Weiss had any

- 63 -

propensity to exploit a system weakness specifically as to plaintiffs.  In fact, plaintiffs admit that he also accessed not just accounts of female athletes, but also at least some male athletes, and indeed some 150,000 individuals across the country.

### 8. The Claim For Violation of Procedural Due Process Should Be Dismissed

Count XIII alleges that the Individual Defendants violated the Michigan Constitution by depriving them of their rights to privacy and bodily integrity without procedural due process.  But as indicated above, plaintiffs fail to state claims for Invasion of Privacy or Deprivation of Bodily Integrity under §1983.  For the same reasons those claims fail, as indicated above, Count XIII also fails to state a claim. Moreover, plaintiffs fail to identify what procedure they contend should have been afforded them.  Surely, it cannot be that the University was required to have engaged in some process with them prior to Weiss engaging in access which was both unauthorized and unknown.  The Individual Defendants are entitled to dismissal.

## CONCLUSION

For the foregoing reasons, Moving Defendants request that their Motion

be granted, and that the 2nd ACCAC be dismissed as to them, in its entirety.

BUTZEL LONG

*s/ Daniel B. Tukel*
201 West Big Beaver Road
Suite 1200
Troy, Michigan  48084
(248) 258-1616
tukel@butzel.com
(P34978)

*s/ Sheldon Klein*
201 West Big Beaver Road
Suite 1200
Troy, Michigan  48084
(248) 258-1616
klein@butzel.com
(P41062)

DATED:     April 13, 2026

- 65 -

CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2026, I electronically filed the foregoing paper, Defendants University of Michigan, the Regents of the University of Michigan, Domenico Grasso, Santa J. Ono, Mark Schlissel, Warde J. Manuel, Doug Gnodtke, James Joseph Harbaugh, Ravi Pendse, and Sol Bermann's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), with the Clerk of the Court using the ECF system which will send notification of such filing to all parties registered with ECF,  and which is served on pro se Defendant Matthew Weiss via email to mattwprose@gmail.com

*s/ Daniel B. Tukel*
201 West Big Beaver Road
Suite 1200
Troy, Michigan  48084
(248) 258-1616
tukel@butzel.com
(P34978)